# EXHIBIT A

Alan J. Donato  SBN 264755
The Donato Legal Group, Inc.
1383 Garden Highway, Suite 100
Sacramento, CA  95833
Phone: 916-716-7177

Alan@Donato.Legal
Attorney for Petitioners,

**FILED**
**Superior Court Of California,**
**Sacramento**
**12/06/2019**
**mrubalcaba**
**By_____, Deputy**
**Case Number:**
**34-2019-80003279**

### IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
### IN AND FOR THE COUNTY OF SACRAMENTO   BY FAX

| | |
|---|---|
| Liting Wang and Yuhuo Wang<br>Petitioners,<br><br>v.<br><br>CITY OF SACRAMENTO; CITY COUNCIL OF THE CITY OF SACRAMENTO;  and DOES 1 through 100, inclusive,<br>Respondents.<br><br>CITY OF SACRAMENTO POLICE DEPARTMENT; DANIEL HAHN, in his official capacity as Chief of Police for the City of Sacramento,<br><br>Real Parties in Interest. | Case No.:<br><br>**NOTICE OF MOTION AND PETITION FOR WRIT OF ADMINISTRATIVE MANDAMUS**<br>**(CCP §1094.5)**<br><br>Date:<br>Time:<br>Dept: |

To CITY OF SACRAMENTO, CITY COUNCIL OF THE CITY OF SACRAMENTO, CITY OF SACRAMENTO POLICE DEPARTMENT; DANIEL HAHN, their attorney(s) of record:

**PLEASE TAKE NOTICE**  that on _____, at _____ or as soon thereafter as the matter may be heard, in Department _____ of this Court, located at the above named court, located at 720 9th Street, Sacramento, California, Petitioners, will, and hereby do, move for a Petition For Writ of Mandamus, under Code of Civil Procedure § 1094.5 commanding Respondents to set aside its decisions of September 12, 2019, to uphold administrative penalties,

Wang et al. v. City of Sacramento, et al.
Petition for Writ of Administrative Mandamus

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

1 in the administrative hearings titled Sacramento Police Department Administrative Penalty

2 Hearing.

3      This Petition is made on the grounds that the City of Sacramento's imposition of the

4 administrative penalties are excessive and thereby violate both the U.S. and the State of

5 California Constitutions; a personal obligation or else civil forfeiture without an underlining

6 criminal conviction is a violation of Section 11470.1(a)(1)(c) of the Health and Safety Code; and

7 a lien or special assessment is not contemplated by Government Code Section 5309.4(a)(1).

8      This Petition is based on the notice, the verified Petition, the administrative record to be

9 lodged with this Court, the accompanying declarations and exhibits, and any and all other

10 evidence that may be presented at the hearing on the motion.

11      Pursuant to Local Rule 1.06 (A) the court will make a tentative ruling on the merits of

12 this matter by 2:00 p.m., the court day before the hearing. The complete text of the tentative

13 rulings for the department may be downloaded off the court's website. If the party does not have

14 online access, they may call the dedicated phone number for the department as referenced in the

15 local telephone directory between the hours of 2:00 p.m. and 4:00 p.m. on the court day before

16 the hearing and receive the tentative ruling. If you do not call the court and the opposing party

17 by 4:00 p.m. the court day before the hearing, no hearing will be held.

18

19

20                            Respectfully Submitted,

21                            **THE DONATO LEGAL GROUP**

22

23 Date: 12/4/19                       _____

24                            Alan J. Donato

25                            Attorney for Petitioner

26

27

28

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

Wang et al. v. City of Sacramento, et al.
Petition for Writ of Administrative Mandamus

**PETITION FOR WRIT OF ADMINISTRATIVE MANDAMUS**

Petitioners, Ms. Liting Wang and Yuhuo Wang, petition this Court for a writ of mandate under Code of Civil Procedure §1094.5, directed to Respondents, City of Sacramento, and City of Sacramento City Council, and by this verified petition alleges as follows:

1.     Petitioner Liting Wang was the property owner of the residence located at 745 Melanie Way, in the City of Sacramento, County of Sacramento and Petitioner Yuhuo Wang is a property owner of the residence located at 8040 Maybelline Way, in the City of Sacramento, County of Sacramento. On May 15, 2018 Petitioner Yuhuo Wang was assessed an administrative penalty by the City of Sacramento Police Department in the amount of $180,500.00. On the same day, Petitioner Liting Wang was assessed an administrative penalty by the City of Sacramento Police Department in the amount of $593,000.00, which was subsequently reduced to $250,000.00 by the Hearing Examiner, Edith Awuah. Since these matters are related and the Petitioners are relatives, Liting is the daughter of Yuhuo, the Petitioners bring this consolidated action. Petitioners bring this petition as a protestation of the decisions rendered on September 12, 2019, by Hearing Examiner, Edith Awuah, who was appointed to hear appeals by the City of Sacramento City Council. This decision was rendered after an evidentiary hearing required by law. At the same said hearings, evidence was required to be taken. As the owners of aforementioned properties in the City of Sacramento, and the recipients of the administrative penalties, Petitioners are directly affected by the decision of the Hearing Examiner, and are beneficially interested in and aggrieved by the Hearing Examiner's decisions to uphold the administrative penalties as alleged below.

2.     Respondents, City of Sacramento, and City of Sacramento City Council, are authorized and required by Sacramento City Code Section 1.28(D) (4), to conduct evidentiary hearings and to render final decisions in appeals brought by Petitioners contesting administrative penalties imposed on them by the City of Sacramento Police Department. Sacramento City Code

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

1    Section 1.24.060, vests the City of Sacramento City Council with the power to determine appeals

2    of administrative penalties which have been assessed by the City of Sacramento Police

3    Department, with a Hearing Examiner that has been appointed by the City Council. On August

4    15, 2019, a Hearing Examiner appointed by the City of Sacramento City Council, conducted a

5    hearing on the petitioner's appeal and rendered a final decision upholding the administrative

6    penalties.

7

8        3.    Real party in interest, Sacramento City Chief of Police, Daniel Hahn, is named

9    here in his representative capacity for the City of Sacramento Police Department, and is the

10   person vested by City of Sacramento Code Section 1.28.010 as the assessing authority with the

11   power to assess administrative penalties for violations of Sacramento City Code Section

12   8.132.040, Indoor Cultivation of Marijuana. Real party in interest assessed an administrative

13   penalties, pursuant to Sacramento City Code Section 8.132.050 on May 15, 2018, for violation of

14   Sacramento City Code Section 8.132.040. Therefore, Daniel Hahn, as Chief of Police of the

15   Sacramento City Police Department, has an interest in the outcome of Petitioner's proceeding to

16   set aside the decision of the City of Sacramento.

17

18       4.    On or about May 15, 2018, under Sacramento City Code Section 8.132.040,

19   orders imposing administrative penalties in the aforementioned amounts were imposed on

20   Petitioners by the City of Sacramento Police Department for an alleged violation of Sacramento

21   City Code Section 8.132.040. These orders of administrative penalties were served on

22   Petitioners and within 20 days thereafter Petitioners filed appeal requests with Respondents. On

23   or about August 15, 2019, hearings were held in Sacramento County before a Hearing Examiner,

24   who upheld the administrative penalty in the amount of $180,500.00 in the case of Yuhuo Wang

25   and reduced the administrative penalty from $593,000.00 to $250,000.00 in the case of Liting

26   Wang, making the decisions effective immediately. On September 13, 2019, Respondents mailed

27   the decisions to Petitioners. A true copy of the decisions are attached as Exhibit A and

28   incorporated in this petition.

Wang et al. v. City of Sacramento, et al.
Petition for Writ of Administrative Mandamus

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100,
SACRAMENTO, CA 95833

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100,
SACRAMENTO, CA 95833

5.      Respondents' decision, Exhibit A, is invalid under Code of Civil Procedure §1094.5, for the following reasons:

(1)     Respondents violated Petitioners' due process rights because:

(a) they failed to provide notice of the alleged violation in that Respondents cited the wrong Code provision (section 8.132.040 instead of 8.132.030) in the notice of administrative penalty and thus did not receive the requisite notice that due process requires and were deprived of adequate preparation for an impending hearing;

(b) under Sacramento City Code § 8.132.050(B).), residential cannabis cultivation is a public nuisance. Therefore, an imposition of an administrative penalty is ultra vires of Government Code Section 5309.4(a)(1) because California law does not authorize cities to collect nuisance fines or penalties by attaching a lien or imposing a special assessment on real property; and

(c) Respondents failed to provide Petitioner with a meaningful opportunity to be heard in that no competent evidence was introduced to support the Officer's testimony regarding the plant count or the size, nature, or quality of the alleged plants.

(2)     The penalty provisions set out in Sacramento City Code Section 8.132.050 are excessive and violations under both the Federal and State Constitution.

(3)     Respondents failed to proceed in the manner required by law as it applies to the Hearing Examiner's decision in the case of Petitioner Liting Wang because:

(a) **Finding No. A**, is not supported by the evidence since the administrative penalty was not properly issued in that Petitioner Liting Wang was improperly cited with violating Sacramento City Code Section 8.132.040, which applies to the actual cultivation of marijuana instead of 8.132.030, which makes a

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

property owner liable when "cannabis is knowingly or unknowingly being cultivated." Here, the Hearing Examiner's finding of facts does not indicate that Liting Wang actually participated in the illegal cannabis cultivation. Thus, the administrative penalty was not properly issued.

(b) **Finding No. B,** underscores that the administrative penalty was not properly issued since the Hearing Examiner found that Liting Wang was "a college student at the time without substantial capacity to stop her mother, Xiamei Xu's cannabis cultivation on the property." As such, the Hearing Examiner never found that Liting Wang was actually involved in the illegal cannabis cultivation as required by the notice of the administrative penalty under Sacramento City Code Section 8.132.040.

(4)   Respondents failed to proceed in the manner required by law as it applies to the Hearing Examiner's decision in the case of Petitioner Yuhuo Wang because:

(a) **Finding No. A,** is not supported by the evidence since the administrative penalty was not properly issued in that Petitioner Yahoo Wang was improperly cited with violating Sacramento City Code Section 8.132.040, which applies to the actual cultivation of marijuana instead of 8.132.030, which makes a property owner liable when "cannabis is knowingly or unknowingly being cultivated." Here, the Hearing Examiner's finding of facts does not indicate that Yuhuo Wang actually participated in the illegal cannabis cultivation. Thus, the administrative penalty was not properly issued.

(b) **Finding No. B,** underscores that the administrative penalty was not properly issued since the Hearing Examiner found that Xiamei Xu was responsible for the alleged illegal cannabis cultivation.

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

(5).    Respondent is a local agency.  Fundamental vested rights are involved in that Petitioners' right under the U.S. and State Constitutions to be free of cruel and unusual punishment and excessive government fines is implicated.  In the guise of a penalty founded on facts, the penalty here has no rational basis to the facts, damages, or interest of the City except to punish Petitioners for the conduct of others and to seize and forfeit property interests without proof or due process of law.  Although the proposed penalty is disguised as being based on an administrative violation, it is effectively a back door method of punishing a homeowner for the independent, illegal conduct of another.  In addition, Petitioners' fundamental right to due process under the law as recognized by the United States and California Constitutions is implicated by Respondents' improper conduct, including, but not limited to Respondents' failure to grant Petitioners a fair notice, failure to provide an opportunity to be heard; prejudicial abuses of discretion, and issuing a decision that was not supported by the findings and including findings that were not supported by the evidence.  Therefore, the scope of review is under the independent judgment test.

6.      Petitioners have exhausted the available administrative remedies required to be pursued by them as follows: Petitioners have properly filed an appeal of the administrative action and have had their matters heard by Respondent.  The Sacramento City Code Section 1.28.010 provides for review of the Hearing Examiner's decision by way of Administrative Writ of Mandate pursuant to California Code of Civil Procedure Section 1094.5, et seq.

7.      Petitioners do not have a plain, speedy, and adequate remedy in the ordinary course of law.

Wang et al. v. City of Sacramento, et al.
Petition for Writ of Administrative Mandamus

WHEREFORE, Petitioners pray that:

1.      A peremptory writ of mandate issue, under Code of Civil Procedure §1094.5, directed to Respondents, and compelling Respondents to set aside their decisions dated September 12, 2019.

2.      An order staying the effective date of the administrative penalty by the City of Sacramento Police Department in the amounts aforementioned, pending the outcome of the writ proceeding.

3.      Petitioners recover their costs and damages according to proof; and

4.      Such other relief be granted that the Court considers proper.

Respectfully Submitted,

**THE DONATO LEGAL GROUP**

Date: 12/4/19

Alan J. Donato
Attorney for Petitioner

Wang et al. v. City of Sacramento, et al.
Petition for Writ of Administrative Mandamus

## VERIFICATION

I am the Petitioner in this proceeding. The facts alleged in the above petition are true of my own knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 12/04/19

_Liting Wang_
Petitioner Liting Wang

Date: 12/04/19

_Yu huo wang_
Petitioner Yuhuo Wang

Wang et al. v. City of Sacramento, et al.
Petition for Writ of Administrative Mandamus

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

EXHIBIT A



*City of*
# SACRAMENTO
Cannabis Policy & Enforcement

*Trevon*
*Robertson*

---

**SACRAMENTO POLICE DEPARTMENT**
**ADMINISTRATIVE PENALTY APPEAL HEARING**
**RECORD OF DECISION**

---

## IN THE MATTER OF:

**SPD REPORT #:** 18-144419
**APPELLANT:** Yuhuo Wang
**VIOLATION ADDRESS:** 8040 Maybelline Way
**SACRAMENTO CITY CODE SECTION(S):** 8.132.040
**PROPOSED ADMINISTRATIVE PENALTY:** $180,500

---

**HEARING EXAMINER:** Edith Awuah

**HEARING DATE:** August 15, 2019

This matter was heard at a noticed public hearing. The following witnesses submitted a written explanation, appeared and/or testified at the hearing on behalf of either the City or the Appellant as noted below. Any written materials submitted with the protest or at the hearing were reviewed by the Hearing Examiner and are on file in the offices of the City of Sacramento.

**City Staff:**    Emilio Camacho – Deputy City Attorney

**Appellants:** Yuhuo Wang - Did Not Appear

Robert Saria – Attorney

## TESTIMONY SUMMARY

**City Staff:**

**Deputy City Attorney Emilio Camacho** delivered an opening statement regarding the City Code section 8.08.050 requirements for proper property management: "Every owner of real property within the city is required to manage the property in a manner so as not to violate the provisions of this code and the owner remains liable for violations thereof regardless of any contract or agreement with any third party regarding the property." Attorney Camacho summarized the Cultivation of Cannabis Ordinance provisions. In particular, he noted that section 8.132.030 of the ordinance states that: "No person shall own, lease, occupy, or have

---

charge or possession of any property upon which cannabis is knowingly or unknowingly being cultivated" unless one of the exceptions apply. He stated that on May 14, 2018, the Sacramento Police Department (SPD) reviewed the SMUD usage list and noticed that 8040 Maybelline had excessively high electricity usage amounts consistent with an indoor cannabis grow. Between July 2016 – May 2018, the SMUD account holder is either Yuhuo Wang or Xaimei Xu, who are married. Further, that on September 13, 2107, SPD conducted an abatement inspection at the property. No plants were seen but evidence of previous cannabis cultivation was noted.

**The Appellant's attorney Mr. Saria** waived the need for Officer Kirtlan to read his staff report. The report provides that in February 2018, SPD received information regarding a possible illegal cannabis cultivation operation occurring at 8040 Maybelline Way, Sacramento, California.

On May 15, 2018, SPD executed a warrant on the property and observed 367 cannabis plants. As officers were setting up in the area to serve the search warrant, Xiamei Xu exited the residence with two children. A vehicle stop was performed. Xu was allowed to take the children to school and instructed to drive back to the property where she was detained. Officers also observed Liting Wang, her daughter, leave the residence and enter a vehicle in the driveway. Ms. Wang was also detained.

The house was fortified with an external metal security gate protecting the front door of the residence and an exterior metal gate over rear sliding door of the house Inside the residence, officers located marijuana in various stages of growth, indicia of occupancy by the property owners, high intensity discharge (HID) lights, chemicals used for cultivation, digital ballasts, timers, fans, ventilation systems and reflective walls. Also, there was $3,780 in cash found in the residence.

Pursuant to SCC 8.132.050 (E)(1), an administrative penalty in the amount of $180,500 (i.e., $500 per plant over six plants) was issued to the owner of the property for a violation of SCC 8.132.040(B). The citation was posted at the residence. The City also mailed a copy of the administrative penalty to the property owner. According to Officer Kirtlan, the administrative penalty in this case is appropriate due to the potential high proceeds to be gained from the cultivation of illegal cannabis.

**Deputy City Attorney Emilio Camacho delivered** the closing statement stating that given the property inspection, ample indicia, and the continuous illegal cannabis operation at the property, Appellant clearly violated the Sacramento City Code.


**Appellant:**

**Robert Saria** the Attorney for the property owner Yuhuo Wang stated that the property owner admitted growing cannabis at the property, but he asked for a reduction in the fine, especially for the daughter under a related matter. The money found at the residence was from the daughter's student loan.

**FINDINGS OF FACT:**

After examining the evidence submitted and arguments offered by City staff, the appellant and witness, if any; the owner's efforts, or lack thereof, to comply with the City Code; the staff time and costs incurred in investigating the violation; the extent, if any, to which the fine or penalty would impose a substantial economic hardship; the seriousness of the violation; the Hearing Examiner hereby makes the following findings:

A. The Administrative Penalty was properly issued and served.

B. That based on the abatement inspection conducted by the SPD on September 13th, 2017, Xiamei Xu was aware of the potential consequences of illegal cannabis cultivation but she nevertheless continued with her cultivation operation.

C. That the Appellant, as Xiamei Xu's spouse and fellow resident of 8040 Maybelline Way, must have been aware of the illegal cannabis cultivation operation on the property but turned a blind eye to it.

**DECISION:**

The Administrative Penalty issued on May 15, 2018 in the amount of $180,500.00 is hereby upheld.

**IT IS SO ORDERED:**

Dated:  **September 12, 2019**

Edith Awuah
Hearing Examiner

3

**PAYMENT:**   ✓ Applicable   ☐ Not Applicable

See enclosed invoice.

If the administrative penalty is not paid within the time specified, it may be made a personal obligation of the responsible party, and if applicable may also be made a lien against the property on which the violation occurred, and may be made a special assessment collected at the same time and in the same manner as ordinary secured property taxes are collected.

**APPEAL**

If you desire to seek judicial review of the Hearing Examiner's decision, you must file a petition for judicial review with the Sacramento County Superior Court either no later than the 90th day following the date of this decision per California Code of Civil Procedures Sections 1094.5 and 1094.6, or the 20th day following the date of service the decision per California Government Code Section 53069.4.

## PROOF OF SERVICE BY CERTIFIED MAIL
(CCP § 1013a, 2015.5)

I, Sharon Chand, declare that:

I am a citizen of the United States, over the age of 18 years, not a party to the cause and employed in the County of Sacramento, California. My business address is 915 I Street, Second Floor, Sacramento, California 95814.

I am familiar with the City of Sacramento's business practice for collection and processing of correspondence for mailing with the United States Postal Service on the same day that it is deposited for collection and mailing, in the ordinary course of business.

On September 13, 2019, I served the following notice:

### SACRAMENTO POLICE DEPARTMENT
### ADMINISTRATIVE PENALTY APPEAL HEARING
### RECORD OF DECISION

along with a copy of this Proof of Service by Certified Mail on the interested parties in said cause, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California, addressed as follows:

Yuhuo Wang
8040 Maybelline Way
Sacramento, CA 95823

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed in Sacramento, California, on September 13, 2019.


Sharon Chand


**SPD Report #:** 18-144419
**Violation Address:** 8040 Maybelline Way



*City of*
# SACRAMENTO
Cannabis Policy & Enforcement

> ### SACRAMENTO POLICE DEPARTMENT
> ### ADMINISTRATIVE PENALTY APPEAL HEARING
> ### RECORD OF DECISION

## IN THE MATTER OF:

**SPD REPORT #:** 18-321551
**APPELLANT:** Liting Wang
**VIOLATION ADDRESS:** 745 Melanie Way
**SACRAMENTO CITY CODE SECTION(S):** 8.132.040
**PROPOSED ADMINISTRATIVE PENALTY:** $593,000

**HEARING EXAMINER:** Edith Awuah
**HEARING DATE:** August 15, 2019

This matter was heard at a noticed public hearing. The following witnesses submitted a written explanation, appeared and/or testified at the hearing on behalf of either the City or the Appellant as noted below. Any written materials submitted with the protest or at the hearing were reviewed by the Hearing Examiner and are on file in the offices of the City of Sacramento.

**City Staff:**   Kevin Kundinger – Deputy City Attorney

**Appellants:**  Liting Wang  Did not appear

Robert Saria – Attorney

## TESTIMONY SUMMARY

**City Staff:**

**Deputy City Attorney Kevin Kundinger** delivered an opening statement regarding the City Code section 8.08.050 requirements for proper property management: "Every owner of real property within the city is required to manage the property in a manner so as not to violate the provisions of this code and the owner remains liable for violations thereof regardless of any contract or agreement with any third party regarding the property." Attorney Kundinger also summarized the Cultivation of Cannabis Ordinance provisions. In particular, he noted that section 8.132.030 of the ordinance states that: "No person shall own, lease, occupy, or have

charge or possession of any property upon which cannabis is knowingly or unknowingly being cultivated" unless one of the exceptions apply:

Attorney Kundinger stated that in September 2017, the Sacramento Police Department (SPD) sent the owner a cannabis abatement letter regarding a possible cannabis operation at 745 Melanie Way. On October 12, 2017, SPD conducted a cannabis inspection at the property and met with the Appellant Liting Wang. No cannabis plants were seen but the officer noted evidence of a previous grow (patched holes in ceilings and walls, reflective material on the bedroom walls and metal bars on the inside and outside of the front windows). On May 14, 2018, SPD reviewed SMUD electrical usage records and noticed that 745 Melanie Way had excessively high usage amounts consistent with an indoor cannabis cultivation operation. From July 2016 – May 2018, the SMUD account holder was either Liting Wang or Yuhuo Wang and Xaimei Xu, who were her parents.

The Appellant's attorney Mr. Serla waived the need for Officer Kirtlan to read his staff report. The report provides that on August 16, 2018, the Sacramento Police Department executed a warrant at the property and observed 1192 cannabis plants. No one was at the residence. The exterior doors and windows to the residence were fortified with wrought iron covering them. The garage entry garage door was fortified with use of two 2X4's placed horizontally against the interior side of the door. Inside the residence each of the interior bedroom windows were covered with plywood. The fortifications to the residence are not only a hazard to its occupants, but a violation of Health and Safety code sections 11366 and 11366.5. There were also high intensity discharge lights, chemicals used for cultivation, digital ballasts, timers, fans, ventilation systems and reflective walls. A plastic bag with one pound of processed cannabis was also found.

The exterior of the residence had surveillance cameras mounted underneath the eaves. The surveillance cameras were placed strategically around the residence to identify other criminal activity or law enforcement presence.

Pursuant to SCC 8.132.050 (E)(1), an administrative penalty in the amount of $593,000 (i.e., $500 per plant over six plants) was issued to the owner of the property for a violation of SCC 8.132.040(B). The citation was posted at the residence. The City also mailed a copy of the administrative penalty to the property owner. According to Officer Kirtlan, the administrative penalty in this case is appropriate due to the potential high proceeds to be gained from the cultivation of illegal cannabis.

Deputy City Attorney Kevin Kundinger delivered his closing statement in which he noted that given the property inspection, ample indicia, and the continuous illegal cannabis operation at the property, Appellant clearly violated the Sacramento City Code. He stated that the SMUD records were in Appellant's name, and her mother's name and father's name. When the Appellant was detained at the associated property at 8040 Maybelline Way where she lived with her parents, she admitted to knowing that her mother grew cannabis at her property. The Appellant also was in possession of a large amount of cash at the time of detention. He concluded that the Appellant was aware of the illegal cannabis cultivation and that Appellant purchased the property with the intent that it be used as an illegal cannabis cultivation operation.

**Appellant:**

**Robert Saria** the Attorney for the property owner Liting Wang, stated that Liting Wang had knowledge of the grow. Liting Wang is a college student and she is busy with her school. She has no control over the use of her property because her parents were responsible for the cannabis grow operation. He requested lowering the penalty for these reasons. Mr. Saria also stated that Liting Wang's grandparents gave her money to buy the house and asked that she be entitled to retain those funds.

**Hearing Examiner**

**Edith Awuah**, the hearing examiner noted that according to Zillow, the house has already been sold.

**FINDINGS OF FACT:**

After examining the evidence submitted and arguments offered by City staff, the appellant and witness, if any; the owner's efforts, or lack thereof, to comply with the City Code; the staff time and costs incurred in investigating the violation; the extent, if any, to which the fine or penalty would impose a substantial economic hardship; the seriousness of the violation; the Hearing Examiner hereby makes the following findings:

   A. The Administrative Penalty was properly issued and served.

   B. The Appellant was the owner of the property at the time of the execution of the search warrant.

   C. That the Appellant was aware of the cannabis cultivation at the property but turned a blind eye to it.

   D. That the Appellant was aware of the potential implications/consequences of illegal marijuana cultivation as she was present at the SPD abatement inspection conducted on October 12, 2017.

   E. That, nevertheless, the Appellant was a college student at the time without substantial capacity to stop her mother Xiamei Xu's cannabis cultivation on the property.

**DECISION:**

The Administrative Penalty issued on May 15, 2018 in the amount of $593,000 is hereby reduced to $250,000.00.

**IT IS SO ORDERED:**

Dated: __September 12, 2019__

Edith Awuah
Hearing Examiner

4

**PAYMENT:** ✓ Applicable   ☐ Not Applicable

See enclosed invoice.

If the administrative penalty is not paid within the time specified, it may be made a personal obligation of the responsible party, and if applicable may also be made a lien against the property on which the violation occurred, and may be made a special assessment collected at the same time and in the same manner as ordinary secured property taxes are collected.

## APPEAL

If you desire to seek judicial review of the Hearing Examiner's decision, you must file a petition for judicial review with the Sacramento County Superior Court either no later than the 90th day following the date of this decision per California Code of Civil Procedures Sections 1094.5 and 1094.6, or the 20th day following the date of service the decision per California Government Code Section 53069.4.

## PROOF OF SERVICE BY FIRST CLASS MAIL
(CCP § 1013a, 2015.5)

I, Sharon Chand, declare that:

I am a citizen of the United States, over the age of 18 years, not a party to the cause and employed in the County of Sacramento, California. My business address is 915 I Street, Second Floor, Sacramento, California 95814.

I am familiar with the City of Sacramento's business practice for collection and processing of correspondence for mailing with the United States Postal Service on the same day that it is deposited for collection and mailing: in the ordinary course of business

On September 13, 2019, I served the following notice:

### SACRAMENTO POLICE DEPARTMENT
### ADMINISTRATIVE PENALTY APPEAL HEARING
### RECORD OF DECISION

along with a copy of this Proof of Service by First Class Mail on the interested parties in said cause; by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California, addressed as follows:

Robert Saria
11344 Coloma Rd. Ste 110
Gold River, CA 95670

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed in Sacramento, California, on September 13, 2019.

Sharon Chand

**SPD Report #:** 18-321551
**Violation Address:** 745 Melanie Way

2015 DEC -6  PM 4: 13

SUPERIOR COURT
STATE OF CA
SAC SUPERIOR COUNTY

Alan J Donato  SBN 264755
The Donato Legal Group, Inc.
1383 Garden Highway, Suite 100
Sacramento, CA  95833
Phone: 916-716-7177
Alan@Donato.Legal
Attorney for Petitioners,

FILED
Superior Court Of California,
Sacramento

12/06/2019
mrubalcaba
By_____, Deputy
Case Number:
34-2019-80003279

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SACRAMENTO

BY FAX

| Liting Wang and Yuhuo Wang Petitioners, | Case No.: |
|---|---|
| v. | **APPLICATION FOR STAY OF ADMINISTRATIVE DECISION; DECLARATION(S); EXHIBIT(S)** |
| CITY OF SACRAMENTO; CITY COUNCIL OF THE CITY OF SACRAMENTO;  and DOES 1 through 100, inclusive, Respondents. | [CCP §1094.5(g)] |
| | Date: Time: Dept: Judge: |
| CITY OF SACRAMENTO POLICE DEPARTMENT; DANIEL HAHN, in his official capacity as Chief of Police for the City of Sacramento, Real Parties in Interest. | |

Petitioners, Ms. Liting Wang and Yuhuo Wang, hereby apply for a stay of the City of Sacramento's decisions and orders imposing administrative penalties in the amount of $250,000.00 and $180,500.00, respectively.  Ms. Liting Wang was the property owner of the residence located at 745 Melanie Way, in the City of Sacramento, County of Sacramento and Mr. Yuhuo Wang is currently the property owner of the residence located at 8040 Maybelline Way, in the City of Sacramento, County of Sacramento.

Wang et al. v. City of Sacramento, et al.
Application For Stay of Administrative Decision

ALAN J. DONATO, DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, SUITE 100
SACRAMENTO, CA 95833

ALAN J. DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, SUITE 100
SACRAMENTO, CA 95833

1    On May 15, 2018,  Ms. Liting Wang was assessed an administrative penalty by the City

2  of Sacramento Police Department in the amount of $593,000.00, pursuant to an alleged violation

3  of Sacramento City Code Sections 8.132.050 (E)(1) and 8.132.040(B).   On the same day, Mr.

4  Yuhuo Wang was also assessed an administrative penalty in the amount of $180,500.00, pursuant

5  to an alleged violation of Sacramento City Code Sections 8.132.050 (E)(1) and 8.132.040(B).

6  On or about September 12, 2019, a hearing was held in Sacramento County before a Hearing

7  Examiner, who upheld the administrative penalty imposed on Mr. Yuhuo Wang in the amount of

8  $18,500.00.  However, the Hearing Examiner reduced the administrative penalty imposed on Ms.

9  Liting Wang to $250,000.00

10    As shown in the Petition for Writ of Administrative Mandamus, the declaration of Xiamei

11  Xu, and any exhibits filed herein, this Court should stay the imposition of the administrative

12  penalty under Code of Civil Procedure Section 109.5(g), on the grounds that granting the stay

13  will not be against the public interest.  Petitioners' motion is based on the Petition for Writ of

14  Administrative Mandamus; this Stay Application; the parts of the administrative record attached

15  hereto as exhibits; and such other and further evidence as may be presented at the hearing on this

16  application.

17    Wherefore, Petitioners, respectfully, requests this Court to issue an order staying the

18  decisions and orders the Respondents, the City of Sacramento and the City Council of the City of

19  Sacramento, and Real Party in interest, Sacramento City Chief of Police, Daniel Hahn, who is

20  named here in his representative capacity for the City of Sacramento Police Department, and is

21  the person vested by City of Sacramento Code Section 1.28.010 as the assessing authority with

22  the power to assess administrative penalties for violations of Sacramento City Code Section

23  8.132.040, Indoor Cultivation of Marijuana.

24                  Respectfully Submitted,

25                  THE DONATO LEGAL GROUP

26  Date: 12/4/19

27                  Alan J. Donato
28                  Attorney for Petitioner

Wang et al. v. City of Sacramento, et al.
Application For Stay of Administrative Decision

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

3

**I. BACKGROUND**

4

5    The Petitioner, Ms. Liting Wang, is a college student who owned property located at 745

6 Melanie Way, in the City of Sacramento, County of Sacramento. Ms. Liting Wang, at all times

7 during this alleged violation, resided at 8040 Maybelline Way, in the City of Sacramento, County

8 of Sacramento. The SMUD subscriber for the 745 Melanie Way property was listed as her

9 mother, Xiamei Xu. (See Exhibit A.) On May 15, 2018, Officer Eric Nedeljkovic set-up

10 surveillance and executed a search warrant at 745 Melanie Way and 8040 Maybelline Way. On

11 the same day, the Sacramento Police Department issued an administrative penalty on Ms. Liting

12 Wang in the amount of $593,000.00, as the owner of the property located at 745 Melanie Way,

13 for the alleged violation of Sacramento City Code Section 8,132.040. (Exhibit B.) Mr. Yuhuo

14 Wang was also issued an administrative penalty in the amount of $180,500.00, as the owner of

15 8040 Maybelline Way, for the alleged violation of Sacramento City Code Section 8.132.040.

16 (*Ibid.*) Mr. Yuhuo Wang was not present during the execution of the search warrant, nor was he

17 subsequently apprehended for the alleged illegal cultivation of cannabis. However, both Ms.

18 Liting Wang and Xiamei Xu were apprehended. In fact, upon the apprehension of Ms. Xiamei

19 Xu on May 15, 2018, she admitted that she alone was responsible for the alleged illegal

20 cultivation of the marijuana at 745 Melanie Way and 8040 Maybelline Way. (See Exhibit C.)

21 While Ms. Liting Wang admitted that she knew her mother, Xiamei Xu was cultivating

22 marijuana, the Hearing Examiner found that she was a college student at the time without

23 substantial capacity to stop her mother Xiamei Xu's cannabis cultivation on the property. (See

24 Exhibit D.) Importantly, neither Liting Wang nor Yuhuo Wang were criminally convicted of

25 illegal cannabis cultivation or intent to distribute. The 745 Melaine Way property has since been

26 sold. Mr. Yuhuo Wang is still the owner of his residential property located at 8040 Maybelline

27 Way.

28

ALAN J. DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, SUITE 100
SACRAMENTO, CA 95833

Wang et al. v. City of Sacramento, et al.
Application For Stay of Administrative Decision

1    Petitioners Liting Wang and Yuhuo Wang timely appealed the orders imposing the
2 administrative penalties. On or about August 15, 2019, the hearings were held in Sacramento
3 County before a Hearing Examiner, who then rendered her decisions on September 12, 2019,
4 making the decisions effective immediately. (Exhibit D.) On September 13, 2019, Respondents
5 mailed their decisions to Petitioners. (*Ibid.*) Petitioners now file this timely Application For
6 Stay of Administrative Decision and a Petition for Writ of Administrative Mandamus.

7

8                                **II. LEGAL ARGUMENT**

9 **A. The Applicable Standard for Granting A Stay**

10

11    As a threshold matter, Petitioners' request for a stay is governed by Code of Civ. Proc.
12 §1094.5(g) because it applies to local government agencies not governed by the Administrative
13 Procedure Act ("APA"). A Stay Application may be granted under either Code of Civil
14 Procedure §1094.5(g) or (h). Under both Codes, the Court "may stay the operation of an
15 administration order or decision pending judgment, or until the filing notice of appeal from the
16 judgment or until the expiration of the time for filing the notice, whichever comes first." (Civ.
17 Proc. §1094.5(g).) However, stays under Code of Civ. Proc. §1094.5(h)(1) apply to decisions
18 rendered by licensed hospitals or any state agency after a hearing required to be held under the
19 Administrative Procedure Act. To grant a stay under Code of Civ. Proc. §1094.5(h)(1), a court
20 must be satisfied that: 1) the public interest will not suffer; and 2) the agency is unlikely to
21 prevail on the merits.
22    In contrast, Code of Civ. Proc. §1094.5(g) applies to local agencies and those agencies
23 not required to conduct their proceedings under the Administrative Procedure Act. Under Code
24 of Civ. Proc. §1094.5(g) there is only one criteria that must be met: the Court must be satisfied
25 that granting the stay will not be against the public interest. Here, the City of Sacramento and
26 the Sacramento Police Department are both local government agencies. Petitioner's request for a
27 stay is therefore governed by Code of Civ. Proc. §1094.5(g).
28

ALAN J. DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, SUITE 100
SACRAMENTO, CA 95833

**Wang et al. v. City of Sacramento, et al.**
**Application For Stay of Administrative Decision**

**B. Granting A Stay is Not Against Public Interest**

When granting a stay under Code of Civ. Proc. §1094.5(g), courts are more likely to find that the public interest is threatened when a license is involved.  For example, in a petition to stay the revocation of a physician's license, the California Court of Appeals found that "the government has a compelling need in protecting the public against risk of harm by physicians who are so impaired that they cannot practice medicine." (*Kees v. Medical Board* (1992) 7 Cal.4th 1801, 1813 [10 Cal.Rptr. 112, 119] .)  However, where an agency penalty is involved, Courts are more apt to stay enforcement of such orders pending a resolution of an appeal. (*Shea v. Board of Medical Examiners* (1978) 81 Cal.App.3d  564, 570 [146 Cal.Rptr.653, 657].)  "[T]he superior court [must] weigh the public interest in each individual case." (*Sterling v. Santa Monica Rent Control Bd.*, 168 Cal.App.3d 176, 187 [214 Cal.Rptr. 71, 77].)

In the case at bar, granting a stay does not pose a risk of harm to the public since this case involves administrative penalties *not* a license revocation.  To the contrary, the public has a fundamental and vested interest in the preservation of inalienable rights under the U.S. and the State of California Constitutions.  For which, the impending imposition of an administrative penalty threatens to violate.  Indeed, a special assessment or an attachment of a lien to Mr. Yuhuo Wang's real property or a civil forfeiture of Ms. Liting Wang assets puts those constitutional protections in the crosshairs of the City of Sacramento and its enforcement agencies, as they aim to circumvent basic constitutional protections.  This Court, therefore, has a compelling need to protect the public against the risk of harm created by such government overreach.

**1. The Order Imposing An Administrative Penalty So Threatens the Public's Fundamental and Traditional Property Rights As to Compel the Court to Grant A Stay Pending Final Resolution on the Merits**

The very "essence" of due process is "notice and an opportunity to respond." (*Thronbrough v. Western Placer Unified School Dist.* (2013) 223 Cal.App.4th 169, 183.) (Emphasis added.)  In *Vo*, a recently-decided case, the Court found due process is denied

ALAN J. DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, SUITE 100
SACRAMENTO, CA 95833

ALAN J. DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, SUITE 100.
SACRAMENTO, CA 95833

1   when a plaintiff is charged with violating the wrong provision of the City Code. (See Exhibit E,

2   *Vo v. City of Sacramento, et al*, Judge Earl's Judgment and Order, Case No. 34-2019-80003139

3   at p. 11 (Superior Court of California County of Sacramento September 30, 2019).) By way of

4   background, Plaintiff Vo was charged with violating City Code Section 8.132.040, which

5   prohibits any person from cultivating over six cannabis plants. But there were no facts alleged to

6   demonstrate that Vo cultivated cannabis plants at her rental property. Section 8.132.030,

7   arguably the more applicable provision, provides "[n]o person shall cultivate cannabis within a

8   private residence" unless done in accordance with this section, which proscribes the cultivation

9   of more than six cannabis plants. The Court held that Vo was denied her due process rights

10  because the City "cite[d] the wrong Code provision in the notice of administrative penalty." (*Vo*

11  *v. City of Sacramento, et al*, Case No. 34-2019-80003139 at p. 11 (Superior Court of California

12  County of Sacramento September 30, 2019)). *Vo* is authoritative in this case.

13       The facts in this case are similar to *Vo*, but even more egregious. First, as alleged in the

14  Writ ¶ 8, Petitioners were charged with violating the wrong provision. Petitioners "having been

15  charged under the wrong statute, . . . did not receive the requisite notice which due process

16  requires and this fundamental error compels" a resolution of this action in his favor. (See *People*

17  *v. Hernandez* (1976) 64 Cal.App.3d Supp. 19, 22.) As such, Petitioners were not permitted to

18  adequately prepare for the impending hearing. (*Thronbrough*, 223 Cal.App.4th at 183-84.)

19       Furthermore, as alleged in the Writ ¶ 8(1)(b), Respondents' conduct is ultra vires of

20  California Government Code Section 53069.4(a)(1) because this statute "does not authorize

21  cities to collect nuisance fines or penalties by attaching a lien or imposing an

22  assessment." (*Mechammil v. City of Jacinto* (2016) 653 Fed.Appx. 562, 564.)[1] Perhaps a review

23  of the overall statutory scheme and the legislative intent may provide future guidance to

24  Respondents. At first glance, it may appear that the text of California Government Code §

25  53069.4(a)(1) does authorize cities to collect nuisance fines or penalties by attaching a lien or

26  imposing an assessment. Admittedly, a plain reading of the statute without more in-depth

27

28  [1] This unpublished opinion is being cited in this case at bar because it is relevant to the doctrines of the law in this case. (Cal.
    Rules of Court 8.11159b)(1).) This decision is attached hereto as Attachment 1.

Wang et al. v. City of Sacramento, et al.
Application For Stay of Administrative Decision

ALAN J. DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, SUITE 100
SACRAMENTO, CA 95833

1    analysis lends credence to this interpretation. For example, the statute states: "The legislative

2    body of a local agency . . . may by ordinance make any violation of any ordinance enacted by the

3    local agency subject to an administrative fine or penalty." (*Id.*) But this statute must be read in

4    the context of the overall statutory scheme. California Government Code § 38773.1(a), a related

5    statute, provides that "[t]he legislative body [of a city] may by ordinance establish a procedure to

6    collect abatement and related administrative costs by a nuisance abatement lien." Moreover, in

7    the alternative, California Government Code § 38773.5(a) authorizes cities to " make the *cost* of

8    abatement of a nuisance upon a parcel of land a special assessment against the

9    parcel." (Emphasis added.) "Applying the *expressio unis est exclusio alterius* canon of statutory

10   interpretation, see *Silvers v. Sony Pictures Entm't, Inc.* (9th Cir. 2005) 402 F.3d 881, 885 (en

11   banc)," these statutes only allow the use of liens and special assessments to collect nuisance

12   abatement costs, not fines or penalties. (*Mechammil v. City of Jacinto* (2016) 653 Fed.Appx.

13   562, 564.) Thus, the administrative penalty imposed in the form of a lien on assessed on

14   Petitioners' real property is ultra vires of California Government Code § 53069.4(a)(1) because

15   the fines and penalties do not relate to nuisance abatement costs. Indeed, the nuisance has

16   already been abated.

17        Similarly, as it applies to Ms. Liting Wang, a personal obligation or else civil forfeiture

18   without an underlining criminal conviction for the alleged cultivation of the illegal cannabis or

19   intent to distribute the controlled substance is a violation of Section 11470.1(a)(1)(c) of the

20   Health and Safety Code.

21        In addition, the Eighth Amendment prohibits the government from imposing excessive

22   fines. (U.S. Const. Amend. VII.). The Eighth Amendment Excessive Fines Clause protection is

23   applicable to the States under the Fourteenth Amendment. The Clause applies to civil *in rem*

24   forfeitures that are at least partially punitive. It stands to reason then, States' civil *in rem*

25   forfeitures that are at least partially punitive fall within the ambit of the Clause. (*Austin v. United*

26   States (1993) 509 U.S. 602.) A civil *in rem* forfeiture is punitive when the monetary punishment

27   is grossly disproportionate to the criminal offense. (*Timbs v. State of Indiana* (2019) 139 S.Ct

28

ALAN J. DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, SUITE 100
SACRAMENTO, CA 95833

682.)[2]  Here, based on the particular facts in this case, the fines are punitive and grossly disproportionate to the criminal offense.  Respondents will likely argue that the administrative penalty is intended to hold negligent and willfully blind owners accountable for their wrongful business practices that violate the City Code because there are minimal criminal penalties involved in illegal cannabis cultivation, but given that there is no criminal conviction in this case imposing an administrative penalty in the amount of $388,519.00 is precisely why this results in a civil *in rem* forfeiture that is violative of the Eighth Amendment.

### 2.  Granting a Stay is in the Public's Interest Because the Alleged Public Nuisance Has Already Been Abated

There is no active, ongoing public nuisance in this case as to create a risk of public harm.  Although the hearing officer's findings are not supported by the evidence, there is absolutely no dispute that the Sacramento Police Department executed a search warrant on the respective properties on May 15, 2018.  No matter what was allegedly found, which is still a factual inquiry, the party that was the actual cause of the alleged public nuisance and the subject matter of the public nuisance, the alleged cannabis plants, are no longer a nuisance to the public.  Since the alleged public nuisance has been abated, there is no public harm in staying the imposition of the administrative penalty until final resolution on the merits.  The alternative, a civil *in rem* forfeiture prior to a hearing on the merits, would result in irreparable harm.  Indeed, the risk of public harm is great without a stay because violations of property interest, given the unique nature of real property, almost always mean that the harm would proceed an inadequate remedy.  By granting a stay, such an outcome could be avoided.

While the alleged public nuisance has already been abated, the threats against Petitioners' constitutional rights are ripe: 1) Petitioners' procedural due process rights were violated by the City of Sacramento in failing to provide fair notice and fair warning; 2) the City of Sacramento violated Petitioners' due process rights when it rendered a decision not supported by evidence;

---

[2] This unpublished opinion is being cited in this case at bar because it is relevant to the doctrines of the law in this case. (Cal. Rules of Court 8.11159b)(1).) This decision is attached hereto as Attachment 2.

Wang et al. v. City of Sacramento, et al.
Application For Stay of Administrative Decision

1    and 3) the City of Sacramento violated Petitioners' substantive due process rights by endowing

2    the Sacramento Police Department with power to institute civil in rem forfeitures against

3    Petitioners. These constitutional violations are the very subject of the attached Writ.  Granting a

4    stay to address these constitutional violations serves the public's interest.

5

6                                            **II. CONCLUSION**

7

8            For the foregoing reasons, the Petitioners respectfully ask that this Court grant a Stay of

9    the administrative penalties.

10                                              Respectfully Submitted,

11                                        THE DONATO LEGAL GROUP

12

13   Date:   12/4/19

14                                        Alan J. Donato
                                          Attorney for Petitioner
15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALAN J. DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, SUITE 100
SACRAMENTO, CA 95833

Wang et al. v. City of Sacramento, et al.
Application For Stay of Administrative Decision

# DECLARATION OF XIAMEI XU

I, XIAMEI XU, declare the following in support of the Application for a Stay:

1. I am solely responsible for the cultivation of cannabis at the real properties located at 745 Melanie Way, in the City of Sacramento, County of Sacramento and 8040 Maybelline Way, in the City of Sacramento, County of Sacramento.

2. My daughter, Liting Wang, and my husband, Yuhuo Wang, did not participate or directly benefit from the cultivation of cannabis at said properties.

3. In fact, I completely ignored their (Liting Wang and Yuhuo Wang) attempts to prevent and stop the cultivation of cannabis at the aforementioned properties.

4. The properties have been abated.

5. As the result of the consequences of my actions, I am committed to abiding by the ordinance regarding the cultivation of cannabis.

6. The administrative penalty or else a forfeiture of the residential property located at 8040 Maybelline Way and the forfeiture of my daughter's assets will impose a substantial hardship.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 12/04/19          By: _Xia Mei Xu_____

XIAMEI XU

1.

# EXHIBIT A


18144419

I have contacted no less than fifty (50) gang members including gang member validations. In talking with and interviewing them, I have become familiar with gang indicia, signs, symbols, slang, trends, and tendencies. I have also become familiar with the inner workings of a street gang, including how they operate and function in secrecy, and their practices they use to avoid detection by law enforcement.

In March of 2018, your affiant attended a marijuana update 8-hour class in recreational and medical cannabis and the changing laws. The class addressed current issues pertaining to Proposition 215 and Senate Bill 420, investigations, street contacts, and the enforcement for possession, cultivation, and transportation.

Currently, your affiant is assigned to a South Marijuana Enforcement Team. Due to the abundance of illegal marijuana grow houses, there have been an increase of crimes including home invasion, burglary, robbery, assaults, and homicide related to these grow houses. Our mission is to locate, investigate, and prevent these crimes. I have been involved with no less than twenty-five (25) marijuana cultivation operations.

### CASE SUMMARY:

On 05/14/18, I, Officer Nedeljkovic, of the Sacramento Police Department reviewed a SMUD (Sacramento Municipal Utilities District) power usage list compiled by the Sacramento Police Department via SMUD records. The list contained residences with well above ordinary power usage located in the City of Sacramento. I observed the residence located at **745 Melanie Way** had an excessive usage of 8,272 kwh/month. Based on my training and experience, 6,000+ kwh far exceeds what a typical residence uses.

The SMUD customer report showed a subject by the name of **Xiamei Xu** with a CA DL# F7743059 as the current subscriber.

Based upon the average comparable electric use for the residences located on Melanie Way, the following residences show that 745 Melanie Way is using an excessive amount of power, indicative of a marijuana cultivation operation. Comparables for **745 Melanie Way:**

- 741 Melanie Way- averages 983 kWh, April- 653kWh, March- 1,166kWh, Feb-608 kWh.
- 749 Melanie Way- averages 1,044 kWh, April-763kWh, March-1,129 kWh, Feb-889 kWh.

Furthermore, I have reviewed the SMUD monthly usage amounts for no less than 50 other residential houses in the city of Sacramento. Based on my training and experience, and the experience of veteran SMUD investigators I've spoken to, a residence that is consuming that large amount of electricity can be nothing other than full house indoor marijuana grow.

8

# EXHIBIT B



# SACRAMENTO POLICE DEPARTMENT
## GENERAL OFFENSE HARDCOPY

**GO# SA 2018-144419 OPEN**　　　　　　**3563-0 11358 HS CULTIVATE MARIJUANA**

## Related Attachment(s) - SUPPLEMENTS

**Attachment Description: ADMIN PENALTY**
Reference Number:

### SACRAMENTO POLICE DEPARTMENT
### ADMINISTRATIVE PENALTY

| DATE OF VIOLATION | TIME | DAY OF WEEK | ADDRESS OF VIOLATION | | DISTRICT | SPD REPORT # |
|---|---|---|---|---|---|---|
| 03/15/18 | 0775 | TUES | 7115 NELANIE WAY | | 4B | 18-144419 |

NAME (FIRST, MIDDLE, LAST): LITING WANG　　　　BUSINESS NAME:

ADDRESS: 7115 NELANIE WAY　　　　BUSINESS ADDRESS:

CITY: SACRAMENTO　STATE: CA　ZIP CODE: 95831　CITY:　STATE:　ZIP CODE:

DRIVER LICENSE NO:　STATE:　BIRTH DATE:　PHONE:

SACRAMENTO POLICE RECORDS DIVISION RECEIVED MAY 16 PM

PENALTY LEVEL:
☑ Level A: $5,000.00 to $25,000.00　　☐ Level C: $1,000.00 to $2,499.99
☐ Level B: $2,500.00 to $4,999.99　　☐ Level D: $100.00 to $999.99

**PERSON SERVED:**
NAME: LEFT ON COUNTER　　DOB:

RELATIONSHIP:

**TYPE OF SERVICE:**
☑ PERSONAL SERVICE　☐ FIRST CLASS MAIL
☑ CERTIFIED MAIL　☑ OTHER

NATURE OF VIOLATION:
X 132.040 SCC

UNER, IN VIOLATION OF INDOOR MARIJUANA CULTIVATION WITH A MAXIMUM OF 10 PLANTS

8.132.050(e)(1) SCC (FINE)
PLANT TOTAL: 1,192
FINE: $595,000

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, except for that which is based on information and belief, and for that I believe it is true.

SIGNATURE OF OFFICER: JASON KIPTLAN　BADGE NUMBER: 3004

RECEIVED BY (RESPONSIBLE PARTY): LEFT ON COUNTER　☐ REFUSED TO SIGN

**ORDER IMPOSING ADMINISTRATIVE PENALTY**
**SACRAMENTO CITY CODE 1.28.010**

You are hereby ordered to pay the City of Sacramento an administrative penalty in the amount of

$ 595,000 (Level A / B / C / D)

imposed in connection with the violation(s) herein described on this notice.

Payment shall be sent or paid to the City of Sacramento at 915 I Street, Room 1214, Sacramento, CA 95814 on or before: 06/15/18

The administrative penalty is a personal obligation and failure to pay the penalty may result in the amount being made a lien and/or special assessment against your property as well as other legal action to collect the penalty. If a judicial action is required to collect the penalty, the City will seek to recover its attorney's fees and costs from you. This administrative penalty does not include any other charges that may be applicable to this case. You will receive a separate bill for charges and/or costs incurred by the City when this case is closed.

**RIGHT TO APPEAL**

You may appeal the imposition of this administrative penalty within 20 calendar days after the date this order is served, by filing a written appeal with the Office of the City Clerk and paying an appeal fee. If you fail to appeal, this order shall become final. Any responsible party who files an appeal may seek review of any order entered as a result of the appeal pursuant to California Code of Civil Procedure Sections 1094.5 and 1094.6.

White Copy – Sacramento Police Department　　Yellow Copy – Code Enforcement　　Pink Copy – Violator

SPD 593 (Rev 01/11)

# SACRAMENTO POLICE DEPARTMENT
## ADMINISTRATIVE PENALTY

| DATE OF VIOLATION | TIME | DAY OF WEEK | ADDRESS OF VIOLATION | | DISTRICT | SPD REPORT # |
|---|---|---|---|---|---|---|
| 09/15/18 | 0800 | TUES | 8040 MAYBELLINE WAY | | SC | 18-144419 |

| NAME (FIRST, MIDDLE, LAST) | BUSINESS NAME |
|---|---|
| YUHUO WANG | XIAMEI XU |

| ADDRESS | BUSINESS ADDRESS | | |
|---|---|---|---|
| 8040 MAYBELLINE WAY | 8040 MAYBELLINE WAY | | |

| CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| SACRAMENTO | CA | 95823 | SACRAMENTO | CA | 95823 |

| DRIVER LICENSE NO | STATE | BIRTH DATE | PHONE |
|---|---|---|---|
| F7743091 | CA | 8/5/68 | |

| PENALTY LEVEL: | ☒ Level A: $5,000.00 to $25,000.00 | ☐ Level C: $1,000.00 to $2,499.99 |
|---|---|---|
| | ☐ Level B: $2,500.00 to $4,999.99 | ☐ Level D: $100.00 to $999.99 |

**PERSON SERVED:**

NAME: LEFT ON COUNTER    DOB:

RELATIONSHIP:

**TYPE OF SERVICE:**

☒ PERSONAL SERVICE    ☐ FIRST CLASS MAIL

☒ CERTIFIED MAIL    ☐ OTHER

**NATURE OF VIOLATION:**

8.132.040 SCC

OWNER IN VIOLATION IF INDOOR MARIJUANA CULTIVATION WITH A MAXIMUM OF 10 PLANTS.

361 PLANTS X $500 = $180,500

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, except for that which is based on information and belief, and for that I believe it is true.

| SIGNATURE OF OFFICER | BADGE NUMBER |
|---|---|
| JASON KAPLAN | 3004 |

| RECEIVED BY: (RESPONSIBLE PARTY) | ☐ REFUSED TO SIGN |
|---|---|
| LEFT ON COUNTER | |

## ORDER IMPOSING ADMINISTRATIVE PENALTY
### SACRAMENTO CITY CODE 1.28.010

You are hereby ordered to pay the City of Sacramento an administrative penalty in the amount of $180,500 (Level A / B / C / D) imposed in connection with the violation(s) herein described on this notice.

Payment shall be sent or paid to the *City of Sacramento* at 915 I Street, Room 1214, Sacramento, CA 95814 on or before: 09/15/18

The administrative penalty is a personal obligation and failure to pay the penalty may result in the amount being made a lien and/or special assessment against your property, as well as other legal action to collect the penalty. If a judicial action is required to collect the penalty, the City will seek to recover its attorney's fees and costs from you. This administrative penalty does not include any other charges that may be applicable to this case. You will receive a separate bill for charges and/or costs incurred by the City when this case is closed.

## RIGHT TO APPEAL

You may appeal the imposition of this administrative penalty within 20 calendar days after the date this order is served, by filing a written appeal with the Office of the City Clerk and paying an appeal fee. If you fail to appeal, this order shall become final. Any responsible party who files an appeal may seek review of any order entered as a result of the appeal pursuant to *California Code of Civil Procedure Sections 1094.5 and 1094.6.*

White Copy – Sacramento Police Department    Yellow Copy – Code Enforcement    Pink Copy – Violator

SPD 593 (Rev 01/11)

# EXHIBIT C

**SACRAMENTO POLICE DEPARTMENT**
**GENERAL OFFENSE HARDCOPY**

GO# SA 2018-144419 OPEN                    3563-0 11358 HS CULTIVATE MARIJUANA

# Follow Up Report # SA 1

## Assignment Information

Assigned to: **4377 - SAECHAO, KAO 0950**   Rank:
Capacity: **SUPPLEMENTAL ADD (NOT FOR DETECTIVE USE)**   Org unit: **MARIJUANA COMPLIANCE TEAM-SOUTH**
Assigned on: **May-15-2018  (Tue.) 848**   by: **4377 - SAECHAO, KAO 0950**
Report due on: **May-16-2018  (Wed.)**

## Submission Information

Submitted on: **May-15-2018  (Tue.) 2124**
Approved on: **May-15-2018  (Tue.)**   by: **689 - MORRIS, JOHN 3120**
**Follow Up Conclusion**
Follow Up concluded: **Yes**

---

## Narrative Text Report # 1

Document: **03 SUSPECT STATEMENT**
Author: **4377 - SAECHAO, KAO 0950**
Subject: **XU, XIAMEI**
Related date/time: **May-15-2018  (Tue.) 1100**

On 05/15/18 at approximately 1100 hours, I (Ofc. Saechao #950) spoke with Xiamei Xu outside 8040 Maybelline Way and obtained her statement through a Mandarin speaking translator (Language Line Translator, Clement Shu #11541). Before any questioning, I read S-Xu her Miranda rights verbatim per my department issued Miranda card (SPD#133). After each admonishment, S-Xu acknowledged that she understood her rights and agreed to give a statement. My Body Worn Camera was activated and recorded the conversation. She stated the following in summary:

I live here at 8040 Maybelline Way with my three children, ███████ █████████, and ████████████.

I am the owner of 8040 Maybelline Way. The marijuana plants you found belong to me. I think there are currently about 100 live plants inside my home. I grow the marijuana for medicine. I treat my aches and pains by rubbing the marijuana on my body.

The house at 745 Melanie Way belongs to my daughter Liting Wang. I also tend to the plants in that house.

---

# SACRAMENTO POLICE DEPARTMENT
## GENERAL OFFENSE HARDCOPY

GO# SA 2018-144419 OPEN                    3563-0 11358 HS CULTIVATE MARIJUANA

Follow Up Report # SA 1

I began growing the marijuana back in march of this year. All the marijuana
you found is for personal use. I have never sold any marijuana.

My children do not help with tending to the marijuana. I alone, take care
of the marijuana plants at both residences.

I do have a job, and am currently employed at a restaurant. However, I do
not know the name of the restaurant I work at. I get paid about $900 a
month.

I understand that I am going to jail and am concerned for my two children
who are currently at school. I ask that you allow me to call my father, and
ask that he watch over my children, as I will not be returning home.

# EXHIBIT D

*City of*
# SACRAMENTO
Cannabis Policy & Enforcement

Trevor
Robertson

---

**SACRAMENTO POLICE DEPARTMENT**
**ADMINISTRATIVE PENALTY APPEAL HEARING**
**RECORD OF DECISION**

---

**IN THE MATTER OF:**

**SPD REPORT #:** 18-144419
**APPELLANT:** Yuhuo Wang
**VIOLATION ADDRESS:** 8040 Maybelline Way
**SACRAMENTO CITY CODE SECTION(S):** 8.132.040
**PROPOSED ADMINISTRATIVE PENALTY:** $180,500

**HEARING EXAMINER:** Edith Awuah
**HEARING DATE:** August 15, 2019

This matter was heard at a noticed public hearing. The following witnesses submitted a written explanation, appeared and/or testified at the hearing on behalf of either the City or the Appellant as noted below. Any written materials submitted with the protest or at the hearing were reviewed by the Hearing Examiner and are on file in the offices of the City of Sacramento.

**City Staff:** Emilio Camacho – Deputy City Attorney

**Appellants:** Yuhuo Wang - Did Not Appear

Robert Saria – Attorney

**TESTIMONY SUMMARY**

**City Staff:**

**Deputy City Attorney Emilio Camacho** delivered an opening statement regarding the City Code section 8.08.050 requirements for proper property management: "Every owner of real property within the city is required to manage the property in a manner so as not to violate the provisions of this code and the owner remains liable for violations thereof regardless of any contract or agreement with any third party regarding the property." Attorney Camacho summarized the Cultivation of Cannabis Ordinance provisions. In particular, he noted that section 8.132.030 of the ordinance states that: "No person shall own, lease, occupy, or have

charge or possession of any property upon which cannabis is knowingly or unknowingly being cultivated" unless one of the exceptions apply. He stated that on May 14, 2018, the Sacramento Police Department (SPD) reviewed the SMUD usage list and noticed that 8040 Maybelline had excessively high electricity usage amounts consistent with an indoor cannabis grow. Between July 2016 – May 2018, the SMUD account holder is either Yuhuo Wang or Xaimei Xu, who are married. Further, that on September 13, 2107, SPD conducted an abatement inspection at the property. No plants were seen but evidence of previous cannabis cultivation was noted.

**The Appellant's attorney Mr. Saria** waived the need for Officer Kirtlan to read his staff report. The report provides that in February 2018, SPD received information regarding a possible illegal cannabis cultivation operation occurring at 8040 Maybelline Way, Sacramento, California.

On May 15, 2018, SPD executed a warrant on the property and observed 367 cannabis plants. As officers were setting up in the area to serve the search warrant, Xiamei Xu exited the residence with two children. A vehicle stop was performed. Xu was allowed to take the children to school and instructed to drive back to the property where she was detained. Officers also observed Liting Wang, her daughter, leave the residence and enter a vehicle in the driveway. Ms. Wang was also detained.

The house was fortified with an external metal security gate protecting the front door of the residence and an exterior metal gate over rear sliding door of the house Inside the residence, officers located marijuana in various stages of growth, indicia of occupancy by the property owners, high intensity discharge (HID) lights, chemicals used for cultivation, digital ballasts, timers, fans, ventilation systems and reflective walls. Also, there was $3,780 in cash found in the residence.

Pursuant to SCC 8.132.050 (E)(1), an administrative penalty in the amount of $180,500 (i.e., $500 per plant over six plants) was issued to the owner of the property for a violation of SCC 8.132.040(B). The citation was posted at the residence. The City also mailed a copy of the administrative penalty to the property owner. According to Officer Kirtlan, the administrative penalty in this case is appropriate due to the potential high proceeds to be gained from the cultivation of illegal cannabis.

**Deputy City Attorney Emilio Camacho delivered** the closing statement stating that given the property inspection, ample indicia, and the continuous illegal cannabis operation at the property, Appellant clearly violated the Sacramento City Code.

**Appellant:**

**Robert Saria** the Attorney for the property owner Yuhuo Wang stated that the property owner admitted growing cannabis at the property, but he asked for a reduction in the fine, especially for the daughter under a related matter. The money found at the residence was from the daughter's student loan.

## FINDINGS OF FACT:

After examining the evidence submitted and arguments offered by City staff, the appellant and witness, if any; the owner's efforts, or lack thereof, to comply with the City Code; the staff time and costs incurred in investigating the violation; the extent, if any, to which the fine or penalty would impose a substantial economic hardship; the seriousness of the violation; the Hearing Examiner hereby makes the following findings:

A. The Administrative Penalty was properly issued and served.

B. That based on the abatement inspection conducted by the SPD on September 13th, 2017, Xiamei Xu was aware of the potential consequences of illegal cannabis cultivation but she nevertheless continued with her cultivation operation.

C. That the Appellant, as Xiamei Xu's spouse and fellow resident of 8040 Maybelline Way, must have been aware of the illegal cannabis cultivation operation on the property but turned a blind eye to it.

## DECISION:

The Administrative Penalty issued on May 15, 2018 in the amount of $180,500.00 is hereby upheld.

IT IS SO ORDERED:

Dated: **September 12, 2019**

Edith Awuah
Hearing Examiner

3

**PAYMENT:** ✓ **Applicable**   ☐ **Not Applicable**

See enclosed invoice.

If the administrative penalty is not paid within the time specified, it may be made a personal obligation of the responsible party, and if applicable may also be made a lien against the property on which the violation occurred, and may be made a special assessment collected at the same time and in the same manner as ordinary secured property taxes are collected.

## APPEAL

If you desire to seek judicial review of the Hearing Examiner's decision, you must file a petition for judicial review with the Sacramento County Superior Court either no later than the 90th day following the date of this decision per California Code of Civil Procedures Sections 1094.5 and 1094.6, or the 20th day following the date of service the decision per California Government Code Section 53069.4.

## PROOF OF SERVICE BY CERTIFIED MAIL
### (CCP § 1013a, 2015.5)

I, Sharon Chand, declare that:

I am a citizen of the United States, over the age of 18 years, not a party to the cause and employed in the County of Sacramento, California. My business address is 915 I Street, Second Floor, Sacramento, California 95814.

I am familiar with the City of Sacramento's business practice for collection and processing of correspondence for mailing with the United States Postal Service on the same day that it is deposited for collection and mailing, in the ordinary course of business.

On September 13, 2019, I served the following notice:

### SACRAMENTO POLICE DEPARTMENT
### ADMINISTRATIVE PENALTY APPEAL HEARING
### RECORD OF DECISION

along with a copy of this Proof of Service by Certified Mail on the interested parties in said cause, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California, addressed as follows:

Yuhuo Wang
8040 Maybelline Way
Sacramento, CA 95823

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed in Sacramento, California, on September 13, 2019.

_____
Sharon Chand

**SPD Report #:** 18-144419
**Violation Address:** 8040 Maybelline Way



City of
# SACRAMENTO
Cannabis Policy & Enforcement

---

**SACRAMENTO POLICE DEPARTMENT**
**ADMINISTRATIVE PENALTY APPEAL HEARING**
**RECORD OF DECISION**

---

**IN THE MATTER OF:**

**SPD REPORT #:** 18-321551
**APPELLANT:** Liting Wang
**VIOLATION ADDRESS:** 745 Melanie Way
**SACRAMENTO CITY CODE SECTION(S):** 8.132.040
**PROPOSED ADMINISTRATIVE PENALTY:** $593,000

**HEARING EXAMINER:** Edith Awuah

**HEARING DATE:** August 15, 2019

This matter was heard at a noticed public hearing. The following witnesses submitted a written explanation, appeared and/or testified at the hearing on behalf of either the City or the Appellant as noted below. Any written materials submitted with the protest or at the hearing were reviewed by the Hearing Examiner and are on file in the offices of the City of Sacramento.

**City Staff:** Kevin Kundinger – Deputy City Attorney

**Appellants:** Liting Wang  Did not appear

Robert Saria – Attorney

**TESTIMONY SUMMARY**

**City Staff**

**Deputy City Attorney Kevin Kundinger** delivered an opening statement regarding the City Code section 8.08.050 requirements for proper property management: "Every owner of real property within the city is required to manage the property in a manner so as not to violate the provisions of this code and the owner remains liable for violations thereof regardless of any contract or agreement with any third party regarding the property." Attorney Kundinger also summarized the Cultivation of Cannabis Ordinance provisions. In particular, he noted that section 8.132.030 of the ordinance states that "No person shall own, lease, occupy, or have

charge or possession of any property upon which cannabis is knowingly or unknowingly being cultivated" unless one of the exceptions apply.

Attorney Kundinger stated that in September 2017, the Sacramento Police Department (SPD) sent the owner a cannabis abatement letter regarding a possible cannabis operation at 745 Melanie Way. On October 12, 2017, SPD conducted a cannabis inspection at the property and met with the Appellant Liting Wang. No cannabis plants were seen but the officer noted evidence of a previous grow (patched holes in ceilings and walls, reflective material on the bedroom walls and metal bars on the inside and outside of the front windows). On May 14, 2018, SPD reviewed SMUD electrical usage records and noticed that 745 Melanie Way had excessively high usage amounts consistent with an indoor cannabis cultivation operation. From July 2016 – May 2018, the SMUD account holder was either Liting Wang or Yuhuo Wang and Xaimei Xu, who were her parents.

The Appellant's attorney Mr. Saria waived the need for Officer Kirtlan to read his staff report. The report provides that on August 16, 2018, the Sacramento Police Department executed a warrant at the property and observed 1192 cannabis plants. No one was at the residence. The exterior doors and windows to the residence were fortified with wrought iron covering them. The garage entry garage door was fortified with use of two 2X4's placed horizontally against the interior side of the door. Inside the residence each of the interior bedroom windows were covered with plywood. The fortifications to the residence are not only a hazard to its occupants, but a violation of Health and Safety Code sections 11366 and 11366.5. There were also high intensity discharge lights, chemicals used for cultivation, digital ballasts, timers, fans, ventilation systems and reflective walls. A plastic bag with one pound of processed cannabis was also found.

The exterior of the residence had surveillance cameras mounted underneath the eaves. The surveillance cameras were placed strategically around the residence to identify other criminal activity or law enforcement presence.

Pursuant to SCC 8.132.050 (E)(1), an administrative penalty in the amount of $593,000 (i.e., $500 per plant over six plants) was issued to the owner of the property for a violation of SCC 8.132.040(B). The citation was posted at the residence. The City also mailed a copy of the administrative penalty to the property owner. According to Officer Kirtlan, the administrative penalty in this case is appropriate due to the potential high proceeds to be gained from the cultivation of illegal cannabis.

Deputy City Attorney Kevin Kundinger delivered his closing statement in which he noted that given the property inspection, ample indicia, and the continuous illegal cannabis operation at the property, Appellant clearly violated the Sacramento City Code. He stated that the SMUD records were in Appellant's name, and her mother's name and father's name. When the Appellant was detained at the associated property at 8040 Maybelline Way where she lived with her parents, she admitted to knowing that her mother grew cannabis at her property. The Appellant also was in possession of a large amount of cash at the time of detention. He concluded that the Appellant was aware of the illegal cannabis cultivation and that Appellant purchased the property with the intent that it be used as an illegal cannabis cultivation operation.

**Appellant:**

Robert Saria the Attorney for the property owner Liting Wang, stated that Liting Wang had knowledge of the grow. Liting Wang is a college student and she is busy with her school. She has no control over the use of her property because her parents were responsible for the cannabis grow operation. He requested lowering the penalty for these reasons. Mr. Saria also stated that Liting Wang's grandparents gave her money to buy the house and asked that she be entitled to retain those funds.

**Hearing Examiner**

Edith Awuah, the hearing examiner noted that according to Zillow, the house has already been sold.

**FINDINGS OF FACT:**

After examining the evidence submitted and arguments offered by City staff, the appellant and witness, if any; the owner's efforts, or lack thereof, to comply with the City Code; the staff time and costs incurred in investigating the violation; the extent, if any, to which the fine or penalty would impose a substantial economic hardship; the seriousness of the violation; the Hearing Examiner hereby makes the following findings:

A. The Administrative Penalty was properly issued and served.

B. The Appellant was the owner of the property at the time of the execution of the search warrant.

C. That the Appellant was aware of the cannabis cultivation at the property but turned a blind eye to it.

D. That the Appellant was aware of the potential implications/consequences of illegal marijuana cultivation as she was present at the SPD abatement inspection conducted on October 12, 2017.

E. That, nevertheless, the Appellant was a college student at the time without substantial capacity to stop her mother Xiamei Xu's cannabis cultivation on the property.

**DECISION:**

The Administrative Penalty issued on May 15, 2018 in the amount of $593,000 is hereby reduced to $250,000.00.

**IT IS SO ORDERED:**

Dated: September 12, 2019

Edith Awuah
Hearing Examiner

4

**PAYMENT:** ✓ Applicable   ☐ Not Applicable

See enclosed invoice.

If the administrative penalty is not paid within the time specified, it may be made a personal obligation of the responsible party, and if applicable may also be made a lien against the property on which the violation occurred, and may be made a special assessment collected at the same time and in the same manner as ordinary secured property taxes are collected.

**APPEAL**

If you desire to seek judicial review of the Hearing Examiner's decision, you must file a petition for judicial review with the Sacramento County Superior Court either no later than the 90th day following the date of this decision per California Code of Civil Procedures Sections 1094.5 and 1094.6, or the 20th day following the date of service the decision per California Government Code Section 53069.4.

## PROOF OF SERVICE BY FIRST CLASS MAIL
### (CCP § 1013a, 2015.5)

I, Sharon Chand, declare that:

I am a citizen of the United States, over the age of 18 years, not a party to the cause and employed in the County of Sacramento, California.  My business address is 915 I Street, Second Floor, Sacramento, California 95814.

I am familiar with the City of Sacramento's business practice for collection and processing of correspondence for mailing with the United States Postal Service on the same day that it is deposited for collection and mailing, in the ordinary course of business.

On September 13, 2019, I served the following notice:

### SACRAMENTO POLICE DEPARTMENT
### ADMINISTRATIVE PENALTY APPEAL HEARING
### RECORD OF DECISION

along with a copy of this Proof of Service by First Class Mail on the interested parties in said cause, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California, addressed as follows:

Robert Saria
11344 Coloma Rd, Ste 110
Gold River, CA 95670

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed in Sacramento, California, on September 13, 2019.

_____

Sharon Chand

SPD Report #:  18-321551
Violation Address:  745 Melanie Way

# *City of* SACRAMENTO

## INVOICE

| | |
|---|---|
| Invoice No: | CPEPAD00228 |
| Invoice Date: | 09/13/2019 |
| Page: | 1 of 1 |

| | |
|---|---|
| Customer ID: | 00128106 |
| Payment Terms: | NET25 |
| Due Date: | 10/08/2019 |
| AMOUNT DUE: | $180,500.00 |

YUHUO WANG
8040 MAYBELLINE WAY
SACRAMENTO CA 95823

AMOUNT PAID:



CUT, DETACH, AND RETURN THIS PORTION OF THE BILL WITH YOUR PAYMENT

RETAIN THIS PORTION FOR YOUR RECORDS

**Bill To:**
YUHUO WANG
8040 MAYBELLINE WAY
SACRAMENTO CA 95823

| | |
|---|---|
| Customer ID: | 00128106 |
| Invoice No | CPEPAD00228 |

| Line | Description | Unit Amt | Net Amount |
|---|---|---|---|
| 1 | 8040 Maybelline | 180,500.00 | 180,500.00 |
| | Violation of SCC 8.132.040.B - Regardless of how many people reside in the private residence, no more than six living cannabis plants may be cultivated within or upon the grounds of the private residence, pursuant to CA H&S Code section 11362.1 | | |
| | SCC 8.132.050.E.1 - The amount of an administrative penalty to be imposed for a violation of sections 8.132.030 or 8.132.040 is an aggregate amount calculated at $500 per plant that is in excess of the number of plants allowed. | | |

| | | |
|---|---|---|
| | Subtotal: | 180,500.00 |
| | **AMOUNT DUE:** | **$180,500.00** |

Contact: Christine Autio, Administrative Officer 916-808-4773

**MAKE CHECK PAYABLE TO:**
City of Sacramento
Revenue Division
915 I Street, Room 1214
Sacramento CA 95814



916-808-5527

Español | 中文
Tagalog | Tiếng Việt
Hmoob | Русский

**PAST DUE ACCOUNTS MAY BE SUBJECT TO A LATE FEE OR COLLECTION FEE. PAY YOUR INVOICE ON-LINE AT http://portal.cityofsacramento.org/Online-Services/Pay-Online.aspx. FOR MORE INFORMATION ABOUT THIS INVOICE OR TO DISCUSS PAYMENT** CALL: 916-808-5527

*City of*
# SACRAMENTO
Cannabis Policy & Enforcement

*Trayvon*
*Robertson*

---

> **SACRAMENTO POLICE DEPARTMENT**
> **ADMINISTRATIVE PENALTY APPEAL HEARING**
> **RECORD OF DECISION**

---

## IN THE MATTER OF:

**SPD REPORT #:** 18-144419
**APPELLANT:** Yuhuo Wang
**VIOLATION ADDRESS:** 8040 Maybelline Way
**SACRAMENTO CITY CODE SECTION(S):** 8.132.040
**PROPOSED ADMINISTRATIVE PENALTY:** $180,500

---

**HEARING EXAMINER:** Edith Awuah

**HEARING DATE:** August 15, 2019

This matter was heard at a noticed public hearing. The following witnesses submitted a written explanation, appeared and/or testified at the hearing on behalf of either the City or the Appellant as noted below. Any written materials submitted with the protest or at the hearing were reviewed by the Hearing Examiner and are on file in the offices of the City of Sacramento.

**City Staff:**    Emilio Camacho – Deputy City Attorney

**Appellants:** Yuhuo Wang - Did Not Appear

Robert Saria – Attorney

## TESTIMONY SUMMARY

**City Staff:**

**Deputy City Attorney Emilio Camacho** delivered an opening statement regarding the City Code section 8.08.050 requirements for proper property management: "Every owner of real property within the city is required to manage the property in a manner so as not to violate the provisions of this code and the owner remains liable for violations thereof regardless of any contract or agreement with any third party regarding the property." Attorney Camacho summarized the Cultivation of Cannabis Ordinance provisions. In particular, he noted that section 8.132.030 of the ordinance states that: "No person shall own, lease, occupy, or have

---

charge or possession of any property upon which cannabis is knowingly or unknowingly being cultivated" unless one of the exceptions apply. He stated that on May 14, 2018, the Sacramento Police Department (SPD) reviewed the SMUD usage list and noticed that 8040 Maybelline had excessively high electricity usage amounts consistent with an indoor cannabis grow. Between July 2016 – May 2018, the SMUD account holder is either Yuhuo Wang or Xaimei Xu, who are married. Further, that on September 13, 2107, SPD conducted an abatement inspection at the property. No plants were seen but evidence of previous cannabis cultivation was noted.

**The Appellant's attorney Mr. Sarla** waived the need for Officer Kirtlan to read his staff report. The report provides that in February 2018, SPD received information regarding a possible illegal cannabis cultivation operation occurring at 8040 Maybelline Way, Sacramento, California.

On May 15, 2018, SPD executed a warrant on the property and observed 367 cannabis plants. As officers were setting up in the area to serve the search warrant, Xiamei Xu exited the residence with two children. A vehicle stop was performed. Xu was allowed to take the children to school and instructed to drive back to the property where she was detained. Officers also observed Liting Wang, her daughter, leave the residence and enter a vehicle in the driveway. Ms. Wang was also detained.

The house was fortified with an external metal security gate protecting the front door of the residence and an exterior metal gate over rear sliding door of the house. Inside the residence, officers located marijuana in various stages of growth, indicia of occupancy by the property owners, high intensity discharge (HID) lights, chemicals used for cultivation, digital ballasts, timers, fans, ventilation systems and reflective walls. Also, there was $3,780 in cash found in the residence.

Pursuant to SCC 8.132.050 (E)(1), an administrative penalty in the amount of $180,500 (i.e., $500 per plant over six plants) was issued to the owner of the property for a violation of SCC 8.132.040(B). The citation was posted at the residence. The City also mailed a copy of the administrative penalty to the property owner. According to Officer Kirtlan, the administrative penalty in this case is appropriate due to the potential high proceeds to be gained from the cultivation of illegal cannabis.

**Deputy City Attorney Emilio Camacho delivered** the closing statement stating that given the property inspection, ample indicia, and the continuous illegal cannabis operation at the property, Appellant clearly violated the Sacramento City Code.

## Appellant:

**Robert Sarla** the Attorney for the property owner Yuhuo Wang stated that the property owner admitted growing cannabis at the property, but he asked for a reduction in the fine, especially for the daughter under a related matter. The money found at the residence was from the daughter's student loan.

**FINDINGS OF FACT:**

After examining the evidence submitted and arguments offered by City staff, the appellant and witness, if any; the owner's efforts, or lack thereof, to comply with the City Code; the staff time and costs incurred in investigating the violation; the extent, if any, to which the fine or penalty would impose a substantial economic hardship; the seriousness of the violation; the Hearing Examiner hereby makes the following findings:

A. The Administrative Penalty was properly issued and served.

B. That based on the abatement inspection conducted by the SPD on September 13th, 2017, Xiamei Xu was aware of the potential consequences of illegal cannabis cultivation but she nevertheless continued with her cultivation operation.

C. That the Appellant, as Xiamei Xu's spouse and fellow resident of 8040 Maybelline Way, must have been aware of the illegal cannabis cultivation operation on the property but turned a blind eye to it.

**DECISION:**

**The Administrative Penalty issued on May 15, 2018 in the amount of $180,500.00 is hereby upheld.**

**IT IS SO ORDERED:**

Dated: <u>September 12, 2019</u>

Edith Awuah
Hearing Examiner

3

**PAYMENT:** ✓ **Applicable**   ☐ **Not Applicable**

See enclosed invoice.

If the administrative penalty is not paid within the time specified, it may be made a personal obligation of the responsible party, and if applicable may also be made a lien against the property on which the violation occurred, and may be made a special assessment collected at the same time and in the same manner as ordinary secured property taxes are collected.

**APPEAL**

If you desire to seek judicial review of the Hearing Examiner's decision, you must file a petition for judicial review with the Sacramento County Superior Court either no later than the 90th day following the date of this decision per California Code of Civil Procedures Sections 1094.5 and 1094.6, or the 20th day following the date of service the decision per California Government Code Section 53069.4.

## PROOF OF SERVICE BY CERTIFIED MAIL
### (CCP § 1013a, 2015.5)

I, Sharon Chand, declare that:

I am a citizen of the United States, over the age of 18 years, not a party to the cause and employed in the County of Sacramento, California.  My business address is 915 I Street, Second Floor, Sacramento, California 95814.

I am familiar with the City of Sacramento's business practice for collection and processing of correspondence for mailing with the United States Postal Service on the same day that it is deposited for collection and mailing, in the ordinary course of business.

On September 13, 2019, I served the following notice:

### SACRAMENTO POLICE DEPARTMENT
### ADMINISTRATIVE PENALTY APPEAL HEARING
### RECORD OF DECISION

along with a copy of this Proof of Service by Certified Mail on the interested parties in said cause, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California, addressed as follows:

Yuhuo Wang
8040 Maybelline Way
Sacramento, CA 95823

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed in Sacramento, California, on September 13, 2019.



_____
Sharon Chand



SPD Report #:  18-144419
Violation Address:  8040 Maybelline Way



*City of*
# SACRAMENTO
Cannabis Policy & Enforcement

---

**SACRAMENTO POLICE DEPARTMENT**
**ADMINISTRATIVE PENALTY APPEAL HEARING**
**RECORD OF DECISION**

---

**IN THE MATTER OF:**

**SPD REPORT #:** 18-321551
**APPELLANT:** Liting Wang
**VIOLATION ADDRESS:** 745 Melanie Way
**SACRAMENTO CITY CODE SECTION(S):** 8.132.040
**PROPOSED ADMINISTRATIVE PENALTY:** $593,000

**HEARING EXAMINER:** Edith Awuah

**HEARING DATE:** August 15, 2019

This matter was heard at a noticed public hearing. The following witnesses submitted a written explanation, appeared and/or testified at the hearing on behalf of either the City or the Appellant as noted below. Any written materials submitted with the protest or at the hearing were reviewed by the Hearing Examiner and are on file in the offices of the City of Sacramento.

**City Staff:** Kevin Kundinger -- Deputy City Attorney

**Appellants:** Liting Wang  Did not appear

Robert Saria -- Attorney

**TESTIMONY SUMMARY**

**City Staff:**

**Deputy City Attorney Kevin Kundinger** delivered an opening statement regarding the City Code section 8.08.050 requirements for proper property management: "Every owner of real property within the city is required to manage the property in a manner so as not to violate the provisions of this code and the owner remains liable for violations thereof regardless of any contract or agreement with any third party regarding the property." Attorney Kundinger also summarized the Cultivation of Cannabis Ordinance provisions. In particular, he noted that section 8.132.030 of the ordinance states that: "No person shall own, lease, occupy, or have

---

charge or possession of any property upon which cannabis is knowingly or unknowingly being cultivated" unless one of the exceptions apply.

Attorney Kundinger stated that in September 2017, the Sacramento Police Department (SPD) sent the owner a cannabis abatement letter regarding a possible cannabis operation at 745 Melanie Way. On October 12, 2017, SPD conducted a cannabis inspection at the property and met with the Appellant Liting Wang. No cannabis plants were seen but the officer noted evidence of a previous grow (patched holes in ceilings and walls, reflective material on the bedroom walls and metal bars on the inside and outside of the front windows). On May 14, 2018, SPD reviewed SMUD electrical usage records and noticed that 745 Melanie Way had excessively high usage amounts consistent with an indoor cannabis cultivation operation. From July 2016 – May 2018, the SMUD account holder was either Liting Wang or Yuhuo Wang and Xaimei Xu, who were her parents.

The Appellant's attorney Mr. Sarla waived the need for Officer Kirtlan to read his staff report. The report provides that on August 16, 2018, the Sacramento Police Department executed a warrant at the property and observed 1192 cannabis plants. No one was at the residence. The exterior doors and windows to the residence were fortified with wrought iron covering them. The garage entry garage door was fortified with use of two 2X4's placed horizontally against the interior side of the door. Inside the residence each of the interior bedroom windows were covered with plywood. The fortifications to the residence are not only a hazard to its occupants, but a violation of Health and Safety code sections 11366 and 11366.5. There were also high intensity discharge lights, chemicals used for cultivation, digital ballasts, timers, fans, ventilation systems and reflective walls. A plastic bag with one pound of processed cannabis was also found.

The exterior of the residence had surveillance cameras mounted underneath the eaves. The surveillance cameras were placed strategically around the residence to identify other criminal activity or law enforcement presence.

Pursuant to SCC 8.132.050 (E)(1), an administrative penalty in the amount of $593,000 (i.e., $500 per plant over six plants) was issued to the owner of the property for a violation of SCC 8.132.040(B). The citation was posted at the residence. The City also mailed a copy of the administrative penalty to the property owner. According to Officer Kirtlan, the administrative penalty in this case is appropriate due to the potential high proceeds to be gained from the cultivation of illegal cannabis.

Deputy City Attorney Kevin Kundinger delivered his closing statement in which he noted that given the property inspection, ample indicia, and the continuous illegal cannabis operation at the property, Appellant clearly violated the Sacramento City Code. He stated that the SMUD records were in Appellant's name, and her mother's name and father's name. When the Appellant was detained at the associated property at 8040 Maybelline Way where she lived with her parents, she admitted to knowing that her mother grew cannabis at her property. The Appellant also was in possession of a large amount of cash at the time of detention. He concluded that the Appellant was aware of the illegal cannabis cultivation and that Appellant purchased the property with the intent that it be used as an illegal cannabis cultivation operation.

**Appellant:**

Robert Saria the Attorney for the property owner Liting Wang, stated that Liting Wang had knowledge of the grow. Liting Wang is a college student and she is busy with her school. She has no control over the use of her property because her parents were responsible for the cannabis grow operation. He requested lowering the penalty for these reasons.  Mr. Saria also stated that Liting Wang's grandparents gave her money to buy the house and asked that she be entitled to retain those funds.

**Hearing Examiner**

Edith Awuah, the hearing examiner noted that according to Zillow, the house has already been sold.

**FINDINGS OF FACT:**

After examining the evidence submitted and arguments offered by City staff, the appellant and witness, if any, the owner's efforts, or lack thereof, to comply with the City Code; the staff time and costs incurred in investigating the violation; the extent, if any, to which the fine or penalty would impose a substantial economic hardship; the seriousness of the violation; the Hearing Examiner hereby makes the following findings:

A. The Administrative Penalty was properly issued and served.

B. The Appellant was the owner of the property at the time of the execution of the search warrant.

C. That the Appellant was aware of the cannabis cultivation at the property but turned a blind eye to it.

D. That the Appellant was aware of the potential implications/consequences of illegal marijuana cultivation as she was present at the SPD abatement inspection conducted on October 12, 2017.

E. That, nevertheless, the Appellant was a college student at the time without substantial capacity to stop her mother Xiamei Xu's cannabis cultivation on the property.

**DECISION:**

The Administrative Penalty issued on May 15, 2018 in the amount of $593,000 is hereby reduced to $250,000.00.

**IT IS SO ORDERED:**

Dated:  **September 12, 2019**

Edith Awuah
Hearing Examiner

4

**PAYMENT:** ✓ Applicable   ☐ Not Applicable

See enclosed invoice.

If the administrative penalty is not paid within the time specified, it may be made a personal obligation of the responsible party, and if applicable may also be made a lien against the property on which the violation occurred, and may be made a special assessment collected at the same time and in the same manner as ordinary secured property taxes are collected.

**APPEAL**

If you desire to seek judicial review of the Hearing Examiner's decision, you must file a petition for judicial review with the Sacramento County Superior Court either no later than the 90th day following the date of this decision per California Code of Civil Procedures Sections 1094.5 and 1094.6, or the 20th day following the date of service the decision per California Government Code Section 53069.4.

**PROOF OF SERVICE BY FIRST CLASS MAIL**
(CCP § 1013a, 2015.5)

I, Sharon Chand, declare that:

I am a citizen of the United States, over the age of 18 years, not a party to the cause and, employed in the County of Sacramento, California. My business address is 915 I Street, Second Floor, Sacramento, California 95814.

I am familiar with the City of Sacramento's business practice for collection and processing of correspondence for mailing with the United States Postal Service on the same day that it is deposited for collection and mailing, in the ordinary course of business.

On September 13, 2019, I served the following notice:

**SACRAMENTO POLICE DEPARTMENT**
**ADMINISTRATIVE PENALTY APPEAL HEARING**
**RECORD OF DECISION**

along with a copy of this Proof of Service by First Class Mail on the interested parties in said cause, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California, addressed as follows:

Robert Saria
11344 Coloma Rd, Ste 110
Gold River, CA 95670

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed in Sacramento, California, on September 13, 2019.

_____
Sharon Chand

SPD Report #:  18-321551
Violation Address:  745 Melanie Way

ATTACHMENT 1

653 Fed.Appx. 562
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial
decisions issued on or after Jan. 1, 2007.
See also U.S.Ct. of App. 9th Cir. Rule 36-3.
United States Court of Appeals, Ninth Circuit.

Gholwan MECHAMMIL, Plaintiff–Appellant,

v.

CITY OF SAN JACINTO; Tim Hults;
Tom Prill; County of Riverside;
Don Kent, Defendants–Appellees.

No. 14–56308
|
Argued and Submitted June
9, 2016 Pasadena, California
|
FILED June 30, 2016

**Synopsis**
**Background:** Property owner filed § 1983 action alleging
that city improperly imposed special assessments against his
property for municipal code violations. The United States
District Court for the Central District of California, Jesus
G. Bernal, J., 2014 WL 10988094, dismissed complaint, and
owner appealed.

**Holdings:** The Court of Appeals held that:

[1] city was prohibited from imposing special assessment or
attaching lien to real property to collect nuisance abatement
fines;

[2] owner's takings claim against city was ripe for
adjudication;

[3] owner's substantive due process claim was ripe; and

[4] city's imposition of special assessments did not violate
owner's procedural due process rights.

Affirmed in part, reversed in part, vacated in part, and
remanded.

West Headnotes (4)

[1]    **Municipal Corporations**
       ⟜ Different punishment, penalty, or license
       fee prescribed by ordinance
       Under California law, city was prohibited from
       imposing special assessment or attaching lien to
       real property to collect nuisance abatement fines
       or penalties for municipal ordinance violations.
       Cal. Gov't Code §§ 38773.1(a), 38773.5(a),
       53069.4(a)(1).

[2]    **Eminent Domain**
       ⟜ Conditions precedent to action; ripeness
       Property owner's takings claim against city was
       ripe for adjudication, even though owner did not
       bring "claim for compensation" in state court,
       where owner's state complaint sought "damages
       for losses from the depletion of the value of the
       Property." U.S. Const. Amend. 5.

[3]    **Constitutional Law**
       ⟜ Ripeness; prematurity
       Property owner's substantive due process claim
       against city based on its imposition of special
       assessments against his property for municipal
       code violations was ripe for adjudication,
       where city had already relied on ordinance to
       assess property, and those assessments had been
       charged on owner's tax bills and were accruing
       significant interest. U.S. Const. Amend. 14.

[4]    **Constitutional Law**
       ⟜ Nuisances and nuisance abatement
       **Nuisance**
       ⟜ Abatement by act of public authorities
       City's imposition of special assessments against
       property for municipal code violations did not
       violate property owner's procedural due process
       rights, even if city's notices did not comply
       with state's lis pendens law, where city recorded

14 notices of pendency of nuisance abatement proceeding, which would have led reasonably prudent purchaser to inquire of either seller or city or both whether citation issues had been resolved, and county provided well-defined process for appealing assessments. U.S. Const. Amend. 14.

2 Cases that cite this headnote

**Attorneys and Law Firms**

**\*563** Hugh E. Knowlton, Attorney, Hugh Knowlton Law Offices, Los Angeles, CA, Gerald M. Serlin, Attorney, Douglas Gordon Benedon, Attorney, Benedon & Serlin, LLP, Woodland Hills, CA, Dhillon Khosla, Dhillon Khosla Law Offices, Santa Rosa, CA, for Plaintiff–Appellant.

Richard Tait Egger, Attorney, Ontario, CA, Irene Susan Zurko, Sacramento, CA, Best Best & Krieger LLP, for Defendants–Appellees.

Appeal from the United States District Court for the Central District of California, Jesus G. Bernal, District Judge, Presiding, D.C. No. 5:13–cv–01380–JGB–SP

Before: GOULD and HURWITZ, Circuit Judges, and RESTANI, [*] Judge.

## MEMORANDUM [**]

[1] The primary question in this case is whether cities in California may impose a special assessment or attach a lien to real property to collect fines or penalties for municipal ordinance violations. We hold that California law prohibits cities from doing so. We reverse in part, vacate in part, and affirm in part the district court's order, and we remand for further proceedings.

1. San Jacinto Municipal Code § 1.28.110(C) allows the city to "place a lien on property that is the subject of a citation if the citation has been issued to the current property owner of record." "[T]he amount of the proposed lien may be collected as a special assessment at the same time and in the same manner as property taxes are collected." SJMC § 1.28.110(C) (3). Mechammil argues that **\*564** these city ordinances are inconsistent with California state law. We agree.

In support of its ordinances, San Jacinto relies on California Government Code § 53069.4(a)(1), which allows cities to "make any violation of any ordinance enacted by the local agency subject to an administrative fine or penalty." The city "shall set forth by ordinance the administrative procedures that shall govern the imposition, enforcement, collection, and administrative review by the local agency of those administrative fines or penalties." *Id.* Read in isolation, this provision does not restrict a city's authority to collect fines by lien or special assessment. But we read the words of a statute "in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (citation omitted). "[T]he meaning of one statute may be affected by other Acts." *Id.* (citation omitted); *see also King v. Burwell,* — U.S. —, 135 S.Ct. 2480, 2489, 192 L.Ed.2d 483 (2015).

A related California statute provides that "[t]he legislative body [of a city] may by ordinance establish a procedure to collect abatement and related administrative *costs* by a nuisance abatement lien." Cal. Gov't Code § 38773.1(a) (emphasis added). As an alternative, California Government Code § 38773.5(a) allows cities to "make the *cost* of abatement of a nuisance upon a parcel of land a special assessment against that parcel." (emphasis added). These statutes authorize the use of liens and assessments only to collect nuisance abatement costs, not fines or penalties. Applying the *expressio unius est exclusio alterius* [1] canon of statutory interpretation, *see Silvers v. Sony Pictures Entm't, Inc.,* 402 F.3d 881, 885 (9th Cir. 2005) (en banc), we conclude that California law does not authorize cities to collect nuisance fines or penalties by attaching a lien or imposing an assessment.

Extrinsic evidence also supports this interpretation of California law. In 2009–10, the California legislature passed a bill to amend California Government Code §§ 38773.1 and 38773.5 to include "fines related to the nuisance abatement." *See* Assemb. B. 2317, 2009–10 Reg. Sess. (Cal. 2010). As stated by the Legislative Counsel's Digest, "Existing law authorizes the legislative body of a city or county to establish a procedure to use a nuisance abatement lien or a special assessment to collect abatement costs and related administrative costs. This bill would authorize ... the legislative body of a city or county to also collect fines related to the nuisance abatement using a nuisance abatement lien or a special assessment." This legislation was vetoed, however, by

Governor Schwarzenegger, who stated, "It is important that the due process rights of homeowners are balanced against a local government's right to collect a nuisance abatement fine. The current system that requires a local government to seek judicial approval to impose a lien properly balances these opposing interests." Veto Message to Cal. Assemb. B. 2317, 2009–10 Reg. Sess. (Sept. 30, 2010).

Additionally, the California legislature passed three other bills between 2010 and 2013 to amend California Government Code § 53069.4 to allow cities to use special assessments and liens to collect fines or penalties associated with ordinance violations. See Assemb. B. 683, 2013–14 Reg. Sess. (Cal. 2013); Assemb. B. 129, 2011–12 Reg. Sess. (Cal. 2011); Assemb. B. 2613, 2009–10 Reg. Sess. (Cal. 2010). As the author of Assembly Bill 683 stated, "AB 683 closes the loop on an anomaly where **565** cities and counties can recover their costs for code enforcement by way of lien or tax assessment—but are not able to similarly enforce fines." Bill Analysis to Cal. Assemb. B. 683, 2013–14 Reg. Sess., at 3 (Sept. 5, 2013). Each of these bills was also vetoed by the governor. This extrinsic evidence reinforces our interpretation of the California statutes. See Indep. Home Support Serv., Inc. v. Superior Court, 145 Cal.App.4th 1418, 52 Cal.Rptr.3d 562, 572–73 & n.4 (2006) (explaining that a bill that passes but is vetoed can shed light on legislative intent, and giving a governor's veto message "considerable weight").

We hold that cities in California cannot attach liens or impose special assessments to collect outstanding nuisance fines or penalties. We reverse the district court's dismissal of this claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and we instruct the district court on remand to grant declaratory relief to Mechammil on this issue.

[2] **2.** The district court erred in dismissing Mechammil's takings and substantive due process claims as unripe. With respect to the takings claim, the district court held that Mechammil was first required to bring "a claim for compensation" in state court, rather than a "takings claim." We see no meaningful distinction between the two terms. Mechammil's state complaint sought "damages for losses from the depletion of the value of the Property," which we understand to be a claim for compensation for the allegedly unlawful taking. The only reason the claim ended up in federal court was because the defendants removed it.

[3] We also reverse the district court's dismissal of Mechammil's substantive due process claim as unripe. The

district court held that Mechammil had not "obtained a 'final decision' concerning the applicability of SJMC § 1.28.110 as it applies to his property." But the City had already relied on that ordinance to assess Mechammil's property, and those assessments had been charged on Mechammil's tax bills and were accruing significant interest. No further government action was necessary to make those assessments "final." The City's brief confuses ripeness, i.e. the need to have received a final decision, with exhaustion, i.e. the need to first use state or local procedures to allow a state or local agency to address a legal dispute before filing a federal lawsuit. There is no general exhaustion requirement under 42 U.S.C. § 1983. See Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). We vacate the district court's dismissal of these claims and remand for the district court to reconsider whether Mechammil has stated claims under the Takings Clause and the substantive component of the Due Process Clause.

[4] **3.** The district court did not err in dismissing Mechammil's procedural due process claim for failure to state a claim. Although the parties disagree whether the Notices of Pendency of Nuisance Abatement Proceeding were properly recorded as lis pendens such that they put Mechammil on constructive or inquiry notice under California law, the question of what process is due under the U.S. Constitution is a question of federal, not state, law: Ford v. Wainwright, 477 U.S. 399, 428–29, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (O'Connor, J., concurring in the result in part and dissenting in part); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Schroeder v. City of New York, 371 U.S. 208, 211, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962). We hold that the City provided notice " 'reasonably calculated under all the circumstances' to apprise [Mechammil] of the pendency of the [assessment]." **566** Dusenbury v. United States, 534 U.S. 161, 168, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002); see also Braxton–Secret v. A.H. Robins Co., 769 F.2d 528, 531 (9th Cir. 1985) (noting that inquiry notice can become a question of law when "the palpable facts are substantially undisputed"). Because the fourteen Notices were recorded, whether lawfully or not, a reasonably prudent purchaser would have discovered them before purchase. And once seeing the recorded Notices of nuisance actions—without seeing any documents showing a resolution of the citations or a discharge of the fines—a reasonably prudent purchaser would have inquired of either the seller or the City or both whether the citation issues had been resolved.

We further hold that Mechammil had sufficient opportunity to be heard because Riverside County has a well-defined process for appealing assessments, complete with a website providing manuals, forms, instructions, and rules of procedure. *See* Assessment Appeals, Riverside County Clerk of the Board, http://www.rivcocob.org/assessment-appeals-office (last visited June 24, 2016); *see also* Assessment Appeal Application, http://rivcocob.org/wpcontent/uploads/2015/06/305ah_form_NEW.pdf (last visited June 24, 2016) (allowing taxpayers to appeal on that the grounds that a "[p]enalty assessment is not justified"). Mechammil did not use this appeal process when he received his first tax bill including the assessment from Riverside County in February 2012, nor did he do so when he received another tax bill with an assessment in September 2012. "[W]here adequate administrative procedures exist, a person cannot state a claim for denial of procedural rights when he has elected to forego" those procedures. *Correa v. Nampa Sch. Dist. No. 131*, 645 F.2d 814, 817 (9th Cir. 1981) (citing *Bignall v. N. Idaho Coll.*, 538 F.2d 243, 247 (9th Cir. 1976)).

We affirm the dismissal of Mechammil's procedural due process claim.

5. The district court did not abuse its discretion in dismissing Mechammil's Eighth Amendment excessive fines claim because it exceeded the court's order allowing amendment. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992).

6. Given our holding on the validity of the assessments under California law, we need not reach the question whether Mechammil was a bona-fide purchaser for value under California law.

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.** Costs on appeal are awarded to Mechammil. *See* Fed. R. App. P. 39(a)(4).

**All Citations**

653 Fed.Appx. 562

**Footnotes**

\*      The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

\*\*     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1      This Latin maxim literally means "the expression of one is the exclusion of others."

   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**ATTACHMENT 2**

Timbs v. Indiana, 139 S.Ct. 682 (2019)
203 L.Ed.2d 11, 19 Cal. Daily Op. Serv. 1559, 2019 Daily Journal D.A.R. 1337...

KeyCite Yellow Flag - Negative Treatment
Declined to Extend by Barton v. Davis, S.D.Tex., November 25, 2019

139 S.Ct. 682
Supreme Court of the United States.

Tyson TIMBS, Petitioner

v.

INDIANA

No. 17-1091
|
Argued November 28, 2018
|
Decided February 20, 2019

**Synopsis**
**Background:** The State of Indiana brought a civil in rem forfeiture action, seeking to obtain the vehicle owned by a criminal defendant who had pleaded guilty to dealing in a controlled substance and felony theft. The Superior Court, Grant County, No. 27D01–1308–MI–92, Jeffrey D. Todd, J., denied the requested forfeiture, and the State appealed. The Court of Appeals of Indiana, Mathias, J., 62 N.E.3d 472, affirmed. After granting transfer, the Supreme Court of Indiana, Slaughter, J., 84 N.E.3d 1179, reversed and remanded. Certiorari was granted.

**Holdings:** The Supreme Court, Justice Ginsburg, held that:

[1] Eighth Amendment's Excessive Fines Clause is an incorporated protection applicable to the States, and

[2] issue of whether *Austin v. U.S.*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488, should be overruled was not properly before the Court.

Vacated and remanded.

Justice Gorsuch filed a concurring opinion.

Justice Thomas filed an opinion concurring in the judgment.

West Headnotes (12)

[1]     **Fines**
        ⟜ Excessive fines

        The Eighth Amendment's Excessive Fines Clause, which protects against excessive punitive economic sanctions, is fundamental to the scheme of ordered liberty, with deep roots in the Nation's history and tradition, and thus the Clause is an incorporated protection applicable to the States under the Fourteenth Amendment's Due Process Clause. U.S. Const. Amends. 8, 14.

        24 Cases that cite this headnote

[2]     **Constitutional Law**
        ⟜ Bill of Rights in general

        A Bill of Rights protection is an incorporated protection, applicable to the States under the Fourteenth Amendment's Due Process Clause, if it is fundamental to the scheme of ordered liberty, or deeply rooted in the Nation's history and tradition. U.S. Const. Amend. 14.

        5 Cases that cite this headnote

[3]     **Constitutional Law**
        ⟜ State government

        Incorporated Bill of Rights guarantees are enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment. U.S. Const. Amend. 14.

        1 Cases that cite this headnote

[4]     **Constitutional Law**
        ⟜ State government

        If a Bill of Rights protection is incorporated by the Fourteenth Amendment's Due Process Clause, and thus enforced against the States, there is no daylight between the federal and state conduct it prohibits or requires. U.S. Const. Amend. 14.

Timbs v. Indiana, 139 S.Ct. 682 (2019)

203 L.Ed.2d 11, 19 Cal. Daily Op. Serv. 1559, 2019 Daily Journal D.A.R. 1337...

5 Cases that cite this headnote

[5]     **Jury**
        ⟶ Concurrence of less than whole number
        The Sixth Amendment requires jury unanimity in federal, but not state, criminal proceedings. U.S. Const. Amend. 6.

[6]     **Bail**
        ⟶ Excessive bail
        **Fines**
        ⟶ Excessive fines
        **Sentencing and Punishment**
        ⟶ Cruel and Unusual Punishment in General
        Taken together, the Eighth Amendment's prohibitions on excessive bail, excessive fines, and cruel and unusual punishments place parallel limitations on the power of those entrusted with the criminal-law function of government. U.S. Const. Amend. 8.

        12 Cases that cite this headnote

[7]     **Fines**
        ⟶ Excessive fines
        The Eighth Amendment's Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense. U.S. Const. Amend. 8.

        8 Cases that cite this headnote

[8]     **Constitutional Law**
        ⟶ State government
        When a Bill of Rights protection is incorporated by the Fourteenth Amendment's Due Process Clause, and thus enforced against the States, the protection applies identically to both the Federal Government and the States. U.S. Const. Amend. 14.

        3 Cases that cite this headnote

[9]     **Federal Courts**
        ⟶ Review of state courts
        Issue of whether Supreme Court should overrule its decision in *Austin v. U.S.*, 509 U. S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488, which held that civil in rem forfeitures fell within protection of the Excessive Fines Clause when they were at least partially punitive, was not properly before the Court, in suit in which petitioner challenged, as excessive, the State of Indiana's civil forfeiture of his $42,000 vehicle following drug conviction; the State never argued below that civil in rem forfeitures were categorically beyond the reach of the Excessive Fines Clause, the Indiana Supreme Court, in affirming the forfeiture, held that the Clause did not apply to the States and it nowhere addressed the Clause's application to civil in rem forfeitures, and petitioner sought certiorari review of the question whether the Clause was incorporated against the States under the Fourteenth Amendment. U.S. Const. Amends. 8, 14.

        4 Cases that cite this headnote

[10]    **Federal Courts**
        ⟶ Briefs and oral argument
        Respondents' right, in their brief in opposition before the Supreme Court, to restate the questions presented does not give them the power to expand those questions, and that is particularly the case where a respondent's reformulation would lead the Court to address a question neither pressed nor passed upon below.

        1 Cases that cite this headnote

[11]    **Constitutional Law**
        ⟶ Bill of Rights in general
        In considering whether the Fourteenth Amendment incorporates a protection contained in the Bill of Rights, the Supreme Court asks whether the right guaranteed, not each and every particular application of that right, is fundamental or deeply rooted. U.S. Const. Amend. 14.

Timbs v. Indiana, 139 S.Ct. 682 (2019)
203 L.Ed.2d 11, 19 Cal. Daily Op. Serv. 1559, 2019 Daily Journal D.A.R. 1337...

[12] **Constitutional Law**
&rlarr; Eighth Amendment
**Fines**
&rlarr; Excessive fines

The Eighth Amendment's Excessive Fines Clause is incorporated under the Fourteenth Amendment's Due Process Clause, and thus enforceable against the States, regardless of whether application of the Excessive Fines Clause to civil in rem forfeitures is itself fundamental to the scheme of ordered liberty or deeply rooted in the Nation's history and tradition. U.S. Const. Amends. 8, 14.

27 Cases that cite this headnote

*Syllabus* *

Tyson Timbs pleaded guilty in Indiana state court to dealing in a controlled substance and conspiracy to commit theft. At the time of Timbs's arrest, the police seized a Land Rover SUV Timbs had purchased for $42,000 with money he received from an insurance policy when his father died. The State sought civil forfeiture of Timbs's vehicle, charging that the SUV had been used to transport heroin. Observing that Timbs had recently purchased the vehicle for more than four times the maximum $10,000 monetary fine assessable against him for his drug conviction, the trial court denied the State's request. The vehicle's forfeiture, the court determined, would be grossly disproportionate to the gravity of Timbs's offense, and therefore unconstitutional under the Eighth Amendment's Excessive Fines Clause. The Court of Appeals of Indiana affirmed, but the Indiana Supreme Court reversed, holding that the Excessive Fines Clause constrains only federal action and is inapplicable to state impositions.

*Held*: The Eighth Amendment's Excessive Fines Clause is an incorporated protection applicable to the States under the Fourteenth Amendment's Due Process Clause. Pp. 686 – 691.

(a) The Fourteenth Amendment's Due Process Clause incorporates and renders applicable to the States Bill of Rights protections "fundamental to our scheme of ordered liberty," or "deeply rooted in this Nation's history and tradition." *McDonald v. Chicago*, 561 U.S. 742, 767, 130 S.Ct. 3020,

177 L.Ed.2d 894. (alterations omitted). If a Bill of Rights protection is incorporated, there is no daylight between the federal and state conduct it prohibits or requires. Pp. 686 – 687.

(b) The prohibition embodied in the Excessive Fines Clause carries forward protections found in sources from Magna Carta to the English Bill of Rights to state constitutions from the colonial era to the present day. Protection against excessive fines has been a constant shield throughout Anglo-American history for good reason: Such fines undermine other liberties. They can be used, *e.g.*, to retaliate against or chill the speech of political enemies. They can also be employed, not in service of penal purposes, but as a source of revenue. The historical and logical case for concluding that the Fourteenth Amendment incorporates the Excessive Fines Clause is indeed overwhelming. Pp. 687 – 690.

(c) Indiana argues that the Clause does not apply to its use of civil *in rem* forfeitures, but this Court held in *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488, that such forfeitures fall within the Clause's protection when they are at least partially punitive. Indiana cannot prevail unless the Court overrules *Austin* or holds that, in light of *Austin*, the Excessive Fines Clause is not incorporated because its application to civil *in rem* forfeitures is neither fundamental nor deeply rooted.

The first argument, overturning *Austin*, is not properly before this Court. The Indiana Supreme Court held only that the Excessive Fines Clause did not apply to the States. The court did not address the Clause's application to civil *in rem* forfeitures, nor did the State ask it to do so. Timbs thus sought this Court's review only of the question whether the Excessive Fines Clause is incorporated by the Fourteenth Amendment. Indiana attempted to reformulate the question to ask whether the Clause restricted States' use of civil *in rem* forfeitures and argued on the merits that *Austin* was wrongly decided. Respondents' "right, ... to restate the questions presented," however, "does not give them the power to expand [those] questions," *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 279, n. 10, 113 S.Ct. 753, 122 L.Ed.2d 34 (emphasis deleted), particularly where the proposed reformulation would lead the Court to address a question neither pressed nor passed upon below, cf. *Cutter v. Wilkinson*, 544 U.S. 709, 718, n. 7, 125 S.Ct. 2113, 161 L.Ed.2d 1020.

Timbs v. Indiana, 139 S.Ct. 682 (2019)

203 L.Ed.2d 11, 19 Cal. Daily Op. Serv. 1559, 2019 Daily Journal D.A.R. 1337...

The second argument, that the Excessive Fines Clause cannot be incorporated if it applies to civil *in rem* forfeitures, misapprehends the nature of the incorporation inquiry. In considering whether the Fourteenth Amendment incorporates a Bill of Rights protection, this Court asks whether the right guaranteed—not each and every particular application of that right—is fundamental or deeply rooted. To suggest otherwise is inconsistent with the approach taken in cases concerning novel applications of rights already deemed incorporated. See, *e.g., Packingham v. North Carolina,* 582 U.S. ——, ——, 137 S.Ct. 1730, 1733, 198 L.Ed.2d 273. The Excessive Fines Clause is thus incorporated regardless of whether application of the Clause to civil *in rem* forfeitures is itself fundamental or deeply rooted. Pp. 689 – 691.

84 N.E.3d 1179, vacated and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C.J., and BREYER, ALITO, SOTOMAYOR, KAGAN, GORSUCH, and KAVANAUGH, JJ., joined. GORSUCH, J., filed a concurring opinion. THOMAS, J., filed an opinion concurring in the judgment.

**Attorneys and Law Firms**

*684 Wesley P. Hottot, Seattle, WA, for Petitioner.

Thomas M. Fisher, Solicitor General, for Respondent.

Samuel B. Gedge, Scott G. Bullock, Darpana M. Sheth, Institute for Justice, Arlington, VA, Wesley P. Hottot, Institute for Justice, Seattle, WA, for Petitioners.

Office of the Attorney General, Indianapolis, IN, Curtis T. Hill, Jr., Attorney General, Thomas M. Fisher, Solicitor General, Kian J. Hudson, Deputy Solicitor General, Aaron T. Craft, Julia C. Payne, Deputy Attorneys General, for Respondent.

**Opinion**

Justice GINSBURG delivered the opinion of the Court.

*686 Tyson Timbs pleaded guilty in Indiana state court to dealing in a controlled substance and conspiracy to commit theft. The trial court sentenced him to one year of home detention and five years of probation, which included a court-supervised addiction-treatment program. The sentence also required Timbs to pay fees and costs totaling $ 1,203. At the time of Timbs's arrest, the police seized his vehicle, a Land

Rover SUV Timbs had purchased for about $ 42,000. Timbs paid for the vehicle with money he received from an insurance policy when his father died.

The State engaged a private law firm to bring a civil suit for forfeiture of Timbs's Land Rover, charging that the vehicle had been used to transport heroin. After Timbs's guilty plea in the criminal case, the trial court held a hearing on the forfeiture demand. Although finding that Timbs's vehicle had been used to facilitate violation of a criminal statute, the court denied the requested forfeiture, observing that Timbs had recently purchased the vehicle for $ 42,000, more than four times the maximum $ 10,000 monetary fine assessable against him for his drug conviction. Forfeiture of the Land Rover, the court determined, would be grossly disproportionate to the gravity of Timbs's offense, hence unconstitutional under the Eighth Amendment's Excessive Fines Clause. The Court of Appeals of Indiana affirmed that determination, but the Indiana Supreme Court reversed, 84 N.E.3d 1179 (2017). The Indiana Supreme Court did not decide whether the forfeiture would be excessive. Instead, it held that the Excessive Fines Clause constrains only federal action and is inapplicable to state impositions. We granted certiorari. 585 U.S. ——, 138 S.Ct. 2650, 201 L.Ed.2d 1049 (2018).

[1] The question presented: Is the Eighth Amendment's Excessive Fines Clause an "incorporated" protection applicable to the States under the Fourteenth Amendment's Due Process Clause? Like the Eighth Amendment's proscriptions of "cruel and unusual punishment" and "[e]xcessive bail," the protection against excessive fines guards against abuses of government's punitive or criminal-law-enforcement authority. This safeguard, we hold, is "fundamental to our scheme of ordered liberty," with "dee[p] root[s] in [our] history and tradition." *McDonald v. Chicago,* 561 U.S. 742, 767, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (internal quotation marks omitted; emphasis deleted). The Excessive Fines Clause is therefore incorporated by the Due Process Clause of the Fourteenth Amendment.

I

A

[2] When ratified in 1791, the Bill of Rights applied only to the Federal Government. *Barron ex rel. Tiernan v. Mayor of Baltimore,* 7 Pet. 243, 8 L.Ed. 672 (1833). "The constitutional Amendments adopted in the aftermath of the

Civil War," however, "fundamentally altered our country's federal system." *McDonald,* 561 U.S. at 754, 130 S.Ct. 3020. With only "a handful" of exceptions, this Court has held that the Fourteenth Amendment's Due Process Clause incorporates the protections contained in the Bill of Rights, rendering them applicable to the States. *Id.,* at 764–765, and nn. 12–13, 130 S.Ct. 3020. A Bill of Rights protection is incorporated, we have explained, if it is "fundamental to our scheme of ordered liberty," or "deeply rooted in this Nation's history and tradition." *Id.,* at 767, 130 S.Ct. 3020 (internal quotation marks omitted; emphasis deleted).

[3]   [4]   [5] Incorporated Bill of Rights guarantees are "enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment." *Id.,* at 765, 130 S.Ct. 3020 (internal quotation marks omitted). Thus, if a Bill of Rights protection is incorporated, there is no daylight between the federal and state conduct it prohibits or requires. [1]

**B.**

[6]   [7] Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Taken together, these Clauses place "parallel limitations" on "the power of those entrusted with the criminal-law function of government." *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 263, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (quoting *Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)). Directly at issue here is the phrase "nor excessive fines imposed," which "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *United States v. Bajakajian,* 524 U.S. 321, 327–328, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (quoting *Austin v. United States,* 509 U.S. 602, 609–610, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)). The Fourteenth Amendment, we hold, incorporates this protection.

The Excessive Fines Clause traces its venerable lineage back to at least 1215, when Magna Carta guaranteed that "[a] Freeman shall not be amerced for a small fault, but after the manner of the fault; and for a great fault after the greatness thereof, saving to him his contenement ...." § 20, 9 Hen. III, ch. 14, in 1 Eng. **688 Stat. at Large 5 (1225). [2] As relevant here, Magna Carta required that economic sanctions

"be proportioned to the wrong" and "not be so large as to deprive [an offender] of his livelihood." *Browning-Ferris,* 492 U.S., at 271, 109 S.Ct. 2909. See also 4 W. Blackstone, Commentaries on the Laws of England 372 (1769) ("[N]o man shall have a larger amercement imposed upon him, than his circumstances or personal estate will bear ...."). But cf. *Bajakajian,* 524 U.S., at 340, n. 15, 118 S.Ct. 2028 (taking no position on the question whether a person's income and wealth are relevant considerations in judging the excessiveness of a fine).

Despite Magna Carta, imposition of excessive fines persisted. The 17th century Stuart kings, in particular, were criticized for using large fines to raise revenue, harass their political foes, and indefinitely detain those unable to pay. *E.g.,* The Grand Remonstrance ¶¶17, 34 (1641), in The Constitutional Documents of the Puritan Revolution 1625–1660, pp. 210, 212 (S. Gardiner ed., 3d ed. rev. 1906); *Browning-Ferris,* 492 U.S., at 267, 109 S.Ct. 2909. When James II was overthrown in the Glorious Revolution, the attendant English Bill of Rights reaffirmed Magna Carta's guarantee by providing that "excessive Bail ought not to be required, nor excessive Fines imposed; nor cruel and unusual Punishments inflicted." 1 Wm. & Mary, ch. 2, § 10, in 3 Eng. Stat. at Large 441 (1689).

Across the Atlantic, this familiar language was adopted almost verbatim, first in the Virginia Declaration of Rights, then in the Eighth Amendment, which states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

Adoption of the Excessive Fines Clause was in tune not only with English law; the Clause resonated as well with similar colonial-era provisions. See, e.g., Pa. Frame of Govt., Laws Agreed Upon in England, Art. XVIII (1682), in 5 Federal and State Constitutions 3061 (F. Thorpe ed. 1909) ("[A]ll fines shall be moderate, and saving men's contenements, merchandize, or wainage."). In 1787, the constitutions of eight States—accounting for 70% of the U.S. population—forbade excessive fines; Calabresi, Agudo, & Dore, State Bills of Rights in 1787 and 1791, 85 S. Cal. L. Rev. 1451, 1517 (2012).

An even broader consensus obtained in 1868 upon ratification of the Fourteenth Amendment. By then, the constitutions of 35 of the 37 States—accounting for over 90% of the U.S. population—expressly prohibited excessive fines. Calabresi & Agudo, Individual Rights Under State Constitutions When

Timbs v. Indiana, 139 S.Ct. 682 (2019)
203 L.Ed.2d 11, 19 Cal. Daily Op. Serv. 1559, 2019 Daily Journal D.A.R. 1337...

the Fourteenth Amendment Was Ratified in 1868, 87 Texas L. Rev. 7, 82 (2008).

Notwithstanding the States' apparent agreement that the right guaranteed by the Excessive Fines Clause was fundamental, abuses continued. Following the Civil War, Southern States enacted Black Codes to subjugate newly freed slaves and maintain the prewar racial hierarchy. Among these laws' provisions were draconian fines for violating broad proscriptions on "vagrancy" and other dubious offenses. See, e.g., Mississippi Vagrant Law, Laws of Miss. § 2 (1865), in 1 W. Fleming, Documentary **689 History of Reconstruction 283–285 (1950). When newly freed slaves were unable to pay imposed fines, States often demanded involuntary labor instead. E.g., id. § 5; see Finkelman, John Bingham and the Background to the Fourteenth Amendment, 36 Akron L. Rev. 671, 681–685 (2003) (describing Black Codes' use of fines and other methods to "replicate, as much as possible, a system of involuntary servitude"). Congressional debates over the Civil Rights Act of 1866, the joint resolution that became the Fourteenth Amendment, and similar measures repeatedly mentioned the use of fines to coerce involuntary labor. See, e.g., Cong. Globe, 39th Cong., 1st Sess., 443 (1866); id., at 1123–1124.

Today, acknowledgment of the right's fundamental nature remains widespread. As Indiana itself reports, all 50 States have a constitutional provision prohibiting the imposition of excessive fines either directly or by requiring proportionality. Brief in Opposition 8–9. Indeed, Indiana explains that its own Supreme Court has held that the Indiana Constitution should be interpreted to impose the same restrictions as the Eighth Amendment. Id., at 9 (citing Norris v. State, 271 Ind. 568, 576, 394 N.E.2d 144, 150 (1979)).

For good reason, the protection against excessive fines has been a constant shield throughout Anglo-American history: Exorbitant tolls undermine other constitutional liberties. Excessive fines can be used, for example, to retaliate against or chill the speech of political enemies, as the Stuarts' critics learned several centuries ago. See Browning-Ferris, 492 U.S., at 267, 109 S.Ct. 2909. Even absent a political motive, fines may be employed "in a measure out of accord with the penal goals of retribution and deterrence," for "fines are a source of revenue," while other forms of punishment "cost a State money." Harmelin v. Michigan, 501 U.S. 957, 979, n. 9, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (opinion of Scalia, J.) ("it makes sense to scrutinize governmental action more closely when the State stands to benefit"). This concern is scarcely

hypothetical. See Brief for American Civil Liberties Union et al. as Amici Curiae 7 ("Perhaps because they are politically easier to impose than generally applicable taxes, state and local governments nationwide increasingly depend heavily on fines and fees as a source of general revenue.").

In short, the historical and logical case for concluding that the Fourteenth Amendment incorporates the Excessive Fines Clause is overwhelming. Protection against excessive punitive economic sanctions secured by the Clause is, to repeat, both "fundamental to our scheme of ordered liberty" and "deeply rooted in this Nation's history and tradition." McDonald, 561 U.S., at 767, 130 S.Ct. 3020 (internal quotation marks omitted; emphasis deleted).

## II

The State of Indiana does not meaningfully challenge the case for incorporating the Excessive Fines Clause as a general matter. Instead, the State argues that the Clause does not apply to its use of civil in rem forfeitures because, the State says, the Clause's specific application to such forfeitures is neither fundamental nor deeply rooted.

[8] In Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), however, this Court held that civil in rem forfeitures fall within the Clause's protection "when they are at least partially punitive. Austin arose in the federal context. But when a Bill of Rights protection is incorporated, the protection applies "identically to both the Federal Government and the States." **690 McDonald, 561 U.S., at 766, n. 14, 130 S.Ct. 3020. Accordingly, to prevail, Indiana must persuade us either to overrule our decision in Austin or to hold that, in light of Austin, the Excessive Fines Clause is not incorporated because the Clause's application to civil in rem forfeitures is neither fundamental nor deeply rooted. The first argument is not properly before us, and the second misapprehends the nature of our incorporation inquiry.

## A

[9]  [10] In the Indiana Supreme Court, the State argued that forfeiture of Timbs's SUV would not be excessive. See Brief in Opposition 5. It never argued, however, that civil in rem forfeitures were categorically beyond the reach of the Excessive Fines Clause. The Indiana Supreme Court, for its part, held that the Clause did not apply to the States.

Timbs v. Indiana, 139 S.Ct. 682 (2019)

203 L.Ed.2d 11, 19 Cal. Daily Op. Serv. 1559, 2019 Daily Journal D.A.R. 1337...

at all, and it nowhere addressed the Clause's application to civil *in rem* forfeitures. See 84 N.E.3d 1179. Accordingly, Timbs sought our review of the question "[w]hether the Eighth Amendment's Excessive Fines Clause is incorporated against the States under the Fourteenth Amendment." Pet. for Cert. i. In opposing review, Indiana attempted to reformulate the question to ask "[w]hether the Eighth Amendment's Excessive Fines Clause restricts States' use of civil asset forfeitures." Brief in Opposition i. And on the merits, Indiana has argued not only that the Clause is not incorporated, but also that *Austin* was wrongly decided. Respondents' "right, in their brief in opposition, to restate the questions presented," however, "does not give them the power to expand [those] questions." *Bray* v. *Alexandria Women's Health Clinic*, 506 U.S. 263, 279, n. 10, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (emphasis deleted). That is particularly the case where, as here, a respondent's reformulation would lead us to address a question neither pressed nor passed upon below. Cf. *Cutter* v. *Wilkinson*, 544 U.S. 709, 718, n. 7, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005) ("[W]e are a court of review, not of first view ...."). We thus decline the State's invitation to reconsider our unanimous judgment in *Austin* that civil *in rem* forfeitures are fines for purposes of the Eighth Amendment when they are at least partially punitive.

**B**

[11] As a fallback, Indiana argues that the Excessive Fines Clause cannot be incorporated if it applies to civil *in rem* forfeitures. We disagree. In considering whether the Fourteenth Amendment incorporates a protection contained in the Bill of Rights, we ask whether the right guaranteed—not each and every particular application of that right—is fundamental or deeply rooted.

[12] Indiana's suggestion to the contrary is inconsistent with the approach we have taken in cases concerning novel applications of rights already deemed incorporated. For example, in *Packingham* v. *North Carolina*, 582 U.S. ——, 137 S.Ct. 1730, 198 L.Ed.2d 273 (2017), we held that a North Carolina statute prohibiting registered sex offenders from accessing certain commonplace social media websites violated the First Amendment right to freedom of speech. In reaching this conclusion, we noted that the First Amendment's Free Speech Clause was "applicable to the States under the Due Process Clause of the Fourteenth Amendment." *Id.* at ——, 137 S.Ct. at 1733. We did not, however, inquire whether the Free Speech Clause's application specifically to

social media websites was fundamental or deeply rooted. See also, *e.g.*, *Riley* v. *California*, 573 U.S. 373, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) (holding, without separately considering incorporation, that States' warrantless **\*691** search of digital information stored on cell phones ordinarily violates the Fourth Amendment). Similarly here, regardless of whether application of the Excessive Fines Clause to civil *in rem* forfeitures is itself fundamental or deeply rooted, our conclusion that the Clause is incorporated remains unchanged.

\* \* \*

For the reasons stated, the judgment of the Indiana Supreme Court is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

Justice GORSUCH, concurring.

The majority faithfully applies our precedent and, based on a wealth of historical evidence, concludes that the Fourteenth Amendment incorporates the Eighth Amendment's Excessive Fines Clause against the States. I agree with that conclusion. As an original matter, I acknowledge, the appropriate vehicle for incorporation may well be the Fourteenth Amendment's Privileges or Immunities Clause, rather than, as this Court has long assumed, the Due Process Clause. See, *e.g.*, *post*, at 691–692 (THOMAS, J., concurring in judgment); *McDonald* v. *Chicago*, 561 U.S. 742, 805–858, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (THOMAS, J., concurring in part and concurring in judgment) (documenting evidence that the "privileges or immunities of citizens of the United States" include, at minimum, the individual rights enumerated in the Bill of Rights); Wildenthal, Nationalizing the Bill of Rights: Revisiting the Original Understanding of the Fourteenth Amendment in 1866–67, 68 Ohio St. L.J. 1509 (2007); A. Amar, The Bill of Rights: Creation and Reconstruction 163–214 (1998); M. Curtis, No State Shall Abridge: The Fourteenth Amendment and the Bill of Rights (1986). But nothing in this case turns on that question, and, regardless of the precise vehicle, there can be no serious doubt that the Fourteenth Amendment requires the States to respect the freedom from excessive fines enshrined in the Eighth Amendment.

Justice THOMAS, concurring in the judgment.

I agree with the Court that the Fourteenth Amendment makes the Eighth Amendment's prohibition on excessive fines fully applicable to the States. But I cannot agree with the route the Court takes to reach this conclusion. Instead of reading the Fourteenth Amendment's Due Process Clause to encompass a substantive right that has nothing to do with "process," I would hold that the right to be free from excessive fines is one of the "privileges or immunities of citizens of the United States" protected by the Fourteenth Amendment.

I

The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." "On its face, this appears to grant ... United States citizens a certain collection of rights—*i.e.*, privileges or immunities—attributable to that status." *McDonald* v. *Chicago*, 561 U.S. 742, 808, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (THOMAS, J., concurring in part and concurring in judgment). But as I have previously explained, this Court "marginaliz[ed]" the Privileges or Immunities Clause in the late 19th century by defining the collection of rights covered by the Clause "quite narrowly." *Id.*, at 808–809, 130 S.Ct. 3020. Litigants seeking federal protection of substantive rights against the States thus needed "an alternative fount of such rights," and this Court "found one in a  *692 most curious place," *id.*, at 809, 130 S.Ct. 3020—the Fourteenth Amendment's Due Process Clause, which prohibits "any State" from "depriv[ing] any person of life, liberty, or property, without due process of law."

Because this Clause speaks only to "process," the Court has "long struggled to define" what substantive rights it protects. *McDonald*, *supra*, at 810, 130 S.Ct. 3020 (opinion of THOMAS, J.). The Court ordinarily says, as it does today, that the Clause protects rights that are "fundamental." *Ante*, at 686.–687, 687–688, 689–690, 690–691. Sometimes that means rights that are " 'deeply rooted in this Nation's history and tradition.' " *Ante*, at 687–688, 690–691 (quoting *McDonald*, *supra*, at 767, 130 S.Ct. 3020 (majority opinion)). Other times, when that formulation proves too restrictive, the Court defines the universe of "fundamental" rights so broadly as to border on meaningless. See, *e.g.*, *Obergefell* v. *Hodges*, 576 U.S. ——, ——, ——, 135 S.Ct. 2584, 2593, 192 L.Ed.2d 609 (2015) ("rights that allow persons, within a lawful realm, to define and express their identity"); *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U.S. 833, 851, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) ("At the heart of liberty is the

right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life"). Because the oxymoronic "substantive" "due process" doctrine has no basis in the Constitution, it is unsurprising that the Court has been unable to adhere to any "guiding principle to distinguish 'fundamental' rights that warrant protection from nonfundamental rights that do not." *McDonald*, *supra*, at 811, 130 S.Ct. 3020 (opinion of THOMAS, J.). And because the Court's substantive due process precedents allow the Court to fashion fundamental rights without any textual constraints, it is equally unsurprising that among these precedents are some of the Court's most notoriously incorrect decisions. *E.g.*, *Roe* v. *Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Dred Scott* v. *Sandford*, 19 How. 393, 450, 15 L.Ed. 691 (1857).

The present case illustrates the incongruity of the Court's due process approach to incorporating fundamental rights against the States. Petitioner argues that the forfeiture of his vehicle is an excessive punishment. He does not argue that the Indiana courts failed to " 'proceed according to the "law of the land"—that is, according to written constitutional and statutory provisions,' " or that the State failed to provide "some baseline procedures." *Nelson* v. *Colorado*, 581 U.S. ——, ——, n. 1, 137 S.Ct. 1249, 1264, n. 1, 197 L.Ed.2d 611 (2017) (THOMAS, J., dissenting). His claim has nothing to do with any "process" "due" him. I therefore decline to apply the "legal fiction" of substantive due process. *McDonald*, 561 U.S., at 811, 130 S.Ct. 3020 (opinion of THOMAS, J.).

II

When the Fourteenth Amendment was ratified, "the terms 'privileges' and 'immunities' had an established meaning as synonyms for 'rights.' " *Id.*, at 813, 130 S.Ct. 3020. Those "rights" were the "inalienable rights" of citizens that had been "long recognized," and "the ratifying public understood the Privileges or Immunities Clause to protect constitutionally enumerated rights" against interference by the States. *Id.*, at 822, 837, 130 S.Ct. 3020. Many of these rights had been adopted from English law into colonial charters, then state constitutions and bills of rights, and finally the Constitution. "Consistent with their English heritage, the founding generation generally did not consider many of the rights identified in [the Bill of Rights] as new entitlements, but as inalienable rights of all men, given legal  *693 effect by their codification in the Constitution's text." *Id.*, at 818, 130 S.Ct. 3020.

Timbs v. Indiana, 139 S.Ct. 682 (2019)

203 L.Ed.2d 11, 19 Cal. Daily Op. Serv. 1559, 2019 Daily Journal D.A.R. 1337...

The question here is whether the Eighth Amendment's prohibition on excessive fines was considered such a right. The historical record overwhelmingly demonstrates that it was.

## A

The Excessive Fines Clause "was taken verbatim from the English Bill of Rights of 1689," *United States v. Bajakajian*, 524 U.S. 321, 335, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), which itself formalized a longstanding English prohibition on disproportionate fines. The Charter of Liberties of Henry I, issued in 1101, stated that "[i]f any of my barons or men shall have committed an offence he shall not give security to the extent of forfeiture of his money, as he did in the time of my father, or of my brother, but *according to the measure of the offence so shall he pay* ...." Sources of English Legal and Constitutional History ¶8, p. 50 (M. Evans & R. Jack eds. 1984) (emphasis added). Expanding this principle, Magna Carta required that "amercements (the medieval predecessors of fines) should be proportioned to the offense and that they should not deprive a wrongdoer of his livelihood," *Bajakajian, supra,* at 335, 118 S.Ct. 2028:

"A free man shall be amerced for a small fault only according to the measure thereof, and for a great crime according to its magnitude, saving his position; and in like manner, a merchant saving his trade, and a villein saving his tillage, if they should fall under Our mercy." Magna Carta, ch. 20 (1215), in A. Howard, Magna Carta: Text & Commentary 42 (rev. ed. 1998).

Similar clauses levying amercements "only in proportion to the measure of the offense" applied to earls, barons, and clergymen. Chs. 21–22; *ibid.* One historian posits that, due to the prevalence of amercements and their use in increasing the English treasury, "[v]ery likely there was no clause in Magna Carta more grateful to the mass of the people than that about amercements." Pleas of the Crown for the County of Gloucester xxxiv (F. Maitland ed. 1884). The principle was reiterated in the First Statute of Westminster, which provided that no man should, "be amerced, without reasonable cause, and according to the quantity of his Trespass." 3 Edw. 1, ch. 6 (1275). The English courts have long enforced this principle. In one early case, for example, the King commanded the bailiff "to take a moderate amercement proper to the magnitude and manner of th[e] offense, according to the

tenour of the Great Charter of the Liberties of England," and the bailiff was sued for extorting "a heavier ransom." *Le Gras v. Bailiff of Bishop of Winchester,* Y.B. Mich. 10 Edw. II, pl. 4 (1316), reprinted in 52 Selden Society 3, 5 (1934); see also *Richard Godfrey's Case,* 11 Co. Rep. 42a, 44a, 77 Eng. Rep. 1199, 1202 (1615) (excessive fines are "against law").

During the reign of the Stuarts in the period leading up to the Glorious Revolution of 1688–1689, fines were a flashpoint "in the constitutional and political struggles between the king and his parliamentary critics." L. Schwoerer, The Declaration of Rights, 1689, p. 91 (1981) (Schwoerer). From 1629 to 1640, Charles I attempted to govern without convening Parliament, but "in the absence of parliamentary grants," he needed other ways of raising revenue. 4 H. Walter, A History of England 135 (1834); see 1 T. Macaulay, History of England 85 (1899). He thus turned "to exactions, some odious and obsolete, some of very questionable legality, and others clearly against law." 1 H. Hallam, Constitutional History of England: From the Accession of Henry VII to the Death of **\*694** George II 462 (1827) (Hallam); see 4 Walter, *supra,* at 135.

The Court of Star Chamber, for instance, "imposed heavy fines on the king's enemies," Schwoerer 91, in disregard "of the provision of the Great Charter, that no man shall be amerced even to the full extent of his means...." 2 Hallam 46–47. "[T]he strong interest of th[is] court in these fines ... had a tendency to aggravate the punishment...." 1 *id.,* at 490. "The statute abolishing" the Star Chamber in 1641 "specifically prohibited any court thereafter from ... levying ... excessive fines." Schwoerer 91.

"But towards the end of Charles II's reign" in the 1670s and early 1680s, courts again "imposed ruinous fines on the critics of the crown." *Ibid.* In 1680, a committee of the House of Commons "examined the transcripts of all the fines imposed in King's Bench since 1677" and found that "the Court of King's Bench, in the Imposition of Fines on Offenders of late Years, hath acted arbitrarily, illegally, and partially; favouring Papists and Persons popishly affected; and excessively oppressing his Majesty's Protestant Subjects." *Ibid.;* 9 Journals of the House of Commons 692 (Dec. 23, 1680). The House of Commons determined that the actions of the judges of the King's Bench, particularly the actions of Chief Justice William Scroggs, had been so contrary to law that it prepared articles of impeachment against him. The articles alleged that Scroggs had "most notoriously departed from all Rules of Justice and Equality, in the Imposition of Fines upon

Timbs v. Indiana, 139 S.Ct. 682 (2019)

203 L.Ed.2d 11, 19 Cal. Daily Op. Serv. 1559, 2019 Daily Journal D.A.R. 1337...

Persons convicted of Misdemeanors" without "any Regard to the Nature of the Offences, or the Ability of the Persons." *Id.*, at 698.

Yet "[o]ver the next few years fines became even more excessive and partisan." Schwoerer 91. The King's Bench, presided over by the infamous Chief Justice Jeffreys, fined Anglican cleric Titus Oates 2,000 marks (among other punishments) for perjury. *Id.*, at 93. The King's Bench also fined the Duke of York, the sheriff of London was fined £ 100,000 in 1682, which corresponds to well over $ 10 million in present-day dollars[1] —"an amount, which, as it extended to the ruin of the criminal, was directly contrary to the spirit of [English] law." The History of England Under the House of Stuart, pt. 2, p. 801 (1840). The King's Bench fined Sir Samuel Barnadiston £ 10,000 for allegedly seditious letters, a fine that was overturned by the House of Lords as "exorbitant and excessive." 14 Journals of the House of Lords 210 (May 14, 1689). Several members of the committees that would draft the Declaration of Rights—which included the prohibition on excessive fines that was enacted into the English Bill of Rights of 1689—had themselves "suffered heavy fines." Schwoerer 91–92. And in 1684, judges in the case of John Hampden held that Magna Carta did not limit "fines for great offences" against the King, and imposed a £ 40,000 fine. *Trial of Hampden*, 9 State Trials 1054, 1125 (K. B. 1684); 1 J. Stephen, A History of the Criminal Law of England 490 (1883).

"Freedom from excessive fines" was "considered "indisputably an ancient right of the subject," and the Declaration of Rights' indictment against James II "charged that during his reign judges had imposed excessive fines, thereby subverting the laws and liberties of the kingdom." Schwoerer 90. Article 10 of the Declaration declared "[t]hat *695 excessive fines ought not be required nor excessive 'fynes imposed nor cruel and unusuall Punishments inflicted." *Id.*; at 297.

Shortly after the English Bill of Rights was enacted, Parliament addressed several excessive fines imposed before the Glorious Revolution. For example, the House of Lords overturned a £ 30,000 fine against the Earl of Devonshire as "excessive and exorbitant, against Magna Charta, the common right of the subject, and against the law of the land." *Case of Earl of Devonshire*, 11 State Trials 1354, 1372 (K. B. 1687). Although the House of Lords refused to reverse the judgments against Titus Oates, a minority argued that his punishments were "contrary to Law and ancient

Practice" and violated the prohibition on "excessive Fines." *Harmelin* v. *Michigan*, 501 U.S. 957, 971, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *Trial of Oates*, 10 State Trials 1080, 1325 (K. B. 1685). The House of Commons passed a bill to overturn Oates's conviction, and eventually, after a request from Parliament, the King pardoned Oates. *Id.*, at 1329–1330.

Writing a few years before our Constitution was adopted, Blackstone—"whose works constituted the preeminent authority on English law for the founding generation," *Alden* v. *Maine*, 527 U.S. 706, 715, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)—explained that the prohibition on excessive fines contained in the English Bill of Rights "had a retrospect to some unprecedented proceedings in the court of king's bench." 4 W. Blackstone, Commentaries 372 (1769). Blackstone confirmed that this prohibition was "only declaratory ... of the old constitutional law of the land," which had long "regulated" the "discretion" of the courts in imposing fines. *Ibid.*

In sum, at the time of the founding, the prohibition on excessive fines was a longstanding right of Englishmen.

### B

"As English subjects, the colonists considered themselves to be vested with the same fundamental rights as other Englishmen," *McDonald*, 561 U.S., at 816, 130 S.Ct. 3020 (opinion of THOMAS, J.), including the prohibition on excessive fines. *E.g.*, J. Dummer, A Defence of the New-England Charters 16–17 (1721) ("The Subjects Abroad claim the Privilege of *Magna Charta*, which says that no Man shall be fin'd above the Nature of his Offence, and whatever his Miscarriage be, a *Salvo Contenemento suo* is to be observ'd by the Judge"). Thus, the text of the Eighth Amendment was " 'based directly on ... the 'Virginia Declaration of Rights,' which 'adopted verbatim the language of the English Bill of Rights.' " *Browning-Ferris Industries of Vt., Inc.* v. *Kelco Disposal, Inc.*, 492 U.S. 257, 266, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (quoting *Solem* v. *Helm*, 463 U.S. 277, 285, n. 10, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)); see *Jones* v. *Commonwealth*, 5 Va. 555, 557 (1799) (opinion of Carrington, J.) (explaining that the clause in the Virginia Declaration of Rights embodied the traditional legal understanding that any "fine or amercement ought to be according to the degree of the fault and the estate of the defendant").

When the States were considering whether to ratify the Constitution, advocates for a separate bill of rights emphasized the need for an explicit prohibition on excessive fines mirroring the English prohibition. In colonial times, fines were "the drudge-horse of criminal justice," "probably the most common form of punishment." L. Friedman, Crime and Punishment in American History 38 (1993). To some, this fact made a constitutional prohibition on excessive fines all the more important. As the well-known Anti-Federalist Brutus argued in an essay, a prohibition *696 on excessive fines was essential to "the security of liberty" and was "as necessary under the general government as under that of the individual states; for the power of the former is as complete to the purpose of requiring bail, imposing fines, inflicting punishments, ... and seizing ... property ... as the other." Brutus II (Nov. 1, 1787), in The Complete Bill of Rights 621 (N. Cogan ed. 1997). Similarly, during Virginia's ratifying convention, Patrick Henry pointed to Virginia's own prohibition on excessive fines and said that it would "depart from the genius of your country" for the Federal Constitution to omit a similar prohibition. Debate on Virginia Convention (June 14, 1788), in 3 Debates on the Federal Constitution 447 (J. Elliot 2d ed. 1854). Henry continued: "[W]hen we come to punishments, no latitude ought to be left, nor dependence put on the virtue of representatives" to "define punishments without this control." Ibid.

Governor Edmund Randolph responded to Henry, arguing that Virginia's charter was "nothing more than an investiture, in the hands of the Virginia citizens, of those rights which belonged to British subjects." Id., at 466. According to Randolph, "the exclusion of excessive bail and fines ... would follow of itself without a bill of rights," for such fines would never be imposed absent "corruption in the House of Representatives, Senate, and President," or judges acting "contrary to justice." Id., at 467–468.

For all the debate about whether an explicit prohibition on excessive fines was necessary in the Federal Constitution, all agreed that the prohibition on excessive fines was a well-established and fundamental right of citizenship. When the Excessive Fines Clause was eventually considered by Congress, it received hardly any discussion before "it was agreed to by a considerable majority." 1 Annals of Cong. 754 (1789). And when the Bill of Rights was ratified, most of the States had a prohibition on excessive fines in their constitutions. [2]

Early commentary on the Clause confirms the widespread agreement about the fundamental nature of the prohibition on excessive fines. Justice Story, writing a few decades before the ratification of the Fourteenth Amendment, explained that the Eighth Amendment was "adopted, as an admonition to all departments of the national government, to warn them against such violent proceedings, as had taken place in England in the arbitrary reigns of some of the Stuarts," when "[e]normous fines and amercements were ... sometimes imposed." 3 J. Story, Commentaries on the Constitution of the United States § 1896, pp. 750–751 (1833). Story included the prohibition on excessive fines as a right, along with the "right to bear arms" and others protected by the Bill of Rights, that "operates, as a qualification upon powers, actually granted by the people to the government"; without such a "restrict[ion]," the government's "exercise or *697 abuse" of its power could be "dangerous to the people." Id., § 1858, at 718–719.

Chancellor Kent likewise described the Eighth Amendment as part of the "right of personal security ... guarded by provisions which have been transcribed into the constitutions in this country from magna carta, and other fundamental acts of the English Parliament." 2 J. Kent, Commentaries on American Law 9 (1827). He understood the Eighth Amendment to "guard against abuse and oppression," and emphasized that "the constitutions of almost every state in the Unio[n] contain the same declarations in substance, and nearly in the same language." Ibid. Accordingly, "they must be regarded as fundamental doctrines in every state, for all the colonies were parties to the national declaration of rights in 1774, in which the ... rights and liberties of English subjects were peremptorily claimed as their undoubted inheritance and birthright." Ibid.; accord, W. Rawle, A View of the Constitution of the United States of America 125 (1825) (describing the prohibition on excessive fines as "founded on the plainest principles of justice").

### C

The prohibition on excessive fines remained fundamental at the time of the Fourteenth Amendment. In 1868, 35 of 37 state constitutions "expressly prohibited excessive fines." Ante, at 688. Nonetheless, as the Court notes, abuses of fines continued, especially through the Black Codes adopted in several States. Ante, at 688 – 689. The "centerpiece" of the Codes was their "attempt to stabilize the black work force and limit its economic options apart from plantation labor." E. Foner, Reconstruction: America's Unfinished Revolution

Timbs v. Indiana, 139 S.Ct. 682 (2019)
203 L.Ed.2d 11, 19 Cal. Daily Op. Serv. 1559, 2019 Daily Journal D.A.R. 1337...

1863–1877, p. 199 (1988). Under the Codes, "the state would enforce labor agreements and plantation discipline, punish those who refused to contract, and prevent whites from competing among themselves for black workers." Ibid. The Codes also included " 'antienticement' measures punishing anyone offering higher wages to an employee already under contract." Id., at 200.

The 39th Congress focused on these abuses during its debates over the Fourteenth Amendment, the Civil Rights Act of 1866, and the Freedmen's Bureau Act. During those well-publicized debates, Members of Congress consistently highlighted and lamented the "severe penalties" inflicted by the Black Codes and similar measures, Cong. Globe, 39th Cong., 1st Sess., 474 (1866) (Sen. Trumbull), suggesting that the prohibition on excessive fines was understood to be a basic right of citizenship.

For example, under Mississippi law, adult "freedmen, free negroes and mulattoes" "without lawful employment" faced $50 in fines and 10 days' imprisonment for vagrancy. Reports of Assistant Commissioners of Freedmen, and Synopsis of Laws on Persons of Color in Late Slave States, S. Exec. Doc. No. 6, 39th Cong., 2d Sess., § 2, p. 192 (1867). Those convicted had five days to pay or they would be arrested and leased to "any person who will, for the shortest period of service, pay said fine and forfeiture and all costs." § 5, ibid. Members of Congress criticized such laws "for selling [black] men into slavery in punishment of crimes of the slightest magnitude." Cong. Globe, 39th Cong., 1st Sess., 1123 (1866) (Rep. Cook); see id., at 1124 ("It is idle to say these men will be protected by the States").

Similar examples abound. One congressman noted that Alabama's "aristocratic and anti-republican laws, almost reenacting slavery, among other harsh inflictions impose ... a fine of fifty dollars and six months' imprisonment on any servant or *698 laborer (white or black) who loiters away his time or is stubborn or refractory." Id., at 1621 (Rep. Myers). He also noted that Florida punished vagrants with "a fine not

exceeding $500 and imprison[ment] for a term not exceeding twelve months, or by being sold for a term not exceeding twelve months, at the discretion of the court." Ibid. At the time, such fines would have been ruinous for laborers. Cf. id., at 443 (Sen. Howe) ("A thousand dollars! That sells a negro for his life").

These and other examples of excessive fines from the historical record informed the Nation's consideration of the Fourteenth Amendment. Even those opposed to civil-rights legislation understood the Privileges or Immunities Clause to guarantee those "fundamental principles" "fixed" by the Constitution, including "immunity from ... excessive fines." 2 Cong. Rec. 384–385 (1874) (Rep. Mills); see also id., at App. 241 (Sen. Norwood). And every post-1855 state constitution banned excessive fines. S. Calabresi & S. Agudo, Individual Rights Under State Constitutions When the Fourteenth Amendment Was Ratified in 1868. 87 Texas L. Rev. 7, 82 (2008). The attention given to abusive fines at the time of the Fourteenth Amendment, along with the ubiquity of state excessive-fines provisions, demonstrates that the public continued to understand the prohibition on excessive fines to be a fundamental right of American citizenship.

*  *  *

The right against excessive fines traces its lineage back in English law nearly a millennium, and from the founding of our country, it has been consistently recognized as a core right worthy of constitutional protection. As a constitutionally enumerated right understood to be a privilege of American citizenship, the Eighth Amendment's prohibition on excessive fines applies in full to the States.

All Citations

139 S.Ct. 682, 203 L.Ed.2d 11, 19 Cal. Daily Op. Serv. 1559, 2019 Daily Journal D.A.R. 1337, 27 Fla. L. Weekly Fed. S 642

Footnotes

* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

1 The sole exception is our holding that the Sixth Amendment requires jury unanimity in federal, but not state, criminal proceedings. Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). As we have explained, that "exception to th[e] general rule ... was the result of an unusual division among the Justices," and it "does not undermine

Timbs v. Indiana, 139 S.Ct. 682 (2019)

203 L.Ed.2d 11, 19 Cal. Daily Op. Serv. 1559, 2019 Daily Journal D.A.R. 1337...

the well-established rule that incorporated Bill of Rights protections apply identically to the States and the Federal Government." *McDonald*, 561 U.S., at 766, n. 14; 130 S.Ct. 3020.

2    "Amercements were payments to the Crown, and were required of individuals who were 'in the King's mercy,' because of some act offensive to the Crown." *Browning-Ferris*, 492 U.S., at 269; 109 S.Ct. 2909. "[T]hough fines and amercements had distinct historical antecedents, they served fundamentally similar purposes—and, by the seventeenth and eighteenth centuries, the terms were often used interchangeably." Brief for Eighth Amendment Scholars as *Amici Curiae* 12.

1    See Currency Converter: 1270–2017 (estimating the 2017 equivalent of £ 100,000 in 1680), http:// nationalarchives.gov.uk/currency-converter (as last visited Feb. 8, 2019)

2    Del. Const., Art. I, § 11 (1792), in 1 Federal and State Constitutions 569 (F. Thorpe ed. 1909); Md. Const., Decl. of Rights, Art. XXII (1776), in 3 *id.*, at 1688; Mass. Const., pt. 1, Art. XXVI (1780), in *id.*, at 1892; N.H. Const., pt. 1, Art. 1, § XXXIII (1784); in 4 *id.*, at 2457; N.C. Const., Decl. of Rights, Art. X (1776), in 5 *id.*, at 2788; Pa. Const., Art. IX, § 13 (1790), in *id.*, at 3101; S.C. Const., Art. IX, § 4 (1790), in 6 *id.*, at 3264; Va. Const., Bill of Rights, § 9 (1776), in 7 *id.*, at 3813. Vermont had a clause specifying that "all fines shall be proportionate to the offences." Vt. Const., ch. II, § XXIX (1786), in *id.*, at 3759. Georgia's 1777 Constitution had an excessive fines clause, Art. LIX, but its 1789 Constitution did not. And the Northwest Ordinance provided that "[a]ll fines shall be moderate; and no cruel or unusual punishments inflicted." § 14, Art. 2 (1787)

---

End of Document    © 2019 Thomson Reuters. No claim to original U.S. Government Works

1   Alan J. Donato  SBN 264755
2   Donato Legal Group, Inc.
    1383 Garden Highway, Suite 100
3   Sacramento, CA  95833
    Phone: 916-716-7177
4   Alan@Donato.Legal

5

    Attorney for Petitioners,

6

7         **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
          **IN AND FOR THE COUNTY OF SACRAMENTO**

8

| | |
|---|---|
| Liting Wang and Yuhuo Wang<br>Petitioners, | Case No.: |
| v. | **PROPOSED ORDER STAYING**<br>**ADMINISTRATIVE DECISION** |
| CITY OF SACRAMENTO; CITY<br>COUNCIL OF THE CITY OF<br>SACRAMENTO;  and DOES 1 through<br>100, inclusive,<br>Respondents. | **(CCP §1094.5(g)**<br><br><br>Date:<br>Time:<br>Dept: |
| CITY OF SACRAMENTO POLICE<br>DEPARTMENT; DANIEL HAHN, in his<br>official capacity as Chief of Police for the<br>City of Sacramento,<br><br>Real Parties in Interest. | |

21         Petitioners, Liting Wang and Yuhuo Wang, Application for Stay of Administrative

22 Decision came on regularly for hearing on _____, at _____ in Department _____, the

23 Honorable _____, Judge presiding, Alan J. Donato, appeared on behalf of the Petitioners,

24 Melissa Bickel, appeared on behalf of the City of Sacramento, City Council of the City of

25 Sacramento, and Real Party in Interest, City of Sacramento Police Departure, Daniel Hahn, as

26 Chief of Police of the City of Sacramento.

27         After reviewing and considering the moving and opposing papers, and having heard and

28 considered oral argument, and good cause appearing therefor,

Wang et al. v. City of Sacramento, et al.
Proposed Order Staying Administrative Decision

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

**IT IS ORDERED** that Respondent the City of Sacramento and the City of Sacramento Police Department stay the operation of its decision of September 12, 2019, in the administrative proceeding entitled Sacramento Police Department Administrative Penalty Appeal Hearing, until the filing notice of appeal from the judgment in the administrative mandamus proceeding herein or until the expiration of the time for filing the notice, whichever comes first.

Date: _____

_____
Judge of the Superior Court

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Page 2 of 2

**Wang et al. v. City of Sacramento, et al.**
**Proposed Order Staying Administrative Decision**



**SUPERIOR COURT OF CALIFORNIA**
**County of Sacramento**
**720 Ninth Street  Room 102**
**Sacramento, CA 95814-1380**
**(916) 874-5522**
**www.saccourt.ca.gov**

**NOTICE OF CASE ASSIGNMENT**
**Proceeding for Writ of Mandate and/or Prohibition**

Case Number :  34-2019-80003279-CU-WM-GDS

This case has been assigned for all purposes to the judicial officer indicated below pursuant to rule 3.734 of the California Rules of Court and Sacramento Superior Court Local Rule 2.01; it is exempt from the requirements of the Trial Court Delay Reduction Act and the Case Management Program under Chapter 11 of the Sacramento Superior Court Local Rules.

| JUDGE | COURT LOCATION | DEPT. |
|---|---|---|
| Steven M Gevercer | Gordon D. Schaber Courthouse | 27 |

The petitioner shall serve all parties with a copy of this order and a copy of the Sacramento Superior Court Guide to the Procedures for Prosecuting Petitions for Prerogative Writs. The Guide is available in Room 102 of the courthouse, from the clerk of the department to which this matter has been assigned, and on the "Civil" page of the Sacramento Superior Court internet website (www.saccourt.ca.gov).

**Scheduling**
Contact the clerk in the assigned department to schedule any judicial proceedings in this matter, including hearings on ex parte applications and noticed motions.

| JUDGE | DEPT. | PHONE |
|---|---|---|
| Hon. James P. Arguelles | 17 | (916) 874-5511 |
| Hon. Steven M. Gevercer | 27 | (916) 874-6697 |
| Hon. Richard K. Sueyoshi | 28 | (916) 874-6695 |
| Hon. Laurie M. Earl | 25 | (916) 874-8727 |

**Other Information**
Pursuant to Local Rule 2.01, all documents submitted for filing in this case shall be filed in person at the Civil Front Counter (Room 102) or by mail addressed to the Clerk of the Sacramento Superior Court, Attn: Civil Division-Room 102, with the exception of certain documents filed on the day of the hearing. For specific requirements, please see the Sacramento Superior Court Guide to the Procedures for Prosecuting Petitions for Prerogative Writs.

Any administrative record must be lodged with the assigned department.

Date:  12/10/2019

Signed:  /s/ M. Rubalcaba

Maryann  Rubalcaba, Deputy Clerk

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|---|
| Alan Donato, 264755<br>Law Offices of Alan J Donato<br>1130 Markham Way<br>Sacramento, CA 95818 | | (916)803-6268 | **FILED/ENDORSED** |
| ATTORNEY FOR (Name): Petitioner | Ref. No. or File No. | | JAN 13 2020 |

Insert name of court, judicial district or branch court, if any:

Superior Court of California, San Joaquin County

180 E. Weber Avenue

Stockton, CA 95202-2777

By: H. Portulanza
Deputy Clerk

PLAINTIFF:

Liting Wang et al.

DEFENDANT:

City of Sacramento,et. al.

| **PROOF OF SERVICE** | DATE: | TIME: | DEPT/DIV: | CASE NUMBER:<br>34-2019-80003279-CU-WM-GDS |
|---|---|---|---|---|

**BY FAX**

1. At the time of service I was a citizen of the United States, over 18 years of age and not a party to this action, and I served copies of:
Notice of Motion and Petition for Writ of Administrative Mandamus, Application for Stay of Administrative Penalties,
Notice of Case Assignment, Guide to the Procedures for Prosecuting Petitions for Prerogative Writs

2. Party Served:        Daniel Hahn, in his official capacity as Chief of Police for the City of Sacramento

3. Person Served:        party in item 2

   a. Left with:        Olivette "Doe"- (B/F/30-40/5'7/170/Blk Hair) - Person In Charge Of Office

4. Date & Time of Delivery:        12/16/2019        2:58PM

5. Address, City and State:        300 Richards Blvd.
                         Sacramento, CA 95811

6. Manner of Service:        By leaving the copies with or in the presence of Olivette "Doe"- (B/F/30-40/5'7/170/Blk Hair) ,
(business) a person at least 18 years of age apparently in charge of the office or usual place of
business of the person served. I informed him/her of the general nature of the papers. I caused
the copies to be mailed (if applicable). A declaration of mailing is attached.

Fee for Service: $ 79.00

Registered California process server.
County: Sacramento
Registration No.: 2012-37
Expiration:     Brandon Lee Ortiz
One Legal - 194-Marin
1400 North McDowell Blvd, Ste 300
Petaluma, CA 94954
415-491-9606

I declare under penalty of perjury under the laws of the United States of
America and the State of California that the foregoing is true and correct and
that this declaration was executed on 12/23/2019 at Petaluma, California.

Signature: _____

Brandon Lee Ortiz

OL#: 14170052

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | | TELEPHONE NO.: | | FOR COURT USE ONLY |
|---|---|---|---|---|
| Alan Donato, 264755<br>Law Offices of Alan J Donato<br>1130 Markham Way<br>Sacramento, CA 95818 | | (916)803-6268 | | |
| ATTORNEY FOR (Name): Petitioner | Ref. No. or File No. | | | |
| Insert name of court, judicial district or branch court, if any: | | | | |
| Superior Court of California, San Joaquin County<br>180 E. Weber Avenue<br>Stockton, CA 95202-2777 | | | | |
| PLAINTIFF:<br>Liting Wang et al. | | | | |
| DEFENDANT:<br>City of Sacramento,et. al. | | | | |

| | DATE: | TIME: | DEPT/DIV: | CASE NUMBER: |
|---|---|---|---|---|
| PROOF OF SERVICE BY MAIL | | | | 34-2019-80003279-CU-WM-GDS |

BY FAX

I am a citizen of the United States, over the age of 18 and not a party to the within action. My business address is 1400 N. McDowell Blvd, Petaluma, CA 94954.

On 12/23/2019, after substituted service under section CCP 415.20(a) or 415.20(b) or FRCP 4(e)(2)(B) or FRCP 4(h)(1)(B) was made (if applicable), I mailed copies of the:

Notice of Motion and Petition for Writ of Administrative Mandamus, Application for Stay of Administrative Penalties, Notice of Case Assignment, Guide to the Procedures for Prosecuting Petitions for Prerogative Writs

to the person to be served at the place where the copies were left by placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Petaluma, California, addressed as follows:

Daniel Hahn, in his official capacity as Chief of Police for the City of Sacramento

300 Richards Blvd.

Sacramento, CA 95811

I am readily familiar with the firm's practice for collection and processing of documents for mailing. Under that practice. it would be deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

Fee for Service: $ 79.00

| Mokgoshi Chuenyane<br>One Legal - 194-Marin<br>1400 North McDowell Blvd, Ste 300<br>Petaluma, CA 94954 | I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed on 12/23/2019 at Petaluma, California. |
|---|---|
| | Mokgoshi Chuenyane |

OL#:   14170052



FILED / ENDORSED
FEB 1 1 2020
By D. Ward, DEPUTY CLERK

1    Alan J. Donato  SBN 264755
     Donato Legal Group, Inc.
2    1383 Garden Highway, Suite 100
     Sacramento, CA 95833
3    Phone: 916-716-7177
4    Alan@Donato.Legal
     Attorney for Petitioners,
5

6

7              **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
8                    **IN AND FOR THE COUNTY OF SACRAMENTO**

9

| Liting Wang and Yuhuo Wang<br>Petitioners,<br><br>v.<br><br>CITY OF SACRAMENTO; CITY<br>COUNCIL OF THE CITY OF<br>SACRAMENTO;  and DOES 1 through<br>100, inclusive,<br>Respondents.<br>─────────────────────────<br>CITY OF SACRAMENTO POLICE<br>DEPARTMENT; DANIEL HAHN, in his<br>official capacity as Chief of Police for the<br>City of Sacramento,<br><br>Real Parties in Interest. | Case No.: 34-2019-80003279<br><br>**NOTICE OF MOTION FOR<br>APPLICATION OF STAY OF<br>ADMINISTRATIVE PENALTIES<br>(CCP §1094.5)**<br><br><br>Date: May 15, 2020<br>Time: 2:00 p.m.<br>Dept: 27 |
|---|---|

10
11
12
13
14
15
16
17
18
19
20
21
22

23    To CITY OF SACRAMENTO, CITY COUNCIL OF THE CITY OF SACRAMENTO, CITY OF
24    SACRAMENTO POLICE DEPARTMENT; DANIEL HAHN, their attorney(s) of record:
25          **NOTICE IS HEREBY GIVEN** that on May 15, 2020,  at 2:00 p.m. or as soon thereafter
26    as the matter may be heard, in Department 27 of this Court, located at the above named court,
27    located at 720 9th Street, Sacramento, California, Petitioners, will, and hereby do, move for a
28

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

1  Stay of the Administrative Penalties. As shown in the Petition for Writ of Administrative

2  Mandamus, any exhibits filed herein, this Court should stay the imposition of the administrative

3  penalty under Code of Civil Procedure Section 1094.5(g), on the grounds that granting the stay

4  will not be against the public interest. Petitioners' motion is based on the Petition for Writ of

5  Administrative Mandamus; Petitioner's Declaration; the underlying Stay Application; and such

6  other and further evidence as may be presented at the hearing on this application.

7          This Motion is based on the notice, the verified Petition, the administrative record to be

8  lodged with this Court, the accompanying declarations and exhibits, and any and all other

9  evidence that may be presented at the hearing on the motion.

10         Pursuant to Local Rule 1.06 (A) the court will make a tentative ruling on the merits of

11 this matter by 2:00 p.m., the court day before the hearing. The complete text of the tentative

12 rulings for the department may be downloaded off the court's website. If the party does not have

13 online access, they may call the dedicated phone number for the department as referenced in the

14 local telephone directory between the hours of 2:00 p.m. and 4:00 p.m. on the court day before

15 the hearing and receive the tentative ruling. If you do not call the court and the opposing party

16 by 4:00 p.m. the court day before the hearing, no hearing will be held.

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

19                          Respectfully Submitted,

20                          **DONATO LEGAL GROUP**

22  Date:  **2/10/2020**

23                          Alan J. Donato

24                          Attorney for Petitioners Liting and Yuhuo

Page 2 of 2

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SACRAMENTO**

**GORDON D SCHABER COURTHOUSE**

**MINUTE ORDER**

DATE: 05/04/2020                    TIME: 10:00:00 AM            DEPT: 27

JUDICIAL OFFICER PRESIDING: Steven M Gevercer
CLERK:  D. Ward
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT: G. Avenell

CASE NO: **34-2019-80003279-CU-WM-GDS** CASE INIT.DATE: 12/06/2019
CASE TITLE: **Wang vs. City of Sacramento**
CASE CATEGORY: Civil - Unlimited

---

**EVENT TYPE**: Ex Parte Application - Other - Writ of Mandate

---

**APPEARANCES**

No Appearance by all parties

**NATURE OF PROCEEDINGS:  COURT ORDER CONTINUING MERITS HEARING (NO HEARING)**

**Pursuant to the End of Civil Filing Holiday and Resumption of Specified Civil Proceedings Order issued by the Presiding Judge on April 27, 2020,** the hearing date and time in this case is reset to Wednesday, June 10, 2020 at 2:00 p.m.

Pursuant to Local Rule 1.06 (A), the court will make a tentative ruling on the merits of this matter by 2:00 p.m., the court day before the hearing.  The complete text of the tentative rulings for the department may be downloaded off the court's website.  If the party does not have online access, they may call the dedicated phone number for the department as referenced in the local telephone directory between the hours of 2:00 p.m. and 4:00 p.m. on the court day before the hearing and receive the tentative ruling.

Parties requesting oral argument must call the court and opposing party, and email the court (Dept27@saccourt.ca.gov) and the opposing party, by 4:00 p.m. on the court day before the hearing. If you do not call and email the court and the opposing party by 4:00 p.m. the court day before the hearing, no hearing will be held.

If oral argument is requested, it will be conducted remotely through the Court's Zoom application and live-streamed on the Court's YouTube channel.  Instructions for logging into the Zoom sessions, including ID and password, will be provided in the tentative ruling.

This Order shall serve as sufficient notice of the revised hearing date and a new Notice of Hearing is not required by any party.

For any further inquiries regarding this case, please contact the Clerk in Department 27 at (916) 874-6697 and Dept27@saccourt.ca.gov.

---

DATE: 05/04/2020                              MINUTE ORDER                                   Page 1
DEPT: 27                                                                                Calendar No.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO**

Gordon D Schaber Courthouse
720  Ninth STREET
Sacramento, CA 95814-1311

**SHORT TITLE:** Wang vs. City of Sacramento

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL (Minute Order)** | CASE NUMBER: **34-2019-80003279-CU-WM-GDS** |
| --- | --- |

I certify that I am not a party to this cause. I certify that a true copy of the Minute Order was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at Sacramento, California, on 05/05/2020.

Clerk of the Court, by: ___/s/ D. Ward_____ , Deputy

ALAN  H DONATO
DONATO LEGAL GROUP INC
1383  GARDEN HIGHWAY # 100
SACRAMENTO, CA 95833

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

**V3 1013a (June 2004)**                                                                                     Code of Civil Procedure , § CCP1013(a)

1  Alan J. Donato  SBN 264755
   Donato Legal Group, Inc.
2  1383 Garden Highway, Suite 100
   Sacramento, CA 95833
3  Phone: 916-716-7177
4  Alan@Donato.Legal
5  Attorney for Petitioners



FILED / ENDORSED

MAY 1 1 2020

By D. Ward, DEPUTY CLERK

6

7  **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
8  **IN AND FOR THE COUNTY OF SACRAMENTO**

9
10  Liting Wang and Yuhuo Wang
    Petitioners,
11
    v.
12
13  CITY OF SACRAMENTO; CITY
    COUNCIL OF THE CITY OF
14  SACRAMENTO;  and DOES 1 through
    100, inclusive,
15  Respondents.
16
17  ———————————————————
18  CITY OF SACRAMENTO POLICE
    DEPARTMENT; DANIEL HAHN, in his
19  official capacity as Chief of Police for the
    City of Sacramento,
20
21  Real Parties in Interest.

Case No.: 34-~~2019-00267~~720
2019- 8 000 3279

~~[PROPOSED]~~ ORDER GRANTING
PETITIONERS' APPLICATION FOR
STAY

[CCP §1094.5(g)]

Date: May 15, 2020  ✦ 6-10-20
Time: 2:00 p.m.      2pm
Dept: 27             D 34

22
23      WHEREFORE IT HAS BEEN STIPULATED by and between the parties, Petitioners,
24  LITING WANG and YUHUO WANG, and Defendants, CITY OF SACRAMENTO; CITY
25  COUNCIL OF THE CITY OF SACRAMENTO;  and DOES 1 through 100, inclusive, CITY OF
26  SACRAMENTO,  POLICE DEPARTMENT; DANIEL HAHN, in his official capacity as Chief
27
28

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

Wang et al. v. City of Sacramento, et al.
Proposed Order Granting Petitioners' Application For Stay of Administrative Decision

of Police for the City of Sacramento, Real Parties in Interest, (collectively referred to herein as "the Parties") by and through their respective attorneys of record as follows:

1. On March 6, 2020 the Parties agreed that Respondents would stay any and all enforcement actions related to the Administrative Penalty issued upon Petitioners on September 12, 2019, including but not limited to seeking payment from Petitioners of said Administrative Penalties.

2. Therefore, the Parties have agreed that the currently scheduled hearing on May 15, 2020 at 2:00 p.m. in Department 27 for the Application For Stay should be taken off the Court's calendar. ⤷ 6-10-20   At  2pm   034

The Court, having reviewed the Stipulation of the Parties and finding good cause, hereby issues and Order to:

1. Grant Petitioners' Application for Stay by virtue of the Stipulation of the Parties to stay any and all enforcement actions related to the Administrative Penalty issued upon Petitioners on September 12, 2019 including but not limited to seeking payment from Petitioner of said Administrative Penalty; and

2. The Court will remove the hearing currently scheduled for May 15, 2020 at 2:00 p.m. from the Court's calendar. 6-10-2020   At 2pm  034

IT IS SO ORDERED.

Dated:   5/11/2020

THE HONORABLE JUDGE STEVEN M. GEVERCER

Wang et al. v. City of Sacramento, et al.
Proposed Order Granting Petitioners' Application For Stay of Administrative Decision

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

1  SUSANA ALCALA WOOD, City Attorney (SBN 156366)
   **MELISSA D. BICKEL, Senior Deputy City Attorney (SBN 209914)**
2  CITY OF SACRAMENTO
   915 I Street, Room 4010
3  Sacramento, CA  95814-2608
   Telephone:  (916) 808-5346
4  Facsimile:  (916) 808-7455

5  Attorneys for the CITY OF SACRAMENTO
   (erroneously sued as the City Council of the City of Sacramento,
6  City of Sacramento Police Department and Daniel Hahn)

> FILED / ENDORSED
>
> MAY 1 1 2020
>
> By D. Ward, DEPUTY CLERK

7

8              SUPERIOR COURT OF CALIFORNIA

9                 COUNTY OF SACRAMENTO

10

11  LITING WANG and YUHUO WANG,          Case No.:  34-2019-80003279

12              Petitioners,              **STIPULATION FOR STAY OF**
                                          **COLLECTION OF**
13      vs.                               **ADMINISTRATIVE PENALTY**

14
    SACRAMENTO POLICE
15  DEPARTMENT; DANIEL HAHN, in his
    official capacity as Chief of Police for the
16  City of Sacramento,

17              Respondents.

18

19      **WHEREFORE** the parties desire the efficient and economical prosecution of this action,

20  the parties hereby stipulate that Respondent will stay any and all enforcement actions related

21  to Administrative Penalty numbers 18-144419 and 18-321551 issued upon Petitioners on May

22  15, 2018, including but not limited to, seeking payment from Petitioners for the amount of said

23  Penalty. 6-10-2020

24  DATED:  March 6, 2020          SUSANA ALCALA WOOD,
                                    City Attorney
25

26                            By: _____

27                                **MELISSA D. BICKEL**
                                  Senior Deputy City Attorney
28                                Attorneys for the
                                  CITY OF SACRAMENTO

                                  1
900664

1

2  DATED: **3/11/2020**                    DONATO LEGAL GROUP

3

4                                          By:_____

5                                             ALAN DONATO (SBN 264755)
                                              1383 Garden Highway, Ste. 100
6                                             Sacramento, CA 95866
                                              (916) 716-7177
7                                             Attorneys for Petitioners
                                              LITING WANG and YUHUO WANG

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION FOR STAY OF ADMINISTRATIVE PENALTY

900664

1    DATED: **3/11/2020**                    DONATO LEGAL GROUP

2

3

4                                          By:_____
                                              ALAN DONATO (SBN 264755)
5                                             1383 Garden Highway, Ste. 100
                                              Sacramento, CA 95866
6                                             (916) 716-7177
                                              Attorneys for Petitioners
7                                             GUO FENG CHEN & SHU ZHEN LU

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION FOR STAY OF ADMINISTRATIVE PENALTY

900282

1  SUSANA ALCALA WOOD, City Attorney (SBN 156366)
   **MELISSA D. BICKEL, Senior Deputy City Attorney (SBN 209914)**
2  CITY OF SACRAMENTO
   915 I Street, Room 4010
3  Sacramento, CA  95814-2608
   Telephone:  (916) 808-5346
4  Facsimile:  (916) 808-7455

   FILED/ENDORSED

   JUL 16 2020

   H. Portalanza
   Deputy Clerk

5  Attorneys for the CITY OF SACRAMENTO
   (erroneously sued as the City Council of the City of Sacramento;
6  City of Sacramento Police Department and Daniel Hahn)

7

8                    SUPERIOR COURT OF CALIFORNIA

9                       COUNTY OF SACRAMENTO

10

11  LITING WANG and YUHUO WANG,          Case No.:  34-2019-80003279

12              Petitioners,              Petition Filed:  December 6, 2019
                                          Hearing Date:  N/A
13     vs.
                                          **CITY OF SACRAMENTO'S NOTICE**
14  CITY OF SACRAMENTO, CITY             **OF DEMURRER AND DEMURRER**
                                          **TO WRIT OF ADMINISTRATIVE**
15  COUNCIL OF THE CITY OF               **MANDAMUS**
    SACRAMENTO; and DOES 1 through
16  100, inclusive,                       Date:  August 14, 2020
                                          Time:  10:00 a.m.
17              Respondents.              Dept:  27
                                          Judge: Hon. Steven Gervercer
18

19

20      TO PETITIONERS HEREIN AND TO THEIR ATTORNEYS OF RECORD:

21      NOTICE IS HEREBY GIVEN that at the above time, date and department Respondent

22  City of Sacramento will move this Court for an order sustaining the Demurrer to Petitioners'

23  Writ of Administrative Mandamus.

24      This Demurrer is brought pursuant to Code of Civil Procedure § 430.10, *et* seq., on the

25  grounds that the Petition is uncertain and/or fails to sate facts sufficient to constitute a cause

26  of action against Petitioner as it raises grounds for the court's review of Respondent's

27  administrative penalty that are unavailable pursuant to Code of Civil Procedure § 1094.5.

28  ///

                                          1

1    This motion will be based on the within Notice of Demurrer, on the Memorandum of

2  Points and Authorities, the Request for Judicial Notice, the Declaration of Melissa D. Bickel,

3  and on the complete files and records in this action, and on such oral and/or documentary

4  evidence as may be presented at the hearing of the motion.

5    "Pursuant to Local Rule 1.06 (A) the court will make a tentative ruling on the merits of

6  this matter by 2:00 p.m., the court day before the hearing. The complete text of the tentative

7  rulings for the department may be downloaded off the court's website. If the party does not

8  have online access, they may call the dedicated phone number for the department as referenced

9  in the local telephone directory between the hours of 2:00 p.m. and 4:00 p.m. on the court day

10  before the hearing and receive the tentative ruling. If you do not call the court and the opposing

11  party by 4:00 p.m. the court day before the hearing, no hearing will be held."

12

13  DATED: July 15, 2020                        SUSANA ALCALA WOOD,
                                                City Attorney
14

15

16                                    By:_____

17                                          MELISSA D. BICKEL
                                          Senior Deputy City Attorney
18
                                          Attorneys for the
19                                        CITY OF SACRAMENTO

20

21

22

23

24

25

26

27

28

NOTICE OF DEMURRER AND DEMURRER TO WRIT OF ADMINISTRATIVE MANDAMUS

1

## PROOF OF SERVICE

2

CASE NAME:        Wang, Liting and Yuhuo, v. City of Sacramento, et al.
COURT:            Sacramento Superior Court

3

CASE NUMBER:      34-2019-80003279

4

    I declare that:

5

6

    I am employed in the County of Sacramento, California.  I am over the age of eighteen
years and not a party to this action; my business address is 915 I Street, Room 4010,
Sacramento, CA 95814-2604.   On the date executed below, I served the following
document(s):

7

8

**CITY OF SACRAMENTO'S NOTICE OF DEMURRER**
**AND DEMURRER TO WRIT OF ADMINISTRATIVE MANDAMUS**

9

10

[ X ] **By Electronic Service.** Based on a court order or an agreement of the parties to accept
electronic service. I caused the documents to be sent to the persons at the electronic service
addresses listed below.

11

12

    Alan J. Donato, Esq.

13

    Donato Legal Group
    1383 Garden Highway, Suite 100

14

    Sacramento, CA 95833
    alan@donato.legal

15

16

17

    I declare under penalty of perjury that the foregoing is true and correct, and that the
declaration was executed on July 16 , 2020, at Sacramento, California.

18

19

20

SUZANNE M. MACDONALD

21

22

23

24

25

26

27

28

1

PROOF OF SERVICE

934372

SUSANA ALCALA WOOD, City Attorney (SBN 156366)
**MELISSA D. BICKEL, Senior Deputy City Attorney (SBN 209914)**
CITY OF SACRAMENTO
915 I Street, Room 4010
Sacramento, CA  95814-2608
Telephone:  (916) 808-5346
Facsimile:  (916) 808-7455

Attorneys for the CITY OF SACRAMENTO
(erroneously sued as the City Council of the City of Sacramento,
City of Sacramento Police Department and Daniel Hahn)

### SUPERIOR COURT OF CALIFORNIA

### COUNTY OF SACRAMENTO

| | |
|---|---|
| LITING WANG and YUHUO WANG,<br><br>Petitioners,<br><br>vs.<br><br>CITY OF SACRAMENTO, CITY COUNCIL OF THE CITY OF SACRAMENTO; and DOES 1 through 100, inclusive,<br><br>Respondents. | Case No.:  34-2019-80003279<br><br>Petition Filed:  December 6, 2019<br>Hearing Date:  N/A<br><br>**[PROPOSED] ORDER**<br><br>Date:  August 14, 2020<br>Time:  10:00 a.m.<br>Dept:  27<br>Judge: Hon. Steven Gervercer |

Respondent City of Sacramento's Demurrer came before Department 27 of the above-entitled court on August 14, 2020, via regularly scheduled motion.

**GOOD CAUSE APPEARING:**

The Demurrer is sustained in its entirety.  If Petitioners want to file an amending pleading it must be done so on or before _____, 2020.

**SO ORDERED.**

DATED: _____

_____
JUDGE OF THE SUPERIOR COURT

RECEIVED
JUN 1 6 2020
78
CIVIL

1

ORDER

922436

## PROOF OF SERVICE

| | |
|---|---|
| CASE NAME: | Wang, Liting and Yuhuo, v. City of Sacramento, et al. |
| COURT: | Sacramento Superior Court |
| CASE NUMBER: | 34-2019-80003279 |

I declare that:

I am employed in the County of Sacramento, California.  I am over the age of eighteen years and not a party to this action; my business address is 915 I Street, Room 4010, Sacramento, CA 95814-2604.   On the date executed below, I served the following document(s):

### [PROPOSED] ORDER

[ X ] **By Electronic Service.** Based on a court order or an agreement of the parties to accept electronic service. I caused the documents to be sent to the persons at the electronic service addresses listed below.

Alan J. Donato, Esq.
Donato Legal Group
1383 Garden Highway, Suite 100
Sacramento, CA 95833
alan@donato.legal

I declare under penalty of perjury that the foregoing is true and correct, and that the declaration was executed on July 16 , 2020, at Sacramento, California.

SUZANNE M. MACDONALD

1

934372

DROP BOX

AUG 16  PM 2:54

COURTHOUSE
SUPERIOR COURT
OF CALIFORNIA
SACRAMENTO COUNTY

1 | SUSANA ALCALA WOOD, City Attorney (SBN 156366)
**MELISSA D. BICKEL, Senior Deputy City Attorney (SBN 209914)**
2 | CITY OF SACRAMENTO
915 I Street, Room 4010
3 | Sacramento, CA 95814-2608
Telephone: (916) 808-5346
4 | Facsimile: (916) 808-7455

FILED/ENDORSED

JUL 16 2020

By: H. Portalanza
Deputy Clerk

5 | Attorneys for the CITY OF SACRAMENTO
(erroneously sued as the City Council of the City of Sacramento,
6 | City of Sacramento Police Department and Daniel Hahn)

7

8 | SUPERIOR COURT OF CALIFORNIA

9 | COUNTY OF SACRAMENTO

10

11 | LITING WANG and YUHUO WANG, | Case No.: 34-2019-80003279

12 | Petitioners, | Petition Filed: December 6, 2019
Hearing Date: N/A

13 | vs.

14 | CITY OF SACRAMENTO, CITY | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CITY OF SACRAMENTO'S DEMURRER TO WRIT OF ADMINSTRATIVE MANDAMUS**

15 | COUNCIL OF THE CITY OF SACRAMENTO; and DOES 1 through
16 | 100, inclusive,

17 | Respondents. | Date: August 14, 2020
Time: 10:00 a.m.
18 | | Dept: 27
Judge: Hon. Steven Gervercer

19 | **I**

20 | **INTRODUCTION**

21 | This Writ arises from Administrative Penalty No. 18-144419 issued to Petitioners on May

22 | 15, 2018, for illegal cannabis cultivation operations found inside Petitioners' properties located

23 | at 745 Melanie Way and 8040 Maybelline Way, in Sacramento, California. (Request for

24 | Judicial Notice, **Exhibits A & B**.) After conducting investigations, surveillance, drafting and

25 | executing criminal search warrants, the Sacramento Police Department issued two

26 | Administrative penalties pursuant to the Sacramento City Code in the amounts of $593,000.00

27 | and $180,500.00, respectively, for 1192 and 361, also respectively, illegal cannabis plants over

28 | the limit allowed under state law and the City Code.

1

## II

## STATEMENT OF FACTS

Petitioner's Writ of Administrative Mandamus has been brought pursuant to Code of Civil Procedure section 1094.5.  Section 1094.5 provides specific narrow review, under a presumption of correctness, which is limited to whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.  The court's review is also limited to the administrative record upon which Respondent relied to issue its decision. (CCP 1094.5(a).)

However, Petitioner's Writ improperly raises challenges which are beyond the scope of the court's review; thus, the Writ is uncertain and/or fails to state facts sufficient to constitute a cause of action, and the Demurrer should be sustained.

## III

## LEGAL ARGUMENT

**A. A Demurrer's function is to test the sufficiency of the complaint as a matter of law and only raises questions of law.**

The right of the respondent in a mandamus proceeding to test the legal sufficiency of the petition for a writ by demurrer thereto has always been recognized by the courts of this state. (*May v. City of Milpitas* (2013) 217 Cal.App.4th 1307, 1323; citing *Matteson v. Board of Ed. Of Coty of Los Angeles* (1930) 104 Cal.App. 647, 650.)

Code of Civil Procedure section 430.10 states, in pertinent part:

The party against whom a complaint or cross-complaint has been filed may object, by demurrer or answer as provided in section 430.30 to the pleading on any one or more of the following grounds:

(e) The pleading does not state facts sufficient to constitute a cause of action.

(f) The pleading is uncertain. As used in this subdivision, "uncertain" includes ambiguous and unintelligible.

Code of Civil Procedure section 430.30 states, in pertinent part:

(a) When any ground for objection to a complaint, cross-complaint, or answer appears on the face thereof, ... the objection on that ground may be taken by a demurrer to the pleading.

2

922242

Code of Civil Procedure section 430.50 states, in pertinent part:

(a) A demurrer to a complaint or cross-complaint may be taken to the whole complaint or cross-complaint or to any of the causes of action stated therein.

A demurrer challenges only the legal sufficiency of the petition and not the truth or accuracy of its factual allegations. (See *Assurance Co. of America v. Haven* (1995) 32 Cal.App.4th 78, 82.) While section 1094.5 does not touch the matter of appearance by demurrer, it has been deemed to be proper, as in other mandamus proceedings. (*Sears, Roebuck & Co. v. Walls* (1960) 178 Cal.App.2d 284, 288.)

**B. This matter does not involve a fundamentally protected right under federal or state law.**

Petitioners claim that fundamental vested rights are involved this action in that Petitioners' right under the U.S. and State Constitutions to be free of cruel and unusual punishment and excessive government fines is implicated. However, Petitioner misapplies the application of this area of the law and its procedural requirements.

It is well settled that a Constitutional challenge under the U.S. Constitution and/or the California Constitution may only be raised in a section 1094.5 proceeding when there is a fundamentally vested right at issue. The administrative penalty at issue was issued a result of a land-use regulation codified in the City Code, however, as detailed below, a landowner has no fundamental vested right to his or her property in relation to such regulations.

Accordingly, the Writ is uncertain and/or fails to state any cause of action based upon the U.S. and/or California Constitutions, and the Demurrer should be sustained.

**1. Federal law specifically excludes land-use regulations impacting economic interests of the landowner as a fundamental right.**

The Due Process Clause of the U.S. Constitution specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition." (See *Washington v. Glucksberg* (1997) 521 U.S. 702, 720-721.) Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate governmental interest, or alternatively phrased, that the practice be neither arbitrary nor irrational. (*Frey Corp. v. City of*

3

922242

1  *Peoria, Ill.* (2013) 735 F.3d 505, 508; citing *Gen. Auto Serv. Station v. City of Chicago*, (2008) 526

2  F.3d 991, 1000–01.)  Furthermore, a property owner challenging a land-use regulation as a

3  violation of due process is therefore obliged to show that the regulation is arbitrary and

4  unreasonable, bearing no substantial relationship to public health, safety, or welfare. (*Id.*)

5       It is also worthy to note that the Ninth Circuit Court of Appeal has repeatedly held that

6  government action that "affects only economic" interests do not implicate fundamental rights.

7  *Samson v. City of Bainbridge Island* (2012) 683 F.3d 1051, 1058; citing *Jackson Water Works, Inc.*

8  *v. Pub. Utlis. Comm.* (1986) 793 F.2d 1090, 1093.)

9       Here, Petitioners' federal Constitutional challenges to Respondent's administrative

10  penalty based upon an unrecognized vested right are clearly erroneous; thus, even assuming

11  *arguendo* the statute of limitations does not apply, the Writ fails to state any cause of action for

12  any federal Constitutional challenges, and the Demurrer should be sustained.

13       **2.  California law specifically excludes land-use regulations as a**
         **fundamental right and there is no taking of Respondent's property.**
14

15       The California Constitution recognizes the authority of cities and counties to make and

16  enforce, within their borders, "all local, police, sanitary, and other ordinances and regulations

17  not in conflict with general laws." (Cal. Const., art. XI, § 7.)  Cases involving land use

18  regulation do not affect fundamental vested rights. (*Krater v. City of Los Angeles* (1982) 181 130

19  Cal.App.3d 839, 844; citing *Topanga Assn. for a Scenic Community v. Co. of Los Angeles* (1974) 11

20  Cal.3d 506, 510; *City of Walnut Creek v. Co. of Contra Costa*, (1980) 101 Cal.app.3d 1012, 1016.)

21  Like federal law, California law states that unless a fundamental vested right is involved, the

22  substantial evidence test is to be applied by both the trial court and the appellate court. (*Id.*;

23  citing *City of Walnut Creek*, at 1016; *City of Carmel-by-the-Sea v. Board of Supervisors* (1977) 71

24  Cal.App.3d 84, 91.)

25  /// 

26  /// 

27  /// 

28  /// 

4

922242

The government power to regulate land use is so important that no vested right to any particular use arises until the government has approved that specific use. (*Pescosolido v. Smith* (1983) 142 Cal.App.3d 964, 970.)  In fact, a landowner has no vested rights in any particular use of their property unless the restriction on its use constitutes an uncompensated taking. (*Pescocolido*, 142 Cal.App.3d. at 969.) Moreover, the California Supreme Court has held that there can be no taking of property by the government unless its effect is to deprive the landowner of substantially all reasonable use – and therefore all reasonable economic value – of the property. (See *Furey v. City of Sacramento* (1979) 24 Cal.3d 862, 872; *Pescosolido*, at 969.)

The City Code requires the responsible management of properties within the City:

Section 8.08.050 - Responsibility for proper property management

> A. Every owner of real property within the city is required to manage the property in a manner so as not to violate the provisions of this code and the owner remains liable for violations thereof <u>regardless of any contract or agreement with any third party regarding the property</u>. (Emphasis added.)

The City Code also harmonizes state cannabis laws with the need for additional land use regulations and enforcement resulting from local ordinances enacted by City Council. Specifically, in enacting Section 8.132.060 – Abatement of illegal cannabis cultivation – the Sacramento City Council recognized the following important issues:

> <u>**[c]annabis grown illegally presents a real and imminent threat to the public health, safety, and welfare**</u>. The unregulated cultivation of a large number of cannabis plants on any property substantially increases the chance that violent criminal activity will occur upon the property. Crimes such as home invasion robbery, burglary, assault, and homicide happen substantially more frequently on and around properties where cannabis is being illegally grown. In addition, illegal cannabis cultivation often poses electrical and other building code dangers. Cannabis cultivation usually requires elevated electrical consumption that may cause transformers to fail. Unpermitted and substandard construction and electrical work performed to accommodate illegal cannabis cultivation poses a significant fire hazard to neighborhoods. And the hazardous wastes and solvents resulting from illegal cultivation are a threat to the health and safety of nearby residents. (Emphasis added.)

Therefore, the City Council, via sections 8.132.030 – 8.132.050, intended to regulate the cultivation of cannabis in properties by requiring that no "person shall own, lease, occupy, or have charge or possession of any property upon which cannabis is knowingly or unknowingly being cultivated in excess of the six plants limit." Furthermore, pursuant to said regulations, a

1   violation results in a penalty calculated at $500.00 per plant in excess of the limit.

2   Respondent's enforcement of the land use regulations at issue – enacted to protect the

3   public health, safety, and welfare – and the economic interests of Petitioners as a result thereof,

4   are the only issues before the court; thus, it is abundantly clear that this matter does not involve

5   any fundamentally vested right.

6   Accordingly, the state Constitutional challenges raised by Petitioners are moot, and the

7   Demurrer should be sustained.

8   **C. Challenges to Respondent's Code are not proper in a mandate proceeding.**

9   Contained throughout the Writ are inferences to the illegality or unconstitutionality of

10  Respondent's cannabis ordinances; however, these challenges are not appropriate in a section

11  1094.5 action.

12  Because administrative mandamus only applies when a body is acting in a quasi-judicial

13  or administrative function, a City Council's adoption of regulatory schemes by ordinance is a

14  legislative act, and thus was not subject to review under administrative mandamus statute. (See

15  *Winkleman v. City of Tiburon* (1973) 32 Cal.App.3d 834, 840-841.)

16  As discussed above, Respondent, via its City Council adopted City Code sections

17  8.132.030 – 8.132.050 with the intent to regulate the cultivation of cannabis is consistent with

18  and as authorized by Proposition 64 (discussed further in section D, below).

19  Accordingly, as this Writ is not the proper procedural method to challenge Respondent's

20  City Code, the Writ is uncertain and/or fails to state facts sufficient to constitute a cause of

21  action and Demurrer should be granted.

22  **D. Health and Safety Code section 11469(j) is inapplicable to this action.**

23  Although there are not any allegations contained anywhere within the Writ, Petitioner's

24  Notice of Motion references characterization of Respondent's land use regulations pertaining

25  to the illegal cultivation of cannabis as a civil asset forfeiture.  However, this is an utterly

26  inappropriate challenge to the administrative penalty at issue pursuant to section 1094.5; thus,

27  the Writ is uncertain and/or fails to state a cause of action based thereupon and the Demurrer

28  should be sustained.

MPA ISO DEMURRER TO WRIT OF ADMINISTRATIVE MANDAMUS

1   Health & Safety Code section 11469 pertains to government actions as a result of criminal

2   violations.   There is nothing in that statue, or the case law interpreting it, that makes it

3   applicable to an administrative penalty issued as a result of the violation of a land use ordinance

4   adopted pursuant to Respondent's police powers to promote the health and safety of its

5   residents and visitors.

6   Furthermore, a civil forfeiture occurs when the government seizes private property without

7   compensating the property owner.  There are no allegations here to even suggest Petitioner's

8   property was seized.  All that occurred is that an administrative penalty was issued to Petitioner

9   pursuant to Respondent's police power vested in it through Government Code section 53069.4

10   for a violation of an ordinance restricting illegal cannabis cultivation operations.

11   Accordingly, any challenge raised by Appellant pursuant to section 11469(j) is lacking in

12   authority and simply moot.  Thus, the Demurrer should be sustained.

13   **E. Respondent's cannabis ordinances do not conflict with California law.**

14   Petitioner attempts to couch claims that fair notice was not provided and that an abuse of

15   discretion occurred because section 8.132.050(B) conflicts with California law, specifically

16   section 53069.4.  However, this is an inappropriate challenge to the administrative penalty at

17   issue pursuant to section 1094.5; thus, the Writ is uncertain and/fails to state a cause of action

18   and the Demurrer should be sustained.

19   A long-standing precedent in California case law is that a charter city's law concerning

20   municipal affairs will trump a state law governing the same topic. (See *Johnson v. Bradley* (1992)

21   4 Cal. 4th 389, 399.)

22   Additionally, as stated above, Respondent's cannabis ordinances were enacted pursuant to

23   Respondent's police power vested in it through Government Code section 53069.4; thus, clearly

24   does not conflict with California law.  In addition, Proposition 64 provides local governments

25   with clear direction regarding local authority to regulate unreasonable illegal cannabis

26   activities. For example, Section 26200(a)(2) of the Business and Professions Code states, in

27   relevant part, the following:

28   ///

7

1  (2) This division shall not be interpreted to supersede or limit existing local
2  authority for law enforcement activity, enforcement of local zoning requirements
   or local ordinances, or enforcement of local license, permit, or other authorization
3  requirements.

4  Accordingly, any challenge raised by Appellant that Respondent's ordinance conflicts with

5  California law is moot; thus, the Writ is uncertain and/or fails to state facts sufficient to

6  constitute a cause of action, and Demurrer should be sustained.

7                                        IV

8                                   CONCLUSION

9  Petitioner's attempt to enlarge the scope of the court's review through the challenges raised

10  above expressly conflict with the scope of review delineated in section 1094.5, statutory and

11  case law, and/or are simply improper and moot.   Accordingly, Respondent City of

12  Sacramento respectfully requests the court sustain the Demurrer as to all the above challenges.

13

14  DATED: July 15, 2020                    SUSANA ALCALA WOOD,
15                                          City Attorney
16
17                                  By:_____
18                                          MELISSA D. BICKEL
                                            Senior Deputy City Attorney
19
                                            Attorneys for the
20                                          CITY OF SACRAMENTO
21
22
23
24
25
26
27
28

                                          8

922242

1

## PROOF OF SERVICE

2
CASE NAME:      Wang, Liting and Yuhuo, v. City of Sacramento, et al.
COURT:          Sacramento Superior Court
3
CASE NUMBER:    34-2019-80003279

4
   I declare that:

5

6
   I am employed in the County of Sacramento, California.  I am over the age of eighteen
years and not a party to this action; my business address is 915 I Street, Room 4010,
7
Sacramento, CA 95814-2604.   On the date executed below, I served the following
document(s):

8
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CITY OF**
9
**SACRAMENTO'S DEMURRER TO WRIT OF ADMINSTRATIVE MANDAMUS**

10

11
[ X ] **By Electronic Service.** Based on a court order or an agreement of the parties to accept
electronic service. I caused the documents to be sent to the persons at the electronic service
12
addresses listed below.

13
Alan J. Donato, Esq.
Donato Legal Group
14
1383 Garden Highway, Suite 100
Sacramento, CA 95833
15
alan@donato.legal

16

17
   I declare under penalty of perjury that the foregoing is true and correct, and that the
18
declaration was executed on July 16 , 2020, at Sacramento, California.

19

20

21
SUZANNE M. MACDONALD

22

23

24

25

26

27

28

DROP BOX

0 JUL 16 PM 2:56

L COURTHOUSE
S PERIOR COURT
OF CALIFORNIA
SACRAMENTO COUNTY

1   SUSANA ALCALA WOOD, City Attorney (SBN 156366)
    **MELISSA D. BICKEL, Senior Deputy City Attorney (SBN 209914)**
2   CITY OF SACRAMENTO
    915 I Street, Room 4010
3   Sacramento, CA 95814-2608
    Telephone: (916) 808-5346
4   Facsimile: (916) 808-7455

5   Attorneys for the CITY OF SACRAMENTO
    (erroneously sued as the City Council of the City of Sacramento,
6   City of Sacramento Police Department and Daniel Hahn)

```
FILED/ENDORSED

JUL 16 2020

By: H. Portalanza
        Deputy Clerk
```

7

8                    SUPERIOR COURT OF CALIFORNIA

9                       COUNTY OF SACRAMENTO

10

11   LITING WANG and YUHUO WANG,          Case No.: 34-2019-80003279

12              Petitioners,              Petition Filed: December 6, 2019
                                          Hearing Date: N/A
13        vs.
                                          **REQUEST FOR JUDICIAL NOTICE**
14
     CITY OF SACRAMENTO, CITY             Date: August 14, 2020
15   COUNCIL OF THE CITY OF               Time: 10:00 a.m.
     SACRAMENTO; and DOES 1 through       Dept: 27
16   100, inclusive,                      Judge: Hon. Steven Gervercer

17              Respondents.

18

19        Pursuant to Evidence Code section 452(b), (c) & (d) Respondent City of Sacramento

20   hereby requests the court take Judicial Notice of the following:

21        1.     Sacramento Police Department Administrative Penalty, SPD Report number 18-

22   144419 issued to Petitioners on May 15, 2018, pertaining to Petitioners' property located at

23   745 Melanie Way, Sacramento, California. A true and correct copy of said Penalty, including

24   proof of service and confirmation of Petitioners' address of record, are attached hereto as

25   **Exhibit A.**

26   ///

27   ///

28   ///

                                          1

922491

1      2.     Sacramento Police Department Administrative Penalty, SPD Report number 18-

2  144419 issued to Petitioners on May 15, 2018, pertaining to Petitioners' property located at

3  8040 Maybelline Way, Sacramento, California.   A true and correct copy of said Penalty,

4  including proof of service and confirmation of Petitioners' address of record, are attached

5  hereto as **Exhibit B**.

6  DATED: July 15, 2020           SUSANA ALCALA WOOD,
City Attorney

By:_____ for

**MELISSA D. BICKEL**
Senior Deputy City Attorney

Attorneys for the
CITY OF SACRAMENTO

# Exhibit A

# SACRAMENTO POLICE DEPARTMENT
## ADMINISTRATIVE PENALTY

| DATE OF VIOLATION | TIME | DAY OF WEEK | ADDRESS OF VIOLATION | | DISTRICT | SPD REPORT # |
|---|---|---|---|---|---|---|
| 05/15/18 | 0735 | TUES | 7145 MELANIE WAY | | 4B | 18-144419 |

| NAME (FIRST, MIDDLE, LAST) | BUSINESS NAME |
|---|---|
| LITING WANG | |

| ADDRESS | BUSINESS ADDRESS |
|---|---|
| 7145 MELANIE WAY | |

| CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| SACRAMENTO | CA | 95831 | | | |

| DRIVER LICENSE NO | STATE | BIRTH DATE | PHONE |
|---|---|---|---|
| F7643449 | CA | 1/31/1994 | |

**PENALTY LEVEL:**
- [X] Level A: $5,000.00 to $25,000.00
- [ ] Level B: $2,500.00 to $4,999.99
- [ ] Level C: $1,000.00 to $2,499.99
- [ ] Level D: $100.00 to $999.99

**PERSON SERVED:**
NAME: LEFT ON COUNTER    DOB:

RELATIONSHIP:

**TYPE OF SERVICE:**
- [X] PERSONAL SERVICE
- [ ] FIRST CLASS MAIL
- [X] CERTIFIED MAIL
- [X] OTHER

**NATURE OF VIOLATION:**

8.132.040 SCC

OWNER IN VIOLATION OF INDOOR
MARIJUANA CULTIVATION WITH A
MAXIMUM OF 6 PLANTS

8.132.050 (E)(1) SCC  (FINE)
PLANT TOTAL: 1,192
FINE: $593,000

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, except for that which is based on information and belief, and for that I believe it is true.

| SIGNATURE OF OFFICER | BADGE NUMBER |
|---|---|
| JASON KIPILAN | 3004 |

RECEIVED BY: (RESPONSIBLE PARTY)    [ ] REFUSED TO SIGN
LEFT ON COUNTER

## ORDER IMPOSING ADMINISTRATIVE PENALTY
### SACRAMENTO CITY CODE 1.28.010

You are hereby ordered to pay the City of Sacramento an administrative penalty in the amount of

$ 593,000                (Level A / B / C / D)

imposed in connection with the violation(s) herein described on this notice.

Payment shall be sent or paid to the City of Sacramento at 915 I Street, Room 1214, Sacramento, CA 95814 on or before: 06/15/18

The administrative penalty is a personal obligation and failure to pay the penalty may result in the amount being made a lien and/or special assessment against your property as well as other legal action to collect the penalty. If a judicial action is required to collect the penalty, the City will seek to recover its attorney's fees and costs from you. This administrative penalty does not include any other charges that may be applicable to this case. You will receive a separate bill for charges and/or costs incurred by the City when this case is closed.

**RIGHT TO APPEAL**

You may appeal the imposition of this administrative penalty within 20 calendar days after the date this order is served, by filing a written appeal with the Office of the City Clerk and paying an appeal fee. If you fail to appeal, this order shall become final. Any responsible party who files an appeal may seek review of any order entered as a result of the appeal pursuant to California Code of Civil Procedure Sections 1094.5 and 1094.6.

White Copy – Sacramento Police Department     Yellow Copy – Code Enforcement     Pink Copy – Violator

SPD 593 (Rev 01/11)

*City of*
## SACRAMENTO
Police Department

5770 Freeport Blvd., Suite 100
Sacramento, CA 95822-3516

**RETURN SERVICE REQUESTED**



CERTIFIED MAIL

7016 3010 0001 0680 9673



Hasler
05/17/2018
US POSTAGE

FIRST-CLASS MAIL
$06.67º

ZIP 95814

Liting Wang
745 Melanie Way
Sacramento, CA 95831

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Liting Wang
   745 Melanie Way
   Sacramento, CA 95831

|||||||||||||||||||||||||||||||||||
9590 9402 2392 6249 4884 56

2. Article Number (Transfer from service label)

7016 3010 0001 0680 9673

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053         Domestic Return Receipt



**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Liting Wang
745 Melanie Way
Sacramento, CA 95831

9590 9402 2392 6249 4884 56

2. Article Number (Transfer from service label)

7016 3010 0001 0680 9673

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Liting Wang
☐ Agent
☐ Addressee

B. Received by (Printed Name)
Liting

C. Date of Delivery
5/26/18

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

RECEIVED

MAY 3 0 2018

City Attorney's Office

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt



USPS TRACKING #

9590 9402 2572 6249 4884 56

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

Office of the City Attorney
915 I Street Suite 4010
Sacramento, CA 95814
ATTN: SPD Certified AP Letter

4-261999

Exhibit B

# SACRAMENTO POLICE DEPARTMENT
## ADMINISTRATIVE PENALTY

| DATE OF VIOLATION 05/15/18 | TIME 0800 | DAY OF WEEK TUES | ADDRESS OF VIOLATION 8040 MAYBELLINE VAY | DISTRICT 5C | SPD REPORT # 18-144419 |
|---|---|---|---|---|---|

| NAME (FIRST, MIDDLE, LAST) YUHUO WANG | BUSINESS NAME XIAMEI XU |
|---|---|

| ADDRESS 8040 MAYBELLINE WAY | BUSINESS ADDRESS 8040 MAYBELLINE WAY |
|---|---|

| CITY SACRAMENTO | STATE CA | ZIP CODE 95823 | CITY SACRAMENTO | STATE CA | ZIP CODE 95823 |
|---|---|---|---|---|---|

| DRIVER LICENSE NO F7743091 | STATE CA | BIRTH DATE 8/5/68 | PHONE |
|---|---|---|---|

**PENALTY LEVEL:**
☒ Level A: $5,000.00 to $25,000.00
☐ Level B: $2,500.00 to $4,999.99
☐ Level C: $1,000.00 to $2,499.99
☐ Level D: $100.00 to $999.99

---

**PERSON SERVED:**

NAME: LEFT ON COUNTER   DOB:

RELATIONSHIP:

**TYPE OF SERVICE:**
☒ PERSONAL SERVICE   ☐ FIRST CLASS MAIL
☐ CERTIFIED MAIL   ☐ OTHER

**NATURE OF VIOLATION:**

8132.040 SCC

OWNER IN VIOLATION OF INDOOR MARIJUANA CULTIVATION WITH A MAXIMUM OF 10 PLANTS.

361 PLANTS X $500 = $180,500

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, except for that which is based on information and belief, and for that I believe it is true.

| SIGNATURE OF OFFICER JASON KIRTLAN | BADGE NUMBER 3554 |
|---|---|

| RECEIVED BY: (RESPONSIBLE PARTY) LEFT ON COUNTER | ☐ REFUSED TO SIGN |
|---|---|

---

## ORDER IMPOSING ADMINISTRATIVE PENALTY
### SACRAMENTO CITY CODE 1.28.010

You are hereby ordered to pay the City of Sacramento an administrative penalty in the amount of $ 180,500 (Level A / B / C / D) imposed in connection with the violation(s) herein described on this notice.

Payment shall be sent or paid to the *City of Sacramento* at 915 I Street, Room 1214, Sacramento, CA 95814 on or before: 06/15/18

The administrative penalty is a personal obligation and failure to pay the penalty may result in the amount being made a lien and/or special assessment against your property as well as other legal action to collect the penalty. If a judicial action is required to collect the penalty, the City will seek to recover its attorney's fees and costs from you. This administrative penalty does not include any other charges that may be applicable to this case. You will receive a separate bill for charges and/or costs incurred by the City when this case is closed.

### RIGHT TO APPEAL

You may appeal the imposition of this administrative penalty within 20 calendar days after the date this order is served, by filing a written appeal with the Office of the City Clerk and paying an appeal fee. If you fail to appeal, this order shall become final. Any responsible party who files an appeal may seek review of any order entered as a result of the appeal pursuant to *California Code of Civil Procedure Sections 1094.5 and 1094.6.*

---

White Copy – Sacramento Police Department      Yellow Copy – Code Enforcement      Pink Copy – Violator

SPD 593 (Rev 01/11)

*City of*
# SACRAMENTO
Police Department

5770 Freeport Blvd., Suite 100
Sacramento, CA 95822-3516

**RETURN SERVICE REQUESTED**





7016 3010 0001 0680 9666

Yuhuo Wang
8040 Maybelline Way
Sacramento, CA 95823

Hasler
05/17/2018
**US POSTAGE**

FIRST-CLASS MAIL
$06.67º

ZIP 95814

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by (Printed Name)  C. Date of Delivery |
| 1. Article Addressed to:<br><br>Yuhuo Wang<br>8040 Maybelline Way<br>Sacramento, CA 95823 | D. Is delivery address different from Item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 2392 6249 4884 63

| 3. Service Type | |
|---|---|
| ☐ Adult Signature | ☐ Priority Mail Express® |
| ☐ Adult Signature Restricted Delivery | ☐ Registered Mail™ |
| ☐ Certified Mail® | ☐ Registered Mail Restricted Delivery |
| ☐ Certified Mail Restricted Delivery | ☐ Return Receipt for Merchandise |
| ☐ Collect on Delivery | ☐ Signature Confirmation™ |
| ☐ Collect on Delivery Restricted Delivery | ☐ Signature Confirmation Restricted Delivery |
| ☐ Insured Mail | |
| ☐ Insured Mail Restricted Delivery (over $500) | |

2. Article Number (Transfer from service label)
7016 3010 0001 0680 9666

PS Form 3811, July 2015 PSN 7530-02-000-9053                    Domestic Return Receipt



**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

OFFICIAL USE

Certified Mail Fee

$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $ _____
☐ Return Receipt (electronic)        $ _____
☐ Certified Mail Restricted Delivery  $ _____
☐ Adult Signature Required           $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

Postage
$

Total Postage and Fees
$

Sent To  Yuhup Wang

Street and Apt. No., or PO Box No.  8040 Maybelline Way

City, State, ZIP+4  Sacramento, CA 95823

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7016 3010 0001 0480 9446

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Yuhuo Wang
8040 Maybelline Way
Sacramento, CA 95823



9590 9402 2392 6249 4884 63

2. Article Number (Transfer from service label)
7016 3010 0001 0680 9666

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  Ya huo wa      ☐ Agent
                  ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
Yu huo wang

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:           ☐ No

06/25/18
RECEIVED
MAY 30 2018
Civ Attorney's Office

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt



USPS TRACKING #

9590 9402 2392 6249 4884 63

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

Office of the City Attorney
915 I Street Suite 4010
Sacramento, CA 95814
ATTN: SPD Certified AP Letter

1

### PROOF OF SERVICE

2

CASE NAME:          Wang, Liting and Yuhuo, v. City of Sacramento, et al.

COURT:              Sacramento Superior Court

3

CASE NUMBER:        34-2019-80003279

4

I declare that:

5

6

I am employed in the County of Sacramento, California.  I am over the age of eighteen years and not a party to this action; my business address is 915 I Street, Room 4010, Sacramento, CA 95814-2604.   On the date executed below, I served the following document(s):

7

8

### REQUEST FOR JUDICIAL NOTICE

9

10

[ X ] **By Electronic Service.** Based on a court order or an agreement of the parties to accept electronic service. I caused the documents to be sent to the persons at the electronic service addresses listed below.

11

12

Alan J. Donato, Esq.

Donato Legal Group

13

1383 Garden Highway, Suite 100

Sacramento, CA  95833

14

alan@donato.legal

15

16

I declare under penalty of perjury that the foregoing is true and correct, and that the declaration was executed on July _16_, 2020, at Sacramento, California.

17

18

19

_Suzanne M. MacDonald_

20

SUZANNE M. MACDONALD

21

22

23

24

25

26

27

28

1

PROOF OF SERVICE

934372

DROP BOX

20 JUL 16 PM 2:56

GORDON D SCHABER COURTHOUSE
SUPERIOR COURT
OF CALIFORNIA
SACRAMENTO COUNTY

1  SUSANA ALCALA WOOD, City Attorney (SBN 156366)
   **MELISSA D. BICKEL, Senior Deputy City Attorney (SBN 209914)**
2  CITY OF SACRAMENTO
   915 I Street, Room 4010
3  Sacramento, CA  95814-2608
   Telephone:  (916) 808-5346
4  Facsimile:  (916) 808-7455

5  Attorneys for the CITY OF SACRAMENTO
   (erroneously sued as the City Council of the City of Sacramento,
6  City of Sacramento Police Department and Daniel Hahn)

> **FILED/ENDORSED**
> JUL 16 2020
> By: H. Portalanza
> Deputy Clerk

7

8                    SUPERIOR COURT OF CALIFORNIA

9                         COUNTY OF SACRAMENTO

10

11 | LITING WANG and YUHUO WANG, | Case No.: 34-2019-80003279 |

12 | Petitioners, | Petition Filed:  December 6, 2019 |
   | | Hearing Date: N/A |
13 | vs. | |

14 | CITY OF SACRAMENTO | **DECLARATION OF MELISSA D. BICKEL IN SUPPORT OF CITY OF SACRAMENTO'S DEMURRER TO WRIT OF ADMINISTRATIVE MANDAMUS** |
15
16 | Respondent. |
   | | Date:  August 14, 2020 |
17 | | Time: 10:00 a.m. |
   | | Dept:  27 |
18 | | Judge: Hon. Steven Gervercer |

19

20     I, Melissa D. Bickel, declare:

21     1.     I am an attorney at law, duly licensed to practice before all courts of the State of

22 California and I am a Senior Deputy City Attorney with the Sacramento City Attorney's Office,

23 attorneys for Respondent, the City of Sacramento, in the above-entitled action.

24     2.     I personally prepared the accompanying Memorandum of Points and Authorities

25 as well as this Declaration, and the facts stated herein are based on my own personal knowledge

26 and can testify about them if called to do so in open court.

27     3.     I make this declaration in support of the Respondent City of Sacramento's

28 Demurrer to Petitioner's Writ of Administrative Mandamus.

                                          1

1    4.    On February 27, 2020, I personally spoke to Petitioners' counsel about the deficiencies of the Writ.  We agreed to disagree.

5.    On March 10, 2020, I also sent Petitioners' counsel a meet and confer letter regarding the deficiencies of the Writ.  A true and correct copy of said letter is attached hereto as **Exhibit A**.

I declare under penalty of perjury according to the laws of the State of California that the foregoing is true and correct.

Executed on June 30, 2020 in Sacramento, California.

**MELISSA D. BICKEL**
Senior Deputy City Attorney

Attorneys for the
CITY OF SACRAMENTO

2

Exhibit A



# Office of the City Attorney

**City Attorney**
Susana Alcala Wood

**Assistant City Attorneys**
Matthew D. Ruyak
Sandra G. Talbott

**Supervising Deputy
City Attorneys**
Gerald C. Hicks
Steven Y. Itagaki
Gustavo L. Martinez
Brett M. Witter

915 I Street, Fourth Floor
Sacramento, CA 95814-2604
PH 916-808-5346
FAX 916-808-7455
www.cityofsacramento.org/cityattorney

March 10, 2020

**Deputy City Attorneys**
Audreyell A. Anderson-White
Michael J. Benner
Melissa D. Bickel
Kourtney Burdick
Emilio Camacho
Joseph P. Cerullo
Michael A. Fry
Fhanysha C. Gaddis
Paul A. Gale
Jennifer V. Gore
Maila L. Hansen
Jeffrey C. Heeren
Aaron M. Israel
Kevin W. Kundinger
Gary P. Lindsey, Jr.
Jeffrey L. Massey
Beau E. Parkhurst
Sheryl N. Patterson
Sean D. Richmond
Kathleen T. Rogan
Angel A. Solis
Michael Sparks
Chance L. Trimm
Katherine Underwood
Andrea M. Velasquez
Michael Voss
Leslie Z. Walker
Kurt C. Wendlenner

***VIA E-MAIL ONLY:*** alan@donato.legal
Alan J. Donato, Esq.
Donato Legal Group
1383 Garden Highway, Suite 100
Sacramento, CA  95833

Re:  **Wang, Liting and Yuhuo, v. City of Sacramento, et al.
(8040 Maybelline Way & 745 Melanie Way)**
Sacramento Superior Court Case No. 34-2019-80003279
Matter ID:    19-1836
Document No.: 900451

Dear Mr. Donato:

The City is in receipt of the Petition for Writ of Administrative Mandamus ("Writ") in the above-entitled matter, and I write to meet and confer in advance of filing a Demurrer.

There are several deficiencies within the Writ. First, it raises grounds beyond the scope of a section 1094.5 Writ. Section 1094.5(b) provides specific narrow review, which is limited to whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Accordingly, the causes of action for challenges based upon the U.S. and California Constitutions, H&C § 11470.1(a)(1)(c) and Government Code § 5309.4(a)(1) (presumably § 53069.4) are improper.

A Constitutional challenge under the United States and/or California Constitutions may only be raised in a Writ proceeding when there is a fundamentally vested right at issue. The Writ fails to meet this basic, yet extremely important, precondition. The California Constitution recognizes the authority of cities and counties to make and enforce, within their borders, "all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.) The government power to regulate land use is so important that no vested right to any particular use arises until the government has approved that specific use. (*Pescosolido v. Smith* (1983) 142 Cal.App.3d 964, 970.)

Alan J. Donato, Esq.
Re: Wang, Liting and Yuhuo, v. City of Sacramento, et al. (8040
March 10, 2020
Page 2

Case 2:20-cv-01876-JAM-DB   Document 1-1   Filed 09/17/20   Page 137 of 186

In fact, a landowner has no vested rights in any particular use of their property unless the restriction on its use constitutes an uncompensated taking. (*Id.* at 969.)  Moreover, the California Supreme Court has held that there can be no taking of property by the government unless its effect is to deprive the landowner of substantially all reasonable use – and therefore all reasonable economic value – of the property. (See *Furey v. City of Sacramento* (1979) 24 Cal.3d 862, 872; *Pescosolido*, at 969.) (Emphasis added.)

The Ninth Circuit Court of Appeal has repeatedly held that government action that "affects only economic" interests do not implicate fundamental rights. *Samson v. City of Bainbridge Island* (2012) 683 F.3d 1051, 1058; citing *Jackson Water Works, Inc. v. Pub. Utlis. Comm.* (1986) 793 F.2d 1090, 1093.)

In is also well settled in California that cases involving land use regulation do not affect fundamental vested rights. (*Krater v. City of Los Angeles* (1982) 181 130 Cal.App.3d 839, 844; citing *Topanga Assn. for a Scenic Community v. Co. of Los Angeles* (1974) 11 Cal.3d 506, 510; *City of Walnut Creek v. Co. of Contra Costa* (1980) 101 Cal.app.3d 1012, 1016.) Unless a fundamental vested right is involved, the substantial evidence test is to be applied by both the trial court and the appellate court. (*Id.*; citing *City of Walnut Creek*, at 1016; *City of Carmel-by-the-Sea v. Board of Supervisors* (1977) 71 Cal.App.3d 84, 91.)

Additionally, a section 11470.1 action is cannot be challenged in a Writ proceeding, and is irrelevant here.  This section allows a government entity, that is not a direct victim of a crime, to recoup its costs of eradicating or cleaning up a toxic or hazardous substance resulting from controlled substance crimes though a civil proceeding. (*People v. Martinez* (2005) 36 Cal.4th 384, 394.)  The assessment of an administrative penalty is simply not the same.

Finally, any claims based upon Government Code section 53069.4(a)(1) are improper. In conjunction with police polices vested in the City through the California Constitution, Article XI, § 7, and Proposition 64 (enacted as Health & Safety Code section 11362.1), section 53069.4 actually *authorizes* the City to regulate cannabis and impose administrative penalties and fines such as those issued to your client, as set forth in City Code Chapter 8.132, *et seq.*.

In conclusion, the Writ is uncertain and/or fails to state facts sufficient to constitute a cause of action.  Therefore, unless you file an amended Writ which resolves the inadequacies identified herein, the City will have no other option but to seek judicial intervention.  Please contact me at your earliest convenience to advise how you intend to proceed.

Sincerely,

SUSANA ALCALA WOOD
City Attorney

MELISSA D. BICKEL
Senior Deputy City Attorney

MDB/smm

900451

## PROOF OF SERVICE

CASE NAME:        Wang, Liting and Yuhuo, v. City of Sacramento, et al.
COURT:             Sacramento Superior Court
CASE NUMBER:    34-2019-80003279

I declare that:

I am employed in the County of Sacramento, California.  I am over the age of eighteen years and not a party to this action; my business address is 915 I Street, Room 4010, Sacramento, CA 95814-2604.   On the date executed below, I served the following document(s):

**DECLARATION OF MELISSA D. BICKEL IN SUPPORT OF CITY OF SACRAMENTO'S DEMURRER TO WRIT OF ADMINISTRATIVE MANDAMUS**

[ X ] **By Electronic Service.** Based on a court order or an agreement of the parties to accept electronic service. I caused the documents to be sent to the persons at the electronic service addresses listed below.

Alan J. Donato, Esq.
Donato Legal Group
1383 Garden Highway, Suite 100
Sacramento, CA 95833
alan@donato.legal

I declare under penalty of perjury that the foregoing is true and correct, and that the declaration was executed on July _16_, 2020, at Sacramento, California.

_Suzanne M. MacDonald_
SUZANNE M. MACDONALD

1

934372

DROP BOX

16 PM 2:54

COURTHOUSE
SUPERIOR COURT
OF CALIFORNIA
SACRAMENTO COUNTY

1  SUSANA ALCALA WOOD, City Attorney (SBN 156366)
2  **MELISSA D. BICKEL, Senior Deputy City Attorney (SBN 209914)**
   CITY OF SACRAMENTO
3  915 I Street, Room 4010
   Sacramento, CA 95814-2608
4  Telephone: (916) 808-5346
   Facsimile: (916) 808-7455

```
┌─────────────────────────────┐
│   FILED/ENDORSED            │
│                             │
│     JUL 16 2020             │
│                             │
│ By: _____ H. Portalanza   │
│         Deputy Clerk        │
└─────────────────────────────┘
```

5  Attorneys for the CITY OF SACRAMENTO
6  (erroneously sued as the City Council of the City of Sacramento,
   City of Sacramento Police Department and Daniel Hahn)

7

8                  SUPERIOR COURT OF CALIFORNIA

9                     COUNTY OF SACRAMENTO

10

11  LITING WANG and YUHUO WANG,          Case No.: 34-2019-80003279

12              Petitioners,              Petition Filed: December 6, 2019
                                          Hearing Date: N/A
13
    vs.
14                                        **CITY      OF      SACRAMENTO'S**
    CITY OF SACRAMENTO,                   **ANSWER TO VERIFIED PETITION**
15  CITY COUNCIL OF THE CITY OF           **FOR WRIT OF ADMINISTRATIVE**
    SACRAMENTO; and                       **MANDAMUS**
16  DOES 1 through 100, inclusive,

17              Respondents.

18

19      Except as otherwise specifically admitted or denied herein, Respondent denies each and

20  every allegation contained in paragraphs 1 – 7 of the Petition for Writ of Administrative

21  Mandamus, and hereby answers as follows:

22      1.    Based upon information and belief, Respondent admits the allegations in

23  Paragraph 1.

24      2.    Based upon information and belief, Respondent admits the allegations in

25  Paragraph 2.

26      3.    Based upon information and belief, Respondent denies the allegations in

27  Paragraph 3.

28  ///

                                          1

1    4.    Based upon information and belief, Respondent admits the allegations in
2  Paragraph 4.

3    5.    Based upon information and belief, Respondent denies the allegations in
4  Paragraph 5.

5    6.    Based upon information and belief, Respondent admits the allegations in
6  Paragraph 6.

7    7.    Based upon information and belief, Respondent admits the allegations in
8  Paragraph 7.

9                          **AFFIRMATIVE DEFENSES**

10                       **FIRST AFFIRMATIVE DEFENSE**

11    The petition, in its entirety and through each separately stated cause of action, fails to state
12  facts sufficient to constitute a viable cause of action against Respondent or any real party in
13  interest.

14                      **SECOND AFFIRMATIVE DEFENSE**

15    All of Petitioner's claims are barred by the applicable Statute of Limitations.

16                       **THIRD AFFIRMATIVE DEFENSE**

17    By virtue of petitioner's unlawful, immoral, careless, negligent and other wrongful
18  conduct, he should be barred from the relief he seeks by the equitable doctrine of unclean
19  hands.

20                      **FOURTH AFFIRMATIVE DEFENSE**

21    By virtue of Petitioner's delay in seeking relief, Petitioner's claims are barred by the
22  doctrine of Laches.

23                       **FIFTH AFFIRMATIVE DEFENSE**

24    Petitioner has failed to exhaust all applicable administrative remedies, including all claims
25  asserted against Respondent in the Writ of Mandamus which are barred for failure to comply
26  with the California Government Claims Act.

27  ///

28  ///

2

920348

1

### SIXTH AFFIRMATIVE DEFENSE

2      Pursuant to the terms of Code of Civil Procedure section 1085(a), no Writ of Mandamus

3   may issue in this case because, with respect to the allegations contained in the instant for Writ

4   of Mandamus, no clear, present, and/or ministerial duty exists on the part of Respondent with

5   respect to Petitioner.

6

### SEVENTH AFFIRMATIVE DEFENSE

7      No Writ of Mandamus may issue in this case because each and every one of the acts

8   and/or omissions of which Petitioner complains involved an exercise of discretion vested in

9   Respondent, or others, and the exercise of discretion is not susceptible to Mandamus.

10

### EIGHTH AFFIRMATIVE DEFENSE

11      No Writ of Mandamus may issue in this case because the order or decision of which

12   Petitioner complains was not arbitrary, capricious, or an abuse of discretion.

13

### NINTH AFFIRMATIVE DEFENSE

14      No Writ of Mandamus may issue in this case because, the order or decision of which

15   Petitioner complains was supported by Respondent's findings and supported by substantial

16   evidence.

17

### TENTH AFFIRMATIVE DEFENSE

18      All of the claims contained in the Writ of Mandamus are moot.

19

### ELEVENTH AFFIRMATIVE DEFENSE

20      Each act or omission alleged in the Writ of Mandamus falls within the immunities and

21   defenses described in California Government Code §§ 800 - 995, including but not limited to

22   815.2, 818.8, 820.2, 821.2, 822.2, 830.2, 830.4, 830.6, 830.8, 830.9, 831, 831.2, 835.4, 840.2,

23   840.4, 840.6, and 845.8.

24

### TWELFTH AFFIRMATIVE DEFENSE

25      There is no liability on the part of Respondent by virtue of the privileges, defenses, and

26   immunities set forth in the Sacramento Respondent Code.

27   ///

28   ///

ANSWER TO VERIFIED PETITION FOR WRIT OF ADMINISTRATIVE MANDAMUS

920348

1

### THIRTEENTH AFFIRMATIVE DEFENSE

2   Respondent allege they acted in good faith and without wrongful intent at all times alleged

3   in the Writ of Mandamus .

4

### FOURTEENTH AFFIRMATIVE DEFENSE

5   Petitioner lacks the proper standing to sue Respondent on the grounds set forth in the Writ

6   of Mandamus.

7

### FIFTEENTH AFFIRMATIVE DEFENSE

8   Petitioner is barred from recovery, in whole or part, because his sole or partial negligence

9   was the proximate cause of the acts and events alleged in the Writ of Mandamus.

10

### SIXTEENTH AFFIRMATIVE DEFENSE

11   Petitioner is barred from recovery from Respondent, in whole or in part, because the sole

12   or partial negligence of third parties was the proximate cause of the acts and events alleged in

13   the Writ of Mandamus.

14

### SEVENTEENTH AFFIRMATIVE DEFENSE

15   Respondent's acts, omissions, and conduct were not the legal cause of any of Petitioner's

16   alleged losses, damages, or injuries.

17

### EIGHTEENTH AFFIRMATIVE DEFENSE

18   Petitioner freely and voluntarily assumed the risk of injury and damage alleged in the Writ

19   of Mandamus with full knowledge and appreciation of the magnitude thereof.

20

### NINETEENTH AFFIRMATIVE DEFENSE

21   Pursuant to California Government Code § 815, Respondent is immune from liability

22   except as provided by statute.

23

### TWENTIETH AFFIRMATIVE DEFENSE

24   Respondent are immune from liability because of the provisions of California

25   Government Code § 820.8, in that any injuries or damages were proximately caused by an act

26   or omission of another person.

27   ///

28   ///

4

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Pursuant to California Government Code § 815.2, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Respondent are immune from liability by reason of the provisions of California Government Code § 815.4, in that a public entity is not liable for the act or omission of an independent contractor if the public entity would not have been liable for the injury, had the act or omission been that of an employee of the public entity.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Respondent are immune from liability by reason of the provisions of California Government Code § 820.4, in that any and all acts or omissions of Respondent, its agents, or employees that allegedly caused injury at issue in this case resulted from the execution or enforcement of law with due care.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

If it is determined this action was initiated or maintained without reasonable cause and not in good faith, Respondent are entitled to reimbursement of defense costs and fees pursuant to California Code of Civil Procedure § 1038.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Petitioner is not entitled to any prejudgment interest pursuant to California Civil Code § 3291, since California Civil Code § 3291 does not apply to a public entity or to a public employee acting within the scope of employment.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Respondent is not liable to repay Petitioner any sum of which payments by collateral sources have been paid, subject to California Government Code § 985.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Petitioner's claims are barred, in whole or part, due to Petitioner's failure to mitigate the damages alleged in the Writ of Mandamus.

920348

1

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

2    Respondent are immune from punitive damages pursuant to California Government Code

3    § 818.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

4

5    During the course and scope of the activities described in the Writ of Mandamus, and by

6    acts, errors, and omissions on his own part, Petitioner has waived any right to claim damage

7    or injury allegedly suffered by virtue of Respondent's acts or omissions.

## THIRTIETH AFFIRMATIVE DEFENSE

8

9    As a separate affirmative defense, Respondent alleges if, and to the extent that, the

10   allegations in the Writ of Mandamus attempt to enlarge upon the facts and contentions set

11   forth in the Governmental Tort Claim, if any there is, said Writ of Mandamus fails to state a

12   cause of action and is barred by Government Code sections 905.2, 911.2 and 950.2.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

13

14   As to a separate affirmative defense, Petitioner has no fundamentally vested rights in his

15   real property that would support any claim for a violation of the California or U.S.

16   Constitution.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

17

18   Because the Writ of Mandamus is couched in conclusory terms, the Respondent is without

19   knowledge or information sufficient to form a belief as to whether it may have additional, but

20   as yet, unasserted affirmative defenses.  Thus, the Respondent reserves the right to assert

21   additional affirmative defenses if discovery indicates it would be appropriate.

## PRAYER FOR RELIEF

22

23   WHEREFORE, Respondent requests:

24   1.    That the Court deny the Petition for Writ of Mandamus and enter judgment in

25   Respondent's favor;

26   2.    That Respondent recover its reasonable costs, including attorney's fees, incurred in

27   this action; and,

28   ///

ANSWER TO VERIFIED PETITION FOR WRIT OF ADMINISTRATIVE MANDAMUS

920348

1    3.    For such other and further relief as the court may deem proper.

2    DATED: July 15, 2020                SUSANA ALCALA WOOD,
                                          City Attorney
3

4

5                                   By: _____  for

6                                       MELISSA D. BICKEL
                                        Senior Deputy City Attorney
7
                                        Attorneys for the
8                                       CITY OF SACRAMENTO

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                7

ANSWER TO VERIFIED PETITION FOR WRIT OF ADMINISTRATIVE MANDAMUS

920348

## PROOF OF SERVICE

CASE NAME:        Wang, Liting and Yuhuo, v. City of Sacramento, et al.
COURT:            Sacramento Superior Court
CASE NUMBER:      34-2019-80003279

I declare that:

I am employed in the County of Sacramento, California.  I am over the age of eighteen years and not a party to this action; my business address is 915 I Street, Room 4010, Sacramento, CA 95814-2604.   On the date executed below, I served the following document(s):

### CITY OF SACRAMENTO'S ANSWER TO
### VERIFIED PETITION FOR WRIT OF ADMINISTRATIVE MANDAMUS

[ X ] **By Electronic Service.** Based on a court order or an agreement of the parties to accept electronic service. I caused the documents to be sent to the persons at the electronic service addresses listed below.

Alan J. Donato, Esq.
Donato Legal Group
1383 Garden Highway, Suite 100
Sacramento, CA 95833
alan@donato.legal

I declare under penalty of perjury that the foregoing is true and correct, and that the declaration was executed on July _16_, 2020, at Sacramento, California.

SUZANNE M. MACDONALD

PROOF OF SERVICE

934372

DROP BOX

'0 . 16  PT 2: 05

COURTHOUSE
SUPERIOR COURT
OF CALIFORNIA
SACRAMENTO COUNTY



FILED / ENDORSED

AUG   6 2020

By D. Ward, DEPUTY CLERK

Alan J. Donato  SBN 264755
Donato Legal Group, Inc.
1383 Garden Highway, Suite 100
Sacramento, CA  95833
Phone: 916-716-7177
Alan@Donato.Legal

Attorney for Petitioners

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| Liting Wang and Yuhuo Wang<br>Petitioners,<br><br>v.<br><br>CITY OF SACRAMENTO; CITY COUNCIL OF THE CITY OF SACRAMENTO;  and DOES 1 through 100, inclusive,<br>Respondents.<br><br>CITY OF SACRAMENTO POLICE DEPARTMENT; DANIEL HAHN, in his official capacity as Chief of Police for the City of Sacramento,<br><br>Real Parties in Interest. | Case No.: 34-2019-80003279<br><br>STIPULATION TO FILE FIRST AMENDED WRIT OF MANDAMUS AND CONTINUANCE OF HEARING ON DEMURRER<br><br>Date: August 14, 2020<br>Time: 10:00 a.m.<br>Dept: 27 |

WHEREFORE the parties have agreed to grant leave to Petitioners Liting Wang and Yuhuo Wang to file the First Amended Writ of Mandamus. Thus, the hearing on the Demurrer to the Petition of Writ of Mandamus scheduled on August 14, 2020 at 10:00 a.m. is moot. The parties have also agreed to continue the hearing on the Demurrer to January 15, 2021 at 10:00 a.m. The First Amended Writ of Mandamus will be filed 30 days from the execution of the Order.

Page 1 of 2

Wang et al. v. City of Sacramento, et al.
Stipulation To File First Amended Writ and Continuance of Hearing on Demurrer

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

Dated:                                        8 / 5 / 2020

SUSANA ALCALA WOOD,
City Attorney

By:

Melissa D. Bickel (SBN 209914)
Senior Deputy Attorney
915 I Street, Room 4010
Sacramento, CA 95814
(916) 808-5346
Attorneys for the City of Sacramento

DONATO LEGAL GROUP

Alan J. Donato (SBN 264755)
1383 Garden Highway, Ste. 100
Sacramento, CA 95833
(916) 716-7177
Attorney for Petitioners

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

Page 2 of 2

Wang et al. v. City of Sacramento, et al.
Stipulation To File First Amended Writ and Continuance of Hearing on Demurrer

1   Alan J. Donato  SBN 264755
    Donato Legal Group, Inc.
2   1383 Garden Highway, Suite 100
    Sacramento, CA 95833
3   Phone: 916-716-7177
4   Alan@Donato.Legal

5

6   Attorney for Petitioners

7           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
8              IN AND FOR THE COUNTY OF SACRAMENTO

9   | Liting Wang and Yuhuo Wang | Case No.: 34-2019-80003279 |
    | Petitioners, | |
10  | | **[PROPOSED] ORDER GRANTING** |
11  | v. | **PETITIONERS LEAVE TO FILE FIRST** |
    | | **AMENDED WRIT OF MANDAMUS AND** |
12  | CITY OF SACRAMENTO; CITY | **CONTINUANCE OF HEARING ON** |
13  | COUNCIL OF THE CITY OF | **DEMURRER** |
    | SACRAMENTO;  and DOES 1 through | |
14  | 100, inclusive, | |
15  | Respondents. | |
16  | | Date: August 14, 2020 |
    | | Time: 10:00 a.m. |
17  | | Dept: 27 |
    | CITY OF SACRAMENTO POLICE | |
18  | DEPARTMENT; DANIEL HAHN, in his | |
    | official capacity as Chief of Police for the | |
19  | City of Sacramento, | |
20  | | |
    | Real Parties in Interest. | |
21

22

23       WHEREFORE IT HAS BEEN STIPULATED by and between the parties, Petitioners,

24  LITING WAND AND YUHUO WANG, and Respondent, CITY OF SACRAMENTO

25  (collectively referred to herein as "the Parties") by and through their respective attorneys of

26  record as follows:

27

28

FILED / ENDORSED

AUG   6 2020

By D. Ward, DEPUTY CLERK

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

1.  On August 4, 2020 the Parties agreed to grant Petitioners leave to file the First Amended Writ of Mandamus, which renders the hearing on the Demurrer on the Petition for the Writ of Mandamus moot.

2.  The Parties also agreed to continue the hearing for the Demurrer to the Petition of Writ of Mandamus originally scheduled for August 14, 2020 at 10:00 a.m. to January 15, 2021 at 10:00 a.m.

3. The Parties further agree that the First Amended Writ of Mandamus will be filed 30 days from the execution of this Order.

The Court, having reviewed the Stipulation of the Parties and finding good cause, hereby issues and Order to:

1.  Grants the Stipulation of the Parties to grant leave to Petitioners to file the First Amended Writ of Mandamus 30 days from the execution of this Order; and

2.  Grants the continuance of the hearing on the Demurrer to January 15, 2021 at 10:00 a.m.

IT IS SO ORDERED.

Dated:    8/6/2020

_____

THE HONORABLE JUDGE STEVEN GERVERCER

Wang et al. v. City of Sacramento, et al.
[Proposed] Order

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

1  SUSANA ALCALA WOOD, City Attorney (SBN 156366)
   **MELISSA D. BICKEL, Senior Deputy City Attorney (SBN 209914)**
2  CITY OF SACRAMENTO
   915 I Street, Room 4010
3  Sacramento, CA  95814-2608
   Telephone:  (916) 808-5346
4  Facsimile:  (916) 808-7455

   FILED/ENDORSED

   AUG -5 2020

   By: _____ M. Rubalcaba
              Deputy Clerk

5  Attorneys for the CITY OF SACRAMENTO
   (erroneously sued as the City Council of the City of Sacramento,
6  City of Sacramento Police Department and Daniel Hahn)

7

8                    SUPERIOR COURT OF CALIFORNIA

9                       COUNTY OF SACRAMENTO

10

11  LITING WANG and YUHUO WANG,          Case No.:  34-2019-80003279

12              Petitioners,              Petition Filed:  December 6, 2019
                                          Hearing Date:  N/A
13  vs.
                                          **REPLY IN SUPPORT OF CITY OF**
14  CITY OF SACRAMENTO,                   **SACRAMENTO'S DEMURRER TO**
                                          **WRIT OF ADMINISTRATIVE**
15                                        **MANDAMUS**
            Respondent.
16                                        Date: August 14, 2020
                                          Time: 10:00 a.m.
17                                        Dept: 27
                                          Judge: Hon. Steven Gervercer
18

19       This Reply is filed with the understanding that Petitioners' counsel has indicated he intends

20  to seek leave to file an Amended Writ (he advised that he attempted to file one prior to the date

21  the Opposition to this Demurrer was due, but as an Answer was already on file, it was rejected

22  by the court).

23       While Respondent does not object to the allowance of leave to file an Amended Writ, and

24  will stipulate to such leave if need be, if leave is not sought and obtained in advance of the date

25  the court intends to publish its tentative ruling on the subject Demurrer, Respondent

26  respectfully requests the court rule on the Demurrer on its merits.

27       Such a ruling can only serve to assist Petitioner in the drafting of the Amended Writ, and

28  may negate the need for further court intervention (in the form of another Demurrer).

                                    1

1    Respectfully submitted.

2    DATED:  August 5, 2020                           SUSANA ALCALA WOOD,
                                                       City Attorney
3

4

5                                                By: _____

6                                                      MELISSA D. BICKEL
                                                       Senior Deputy City Attorney
7
                                                     Attorneys for the
8                                                    CITY OF SACRAMENTO

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                  2
940237

## PROOF OF SERVICE

CASE NAME:       Wang, Liting and Yuhuo, v. City of Sacramento, et al.
COURT:           Sacramento Superior Court
CASE NUMBER:     34-2019-80003279

I declare that:

I am employed in the County of Sacramento, California.  I am over the age of eighteen years and not a party to this action; my business address is 915 I Street, Room 4010, Sacramento, CA 95814-2604.   On the date executed below, I served the following document(s):

**REPLY IN SUPPORT OF CITY OF SACRAMENTO'S
DEMURRER TO WRIT OF ADMINISTRATIVE MANDAMUS**

[X] **By Electronic Service.** Based on a court order or an agreement of the parties to accept electronic service. I caused the documents to be sent to the persons at the electronic service addresses listed below.

Alan J. Donato, Esq.
Donato Legal Group
1383 Garden Highway, Suite 100
Sacramento, CA 95833
alan@donato.legal

I declare under penalty of perjury that the foregoing is true and correct, and that the declaration was executed on August 5, 2020, at Sacramento, California.

SUZANNE M. MACDONALD

1

934372

RECEIVED
VIA DROP BOX

2020 AUG -5  PM 3: 03

GORDON D SCHABER COURTHOUSE
SUPERIOR COURT
OF CALIFORNIA
SACRAMENTO COUNTY

1    Alan J. Donato  SBN 264755
     Donato Legal Group, Inc.
2    1383 Garden Highway, Suite 100
     Sacramento, CA  95833
3    Phone: 916-716-7177
4    Alan@Donato.Legal

5    Attorney for Petitioners
6



FILED/ENDORSED

AUG - 5 2020

By: _____M. Rubalcaba_____
          Deputy Clerk

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| Liting Wang and Yuhuo Wang<br>Petitioners,<br><br>v.<br><br>CITY OF SACRAMENTO; CITY COUNCIL OF THE CITY OF SACRAMENTO;  and DOES 1 through 100, inclusive,<br>Respondents.<br><br><br>CITY OF SACRAMENTO POLICE DEPARTMENT; DANIEL HAHN, in his official capacity as Chief of Police for the City of Sacramento,<br><br>Real Parties in Interest. | Case No.:  34-2019-80003279<br><br>**STIPULATION TO FILE FIRST AMENDED WRIT OF MANDAMUS AND CONTINUANCE OF HEARING ON DEMURRER**<br><br><br><br>Date: August 14, 2020<br>Time: 10:00 a.m.<br>Dept: 27 |

WHEREFORE the parties have agreed to grant leave to Petitioners Liting Wang and Yuhuo Wang to file the First Amended Writ of Mandamus. Thus, the hearing on the Demurrer to the Petition of Writ of Mandamus scheduled on August 14, 2020 at 10:00 a.m. is moot. The parties have also agreed to continue the hearing on the Demurrer to January 15, 2021 at 10:00 a.m. The First Amended Writ of Mandamus will be filed 30 days from the execution of the Order.

Page 1 of 2

**Wang et al. v. City of Sacramento, et al.**
**Stipulation To File First Amended Writ and Continuance of Hearing on Demurrer**

1
2
3    Dated:                                 8/5/2020
4
5                                    SUSANA ALCALA WOOD,
                                     City Attorney
6
7                              By:
8                                    Melissa D. Bickel (SBN 209914)
                                     Senior Deputy Attorney
9                                    915 I Street, Room 4010
                                     Sacramento, CA 95814
10                                   (916) 808-5346
11                                   Attorneys for the City of Sacramento
12
                                     DONATO LEGAL GROUP
13
14
                                     Alan J. Donato (SBN 264755)
15                                   1383 Garden Highway, Ste. 100
                                     Sacramento, CA 95833
16                                   (916) 716-7177
                                     Attorney for Petitioners
17
18
19
20
21
22
23
24
25
26
27
28

Wang et al. v. City of Sacramento, et al.
Stipulation To File First Amended Writ and Continuance of Hearing on Demurrer

*Left margin:* ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

Alan J. Donato  SBN 264755
Donato Legal Group, Inc.
1383 Garden Highway, Suite 100
Sacramento, CA  95833
Phone: 916-716-7177
Alan@Donato.Legal

Attorney for Petitioners

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| Liting Wang and Yuhuo Wang<br>Petitioners,<br><br>v.<br><br>CITY OF SACRAMENTO; CITY<br>COUNCIL OF THE CITY OF<br>SACRAMENTO;  and DOES 1 through<br>100, inclusive,<br>Respondents. | Case No.:  34-2019-80003279<br><br>**[PROPOSED] ORDER GRANTING<br>PETITIONERS LEAVE TO FILE FIRST<br>AMENDED WRIT OF MANDAMUS AND<br>CONTINUANCE OF HEARING ON<br>DEMURRER** |
| CITY OF SACRAMENTO POLICE<br>DEPARTMENT; DANIEL HAHN, in his<br>official capacity as Chief of Police for the<br>City of Sacramento,<br><br>Real Parties in Interest. | Date: August 14, 2020<br>Time: 10:00 a.m.<br>Dept: 27 |

WHEREFORE IT HAS BEEN STIPULATED by and between the parties, Petitioners,

LITING WAND AND YUHUO WANG, and Respondent, CITY OF SACRAMENTO

(collectively referred to herein as "the Parties") by and through their respective attorneys of

record as follows:



ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

1. On August 4, 2020 the Parties agreed to grant Petitioners leave to file the First Amended Writ of Mandamus, which renders the hearing on the Demurrer on the Petition for the Writ of Mandamus moot.

2. The Parties also agreed to continue the hearing for the Demurrer to the Petition of Writ of Mandamus originally scheduled for August 14, 2020 at 10:00 a.m. to January 15, 2021 at 10:00 a.m.

3. The Parties further agree that the First Amended Writ of Mandamus will be filed 30 days from the execution of this Order.

The Court, having reviewed the Stipulation of the Parties and finding good cause, hereby issues and Order to:

1. Grants the Stipulation of the Parties to grant leave to Petitioners to file the First Amended Writ of Mandamus 30 days from the execution of this Order; and

2. Grants the continuance of the hearing on the Demurrer to January 15, 2021 at 10:00 a.m.

IT IS SO ORDERED.

Dated:

_____

THE HONORABLE JUDGE STEVEN GERVERCER

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

RECEIVED
BY DROP BOX

2020 AUG -5  PM 3:31

GORDON D. SCHABER COURTHOUSE
SUPERIOR COURT
OF CALIFORNIA
SACRAMENTO COUNTY

1   Alan J. Donato  SBN 264755
    The Donato Legal Group, Inc.
2   1383 Garden Highway, Suite 100
3   Sacramento, CA  95833
    Phone: 916-716-7177
4
5   Alan@Donato.Legal
    Attorney for Petitioners,
6



FILED/ENDORSED

SEP - 1 2020

By: _____ T. Crowther _____
                Deputy Clerk

7        **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
             **IN AND FOR THE COUNTY OF SACRAMENTO**

8

9   Liting Wang and Yuhuo Wang            Case No.: 34-2019-80003279
    Petitioners,
10                                        **FIRST AMENDED PETITION FOR WRIT**
                                          **OF ADMINISTRATIVE MANDAMUS**
11  v.                                    **CCP §1094.5; and CCP 1085(a)**

12  CITY OF SACRAMENTO; CITY
13  COUNCIL OF THE CITY OF
    SACRAMENTO;  and DOES 1 through       Date: N/A
14  100, inclusive,                       Time: N/A
    Respondents.                          Dept: 27
15

16
17  CITY OF SACRAMENTO POLICE
    DEPARTMENT; DANIEL HAHN, in his
18  official capacity as Chief of Police for the
    City of Sacramento,
19
20  Real Parties in Interest.

21

22                        **INTRODUCTION**

23

24      Petitioners, Ms. Liting Wang and Yuhuo Wang, will, and hereby does, move for a Petition

25  For Writ of Mandamus, under Code of Civil Procedure § 1094.5 commanding Respondents to set

26
    aside its decisions of September 12, 2019, to uphold administrative penalties, in the
27
28  administrative hearings titled Sacramento Police Department Administrative Penalty Hearing.  In

                                    Page 1 of 12

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

1   the alternative, Petitioners, will, and hereby does, move for a Petition For Writ of Mandamus,

2   under Code of Civil Procedure § 1085(a) to compel Respondents to conduct an appeal hearing

3   that would provide Petitioners with a meaningful opportunity to be heard.

4

5       1.   Petitioners, Ms. Liting Wang and Yuhuo Wang petition this Court for a writ of

6   mandate under Code of Civil Procedure §1094.5 and in the alternative §1085(a), directed to

7   Respondents, City of Sacramento, and City of Sacramento City Council, and by this verified

8
    petition alleges as follows:
9

10      2.   Petitioner Liting Wang was the property owner of the residence located at 745

11  Melanie Way, in the City of Sacramento, County of Sacramento, and Petitioner Yuhuo Wang is a

12  property owner of the residence located at 8040 Maybelline Way, in the City of Sacramento,

13
    County of Sacramento.  On May 15, 2018 Petitioner Yuhuo Wang was assessed an administrative
14

15  penalty by the City of Sacramento Police Department in the amount of $180,500.00.  On the

16  same day, Petitioner Liting Wang was assessed an administrative penalty by the City of

17
    Sacramento Police Department in the amount of $593,000.00, which was subsequently reduced
18

19  to $250,000.00 by the Hearing Examiner, Edith Awuah.  Since these matters are related and the

20  Petitioners are relatives, Liting is the daughter of Yuhuo, the Petitioners bring this consolidated

21
    action. Petitioners bring this petition as a protestation of the decisions rendered on September
22

23  12, 2019, by Hearing Examiner, Edith Awuah, who was appointed to hear appeals by the

24  Sacramento City Council.  This decision was rendered after a so-called hearing required by law.

25  At the same said hearings, evidence was required to be taken.  As the owners of aforementioned

26
    properties in the City of Sacramento, and the recipients of the administrative penalties,
27

28  Petitioners are directly affected by the decision of the Hearing Examiner, and are beneficially

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

Wang et al. v. City of Sacramento, et al.
First Amended Petition for Writ of Administrative Mandamus

interested in and aggrieved by the Hearing Examiner's decisions to uphold the administrative

penalties as alleged below.

## THE PARTIES

### A. PETITIONERS

3.     Petitioner Liting Wang was the property owner of the residence located at 745

Melanie Way, in the City of Sacramento, County of Sacramento, and Petitioner Yuhuo Wang is a

property owner of the residence located at 8040 Maybelline Way, in the City of Sacramento,

County of Sacramento.

### B. RESPONDENTS

4.     Respondents, City of Sacramento, and City of Sacramento City Council, are

authorized and required by Sacramento City Code Section 1.28(D) (4), to conduct evidentiary

hearings and to render final decisions in appeals brought by Petitioners contesting administrative

penalties imposed on them by the City of Sacramento Police Department.  Sacramento City Code

Section 1.24.060, vests the City of Sacramento City Council with the power to determine appeals

of administrative penalties which have been assessed by the City of Sacramento Police

Department, with a Hearing Examiner that has been appointed by the City Council.  On

September 12, 2019, a Hearing Examiner appointed by the City of Sacramento City Council,

conducted a hearing on the petitioner's appeal and rendered a final decision upholding the

administrative penalty.

ALAN DONATO / DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

Wang et al. v. City of Sacramento, et al.
First Amended Petition for Writ of Administrative Mandamus

## C. REAL PARTY IN INTEREST

5.      Real party in interest, Sacramento City Chief of Police, Daniel Hahn, is named here in his representative capacity for the City of Sacramento Police Department, and is the person vested by City of Sacramento Code Section 1.28.010 as the assessing authority with the power to assess administrative penalties for violations of Sacramento City Code Section 8.132.040, Indoor Cultivation of Marijuana.  Real party in interest assessed an administrative penalties, pursuant to Sacramento City Code Section 8.132.050 on May 15, 2018, for violation of Sacramento City Code Section 8.132.040.  Therefore, Daniel Hahn, as Chief of Police of the Sacramento City Police Department, has an interest in the outcome of Petitioner's proceeding to set aside the decision of the City of Sacramento.

## JURISDICTION AND VENUE

6.      Respondents, City of Sacramento, and City of Sacramento City Council, are authorized and required by Sacramento City Code Section 1.28(D) (4), to conduct evidentiary hearings and to render final decisions in appeals brought by Petitioners contesting administrative penalties imposed on them by the City of Sacramento Police Department.  Sacramento City Code Section 1.24.060, vests the Sacramento City Council with the power to determine appeals of administrative penalties which have been assessed by the City of Sacramento Police Department, with a Hearing Examiner that has been appointed by the City Council.  On August 15, 2019, a Hearing Examiner appointed by the Sacramento City Council, conducted a hearing on the Petitioners' appeals and rendered a final decisions upholding the administrative penalties.  Thus, Petitioners have exhausted their administrative remedies and judicial review is proper.

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

## STANDING

7.     Petitioners have standing to assert the claims raised in this Writ because their property interests are at stake.  Due to Respondents' improper notice, among other constitutional violations, Petitioners were not able to avail themselves of the administrative remedies in violation of their due process rights.  Petitioner Liting Wang and Petitioner Yuhuo Wang are directly and adversely affected by the statutorily impermissible and unconstitutional imposition of an excessive administrative penalty.  Thus, Petitioners have standing to assert these claims.

## FACTUAL ALLEGATIONS

8.     On or about May 15, 2018, under Sacramento City Code Section 8.132.040, orders imposing administrative penalties in the aforementioned amounts were imposed on Petitioners by the City of Sacramento Police Department for an alleged violation of Sacramento City Code Section 8.132.040.  These orders of administrative penalties were served on Petitioners and within 20 days thereafter Petitioners filed appeal requests with Respondents.  On or about August 15, 2019, hearings were held in Sacramento County before a Hearing Examiner, who upheld the administrative penalty in the amount of $180,500.00 in the case of Yuhuo Wang and reduced the administrative penalty from $593,000.00 to $250,000.00 in the case of Liting Wang, making the decisions effective immediately.  On September 13, 2019, Respondents mailed the decisions to Petitioners.  A true copy of the decisions are attached as Exhibit A and incorporated in this petition.

Wang et al. v. City of Sacramento, et al.
First Amended Petition for Writ of Administrative Mandamus

9.     Respondents' decisions, Exhibit A, is an abuse of discretion under Code of Civil Procedure §1094.5(b) because Respondents have "not proceeded in the manner required by law, the decisions are not supported by the findings, and the findings are not supported by the evidence." More specifically:

### Respondents Violated Petitioners' Due Process Rights to Receive Fair Notice of the Prohibited Conduct

10.     Petitioners reallege and incorporate by reference the allegations contained in paragraphs 1 through 9 as if fully set forth herein.

11.     As a threshold matter, at the time Petitioners were cited with a violation of 8.132.030, property owners were charged with "knowingly or unknowingly" owning or occupying any property where cannabis is being cultivated. This statutory language is vague because it does not provide the property owners with a means to conform their conduct to the law in order to avoid a violation. Thus, it is does not provide adequate notice in violation of Petitioners' due process rights.

12.     After numerous challenges to the unconstitutionality of the ordinance, Respondents have since revised the ordinance in an attempt to provide adequate notice. The revised ordinance reads as follows: "[n]o person shall own, lease, occupy, or have charge or possession of any property upon which the person knows or, by exercising reasonable care or diligence should know that cannabis is being cultivated . . ."

13.     Unfortunately, Petitioners were cited under the unconstitutional ordinance, and thus were not provided adequate notice.

Wang et al. v. City of Sacramento, et al.
*First Amended Petition for Writ of Administrative Mandamus*

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

**The Administrative Penalty Notice Violates Petitioners' Due Process Rights to Fair Notice**

14.   Petitioners reallege and incorporate by reference the allegations contained in paragraphs 1 through 13 as if fully set forth herein.

15.   Respondents failed to provide notice of the alleged violation in that Respondents cited the wrong Code provision (section 8.132.040 instead of 8.132.030) in the notices of administrative penalties, and thus Petitioners did not receive the requisite notice that due process requires and were deprived of adequate preparation for an impending hearing.

**Respondents' Actions Are Ultra Vires of State Law**

16.   Petitioners reallege and incorporate by reference the allegations contained in paragraphs 1 through 15 as if fully set forth herein.

17.   Under Sacramento City Code § 8.132.050(B), residential cannabis cultivation is a public nuisance.  Therefore, an imposition of an administrative penalty is ultra vires of Government Code Section 53069.4(a)(1) because California law prohibits cities from collecting nuisance fines or penalties by attaching a lien or imposing a special assessment on real property.

**Respondents Violated Petitioners' Due Process Rights to a Fair Hearing**

18.   Petitioners reallege and incorporate by reference the allegations contained in paragraphs 1 through 17 as if fully set forth herein.

19.   Respondents violated Petitioners' due process rights to a fair hearing under the California Constitution, Article I, § 7 subd. (a), the California Administrative Procedure Act, and its own ordinance Sacramento City Code Section 1.28(D) (4) because neither oral nor

Wang et al. v. City of Sacramento, et al.
First Amended Petition for Writ of Administrative Mandamus

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

documentary evidence could be taken or considered regarding the constitutionality of said ordinances.

### The Hearing Examiners' Decisions Are Not Supported by the Evidence

20.     Petitioners reallege and incorporate by reference the allegations contained in paragraphs 1 through 19 as if fully set forth herein.

21.     The hearing examiner's decision in the case of Petitioner Liting Wang violated Code of Civil Procedure §1094.5 because the decisions are not supported by the findings, and the findings are not supported by the evidence:

(a) **Finding No. A**, is not supported by the evidence since the administrative penalty was not properly issued in that Petitioner Liting Wang was improperly cited with violating Sacramento City Code Section 8.132.040, which applies to the actual cultivation of marijuana instead of 8.132.030, which makes a property owner liable when "cannabis is knowingly or unknowingly being cultivated." Here, the Hearing Examiner's finding of facts does not indicate that Liting Wang actually participated in the illegal cannabis cultivation. Thus, the administrative penalty was not properly issued.

(b) **Finding No. B**, underscores that the administrative penalty was not properly issued since the Hearing Examiner found that Liting Wang was "a college student at the time without substantial capacity to stop her mother, Xiamei Xu's cannabis cultivation on the property." As such, the Hearing Examiner never found that Liting Wang was actually involved in the illegal cannabis cultivation as required by the notice of the administrative penalty under Sacramento City Code Section 8.132.040.

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

22.   The hearing examiner's decision in the case of Petitioner Yuhuo Wang violated Code of Civil Procedure §1094.5 because the decisions are not supported by the findings, and the findings are not supported by the evidence:

(a) **Finding No. A,** is not supported by the evidence since the administrative penalty was not properly issued in that Petitioner Yahoo Wang was improperly cited with violating Sacramento City Code Section 8.132.040, which applies to the actual cultivation of marijuana instead of 8.132.030, which makes a  property owner liable when "cannabis is knowingly or unknowingly being cultivated." Here, the Hearing Examiner's finding of facts does not indicate that Yuhuo Wang actually participated in the illegal cannabis cultivation.  Thus, the administrative penalty was not properly issued.

(b) **Finding No. B,** underscores that the administrative penalty was not properly issued since the Hearing Examiner found that Xiamei Xu was responsible for the alleged illegal cannabis cultivation.

### Respondents Did Not Meet Their Burden of Proof

23.   Petitioners reallege and incorporate by reference the allegations contained in paragraphs 1 through 22 as if fully set forth herein.

24.   Respondents violated Petitioners' due process rights.  In accordance with the Rule 4.02 and CACI No. 200, the burden of proof is the preponderance of evidence.  The City shall establish based on the evidence presented at the hearing, that appellant has committed or caused

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

Wang et al. v. City of Sacramento, et al.
**First Amended Petition for Writ of Administrative Mandamus**

1    the alleged violations of the Sacramento City Code.  The City did not meet their burden of proof.

2    (See Rule 4.02 and CACI No. 200.)

3

4                    **Respondents Violated Petitioners' Eighth Amendment Rights**

5         25.    Petitioners reallege and incorporate by reference the allegations contained in

6

7    paragraphs 1 through 24 as if fully set forth herein.

8         26.    The penalty provisions set forth in Sacramento City Code Section 8.132.050 and

9    as applied to Petitioners are excessive and violate both the Federal and State Constitutions.

10

11                **Respondents Violated Petitioner's Due Process Rights Under Section 1983**

12        27.    Petitioners reallege and incorporate by reference the allegations contained in

13   paragraphs 1 through 26 as if fully set forth herein.

14        28.    Respondents have repeatedly trampled over the Petitioners' due process rights in

15

16   that:

17

18        29.    Respondents failed to provide adequate notice in violation of Petitioners' due

19   process rights.

20        30.    Respondents' actions are ultra vires of California Government Code Section

21

22   53069.4(a)(1) because the imposition of a lien or special assessment on real property for a

23   nuisance fine is not contemplated by California Government Code Section 53069.4(a)(1).

24        31.    Respondents violated Petitioners' rights to a fair hearing.

25        32.    Respondents failed to meet their burden of proof.

26

27

28

Wang et al. v. City of Sacramento, et al.
First Amended Petition for Writ of Administrative Mandamus

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

33.    Respondents violated Petitioners' rights under the Eighth Amendment of the United States Constitution and the California Constitution because administrative penalties in the amount of $180,500.00 and $250,000.00 are excessive.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioners pray that:

1.    A peremptory writ of mandate issue, under Code of Civil Procedure §1094.5, directed to Respondents, compelling Respondents to set aside their decisions dated September 12, 2019.

2.    In the alternative, a peremptory writ of mandate issue, under Code of Civil Procedure § 1085 to compelling Respondents to conduct a hearing commensurate with due process norms.

3.    Petitioners recover their costs and damages according to proof; and

4.    Such other relief be granted that the Court considers proper.

Respectfully Submitted,

THE DONATO LEGAL GROUP

Date:   August 31, 2020

Alan J. Donato

Attorney for Petitioners

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

Wang et al. v. City of Sacramento, et al.
First Amended Petition for Writ of Administrative Mandamus

1

## <u>VERIFICATION</u>

2      I am the Petitioner in this proceeding. The facts alleged in the above petition are true of

3   my own knowledge, except as to those matters stated on information and belief, and as to those

4
    matters, I believe them to be true.
5

6      I declare under penalty of perjury under the laws of the State of California that the

7   foregoing is true and correct.

8

9

10   Date:  08/31/2020                             *Liting Wang*

11                                        Petitioner Liting Wang

12

13

14

15

16   Date: 08/31/2020                             *Yuhuo Wang*

17

18                                        Petitioner Yuhuo Wang

19

20

21

22

23

24

25

26

27

28

ALAN DONATO | DONATO LEGAL GROUP
1383 GARDEN HIGHWAY, STE. 100
SACRAMENTO, CA 95833

_____
Page 12 of 12

Wang et al. v. City of Sacramento, et al.
First Amended Petition for Writ of Administrative Mandamus

# DECLARATION OF XIAMEI XU

I, XIAMEI XU, declare the following in support of the Writ of Mandamus:

1. I am solely responsible for the cultivation of cannabis at the real properties located at 745 Melanie Way, in the City of Sacramento, County of Sacramento and 8040 Maybelline Way, in the City of Sacramento, County of Sacramento.

2. My daughter, Liting Wang, and my husband, Yuhuo Wang, did not participate or directly benefit from the cultivation of cannabis at said properties.

3. In fact, I completely ignored their (Liting Wang and Yuhuo Wang) attempts to prevent and stop the cultivation of cannabis at the aforementioned properties.

4. The properties have been abated.

5. As the result of the consequences of my actions, I am committed to abiding by the ordinance regarding the cultivation of cannabis.

6. The administrative penalty or else a forfeiture of the residential property located at 8040 Maybelline Way and the forfeiture of my daughter's assets will impose a substantial hardship.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 08/31/2020 _____   By: _xiamei xu_ _____

XIAMEI XU

1

# EXHIBIT A

# Related Attachment(s) - SUPPLEMENTS

Attachment Description: **ADMIN PENALTY**
Reference Number:

SACRAMENTO POLICE DEPARTMENT
ADMINISTRATIVE PENALTY

| DATE OF VIOLATION | TIME | DAY OF WEEK | ADDRESS OF VIOLATION | DISTRICT | SPD REPORT # |
|---|---|---|---|---|---|
| 05/15/18 | 0735 | TUES | 7115 MELANIE WAY | 4B | 18-144419 |

| NAME (FIRST, MIDDLE, LAST) | BUSINESS NAME |
|---|---|
| LITING WANG | |

| ADDRESS | BUSINESS ADDRESS |
|---|---|
| 7115 MELANIE WAY | |

| CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| SACRAMENTO | CA | 95831 | | | |

| DRIVER LICENSE NO | STATE | BIRTH DATE | PHONE |
|---|---|---|---|

**PENALTY LEVEL:** ☒ Level A: $5,000.00 to $25,000.00   ☐ Level C: $1,000.00 to $2,499.99
☐ Level B: $2,500.00 to $4,999.99   ☐ Level D: $100.00 to $999.99

**PERSON SERVED:**
NAME: LEFT ON COUNTER   DOB:
RELATIONSHIP:
**TYPE OF SERVICE:**
☒ PERSONAL SERVICE   ☐ FIRST CLASS MAIL
☒ CERTIFIED MAIL   ☒ OTHER

**NATURE OF VIOLATION:**
8.132.040 SCC

OWNER IN VIOLATION OF INDOOR MARIJUANA CULTIVATION WITH A MAXIMUM OF 10 PLANTS

8.132.050(E)(1) SCC (FINE)
PLANT TOTAL: 1,192
FINE: $592,000

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, except for that which is based on information and belief, and for that I believe it is true.

| SIGNATURE OF OFFICER | BADGE NUMBER |
|---|---|
| JASON KIRTLAN | 3004 |

RECEIVED BY: (RESPONSIBLE PARTY)   ☐ REFUSED TO SIGN
LEFT ON COUNTER

**ORDER IMPOSING ADMINISTRATIVE PENALTY**
**SACRAMENTO CITY CODE 1.28.010**

You are hereby ordered to pay the City of Sacramento an administrative penalty in the amount of
$ 592,000 _____ (Level A / B / C / D)
imposed in connection with the violation(s) herein described on this notice.

Payment shall be sent or paid to the *City of Sacramento* at 915 I Street, Room 1214, Sacramento, CA 95814 on or before: 06/15/18

The administrative penalty is a personal obligation and failure to pay the penalty may result in the amount being made a lien and/or special assessment against your property as well as other legal action to collect the penalty. If a judicial action is required to collect the penalty, the City will seek to recover its attorney's fees and costs from you. This administrative penalty does not include any other charges that may be applicable to this case. You will receive a separate bill for charges and/or costs incurred by the City when this case is closed.

**RIGHT TO APPEAL**
You may appeal the imposition of this administrative penalty within 20 calendar days after the date this order is served, by filing a written appeal with the Office of the City Clerk and paying an appeal fee. If you fail to appeal, this order shall become final. Any responsible party who files an appeal may seek review of any order entered as a result of the appeal pursuant to *California Code of Civil Procedure Sections 1094.5 and 1094.6.*

White Copy – Sacramento Police Department   Yellow Copy – Code Enforcement   Pink Copy – Violator

SPD 593 (Rev 01/11)

SACRAMENTO POLICE RECORDS DIVISION RECEIVED 2018 MAY 16



City of
**SACRAMENTO**
Cannabis Policy & Enforcement

---

**SACRAMENTO POLICE DEPARTMENT**
**ADMINISTRATIVE PENALTY APPEAL HEARING**
**RECORD OF DECISION**

---

**IN THE MATTER OF:**

**SPD REPORT #:** 18-321551
**APPELLANT:** Liting Wang
**VIOLATION ADDRESS:** 745 Melanie Way
**SACRAMENTO CITY CODE SECTION(S):** 8.132.040
**PROPOSED ADMINISTRATIVE PENALTY:** $593,000

---

**HEARING EXAMINER:** Edith Awuah

**HEARING DATE:** August 15, 2019

This matter was heard at a noticed public hearing. The following witnesses submitted a written explanation, appeared and/or testified at the hearing on behalf of either the City or the Appellant as noted below. Any written materials submitted with the protest or at the hearing were reviewed by the Hearing Examiner and are on file in the offices of the City of Sacramento.

**City Staff:** Kevin Kundinger – Deputy City Attorney

**Appellants:** Liting Wang  Did not appear

Robert Saria – Attorney

**TESTIMONY SUMMARY**

**City Staff:**

**Deputy City Attorney Kevin Kundinger** delivered an opening statement regarding the City Code section 8.08.050 requirements for proper property management: "Every owner of real property within the city is required to manage the property in a manner so as not to violate the provisions of this code and the owner remains liable for violations thereof regardless of any contract or agreement with any third party regarding the property." Attorney Kundinger also summarized the Cultivation of Cannabis Ordinance provisions. In particular, he noted that section 8.132.030 of the ordinance states that: "No person shall own, lease, occupy, or have

---

charge or possession of any property upon which cannabis is knowingly or unknowingly being cultivated" unless one of the exceptions apply.

Attorney Kundinger stated that in September 2017, the Sacramento Police Department (SPD) sent the owner a cannabis abatement letter regarding a possible cannabis operation at 745 Melanie Way. On October 12, 2017, SPD conducted a cannabis inspection at the property and met with the Appellant Liting Wang. No cannabis plants were seen but the officer noted evidence of a previous grow (patched holes in ceilings and walls, reflective material on the bedroom walls and metal bars on the inside and outside of the front windows). On May 14, 2018, SPD reviewed SMUD electrical usage records and noticed that 745 Melanie Way had excessively high usage amounts consistent with an indoor cannabis cultivation operation. From July 2016 – May 2018, the SMUD account holder was either Liting Wang or Yuhuo Wang and Xaimei Xu, who were her parents.

**The Appellant's attorney Mr. Saria** waived the need for Officer Kirtlan to read his staff report. The report provides that on August 16, 2018, the Sacramento Police Department executed a warrant at the property and observed 1192 cannabis plants. No one was at the residence. The exterior doors and windows to the residence were fortified with wrought iron covering them. The garage entry garage door was fortified with use of two 2X4's placed horizontally against the interior side of the door. Inside the residence each of the interior bedroom windows were covered with plywood. The fortifications to the residence are not only a hazard to its occupants, but a violation of Health and Safety code sections 11366 and 11366.5. There were also high intensity discharge lights, chemicals used for cultivation, digital ballasts, timers, fans, ventilation systems and reflective walls. A plastic bag with one pound of processed cannabis was also found.

The exterior of the residence had surveillance cameras mounted underneath the eaves. The surveillance cameras were placed strategically around the residence to identify other criminal activity or law enforcement presence.

Pursuant to SCC 8.132.050 (E)(1), an administrative penalty in the amount of $593,000 (i.e., $500 per plant over six plants) was issued to the owner of the property for a violation of SCC 8.132.040(B). The citation was posted at the residence. The City also mailed a copy of the administrative penalty to the property owner. According to Officer Kirtlan, the administrative penalty in this case is appropriate due to the potential high proceeds to be gained from the cultivation of illegal cannabis.

**Deputy City Attorney Kevin Kundinger** delivered his closing statement in which he noted that given the property inspection, ample indicia, and the continuous illegal cannabis operation at the property, Appellant clearly violated the Sacramento City Code. He stated that the SMUD records were in Appellant's name, and her mother's name and father's name. When the Appellant was detained at the associated property at 8040 Maybelline Way where she lived with her parents, she admitted to knowing that her mother grew cannabis at her property. The Appellant also was in possession of a large amount of cash at the time of detention. He concluded that the Appellant was aware of the illegal cannabis cultivation and that Appellant purchased the property with the intent that it be used as an illegal cannabis cultivation operation.

**Appellant:**

**Robert Saria** the Attorney for the property owner Liting Wang, stated that Liting Wang had knowledge of the grow. Liting Wang is a college student and she is busy with her school. She has no control over the use of her property because her parents were responsible for the cannabis grow operation. He requested lowering the penalty for these reasons.  Mr. Saria also stated that Liting Wang's grandparents gave her money to buy the house and asked that she be entitled to retain those funds.

**Hearing Examiner**

**Edith Awuah**, the hearing examiner noted that according to Zillow, the house has already been sold.

**FINDINGS OF FACT:**

After examining the evidence submitted and arguments offered by City staff, the appellant and witness, if any; the owner's efforts, or lack thereof to comply with the City Code; the staff time and costs incurred in investigating the violation; the extent if any, to which the fine or penalty would impose a substantial economic hardship; the seriousness of the violation; the Hearing Examiner hereby makes the following findings:

A. The Administrative Penalty was properly issued and served

B. The Appellant was the owner of the property at the time of the execution of the search warrant.

C. That the Appellant was aware of the cannabis cultivation at the property but turned a blind eye to it

D. That the Appellant was aware of the potential implications/consequences of illegal marijuana cultivation as she was present at the SPD abatement inspection conducted on October 12, 2017.

E. That, nevertheless. the Appellant was a college student at the time without substantial capacity to stop her mother Xiamei Xu's cannabis cultivation on the property.

**DECISION:**

**The Administrative Penalty issued on May 15, 2018 in the amount of $593,000 is hereby reduced to $250,000.00.**

**IT IS SO ORDERED:**

**Dated: September 12, 2019**

_(signature)_

_____
Edith Awuah
Hearing Examiner

4

**PAYMENT:** ✓ **Applicable**   ☐ **Not Applicable**

See enclosed invoice.

If the administrative penalty is not paid within the time specified, it may be made a personal obligation of the responsible party, and if applicable may also be made a lien against the property on which the violation occurred, and may be made a special assessment collected at the same time and in the same manner as ordinary secured property taxes are collected.

**APPEAL**

If you desire to seek judicial review of the Hearing Examiner's decision, you must file a petition for judicial review with the Sacramento County Superior Court either no later than the 90th day following the date of this decision per California Code of Civil Procedures Sections 1094.5 and 1094.6, or the 20th day following the date of service the decision per California Government Code Section 53069.4.

# SACRAMENTO POLICE DEPARTMENT
## ADMINISTRATIVE PENALTY

| DATE OF VIOLATION | TIME | DAY OF WEEK | ADDRESS OF VIOLATION | DISTRICT | SPD REPORT # |
|---|---|---|---|---|---|
| 05/15/18 | 0800 | TUES | 8040 MAYBELLINE WAY | 5C | 18-144419 |

| NAME (FIRST, MIDDLE, LAST) | BUSINESS NAME |
|---|---|
| JUHUO WANG | XIAMEI XU |

| ADDRESS | BUSINESS ADDRESS |
|---|---|
| 8040 MAYBELLINE WAY | 8040 MAYBELLINE WAY |

| CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| SACRAMENTO | CA | 95823 | SACRAMENTO | CA | 95823 |

| DRIVER LICENSE NO | STATE | BIRTH DATE | PHONE |
|---|---|---|---|
| F7743091 | CA | 8/5/68 | |

**PENALTY LEVEL:** ☒ Level A: $5,000.00 to $25,000.00   ☐ Level C: $1,000.00 to $2,499.99
☐ Level B: $2,500.00 to $4,999.99   ☐ Level D: $100.00 to $999.99

**PERSON SERVED:**
NAME: LEFT ON COUNTER   DOB:

RELATIONSHIP:

**TYPE OF SERVICE:**
☒ PERSONAL SERVICE   ☐ FIRST CLASS MAIL
☐ CERTIFIED MAIL   ☐ OTHER

**NATURE OF VIOLATION:**
8.132.040 SCC

OWNER IN VIOLATION OF INDOOR MARIJUANA CULTIVATION WITH A MAXIMUM OF 10 PLANTS.

361 PLANTS X $500 = $180,500

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, except for that which is based on information and belief, and for that I believe it is true.

| SIGNATURE OF OFFICER | BADGE NUMBER |
|---|---|
| JASON KIRKLAN | 3054 |

| RECEIVED BY: (RESPONSIBLE PARTY) | ☐ REFUSED TO SIGN |
|---|---|
| LEFT ON COUNTER | |

## ORDER IMPOSING ADMINISTRATIVE PENALTY
## SACRAMENTO CITY CODE 1.28.010

You are hereby ordered to pay the City of Sacramento an administrative penalty in the amount of
$ 180,500   (Level A / B / C / D)
imposed in connection with the violation(s) herein described on this notice.

Payment shall be sent or paid to the *City of Sacramento* at 915 I Street, Room 1214, Sacramento, CA 95814 on or before: 06/15/18

The administrative penalty is a personal obligation and failure to pay the penalty may result in the amount being made a lien and/or special assessment against your property as well as other legal action to collect the penalty. If a judicial action is required to collect the penalty, the City will seek to recover its attorney's fees and costs from you. This administrative penalty does not include any other charges that may be applicable to this case. You will receive a separate bill for charges and/or costs incurred by the City when this case is closed.

**RIGHT TO APPEAL**

You may appeal the imposition of this administrative penalty within 20 calendar days after the date this order is served, by filing a written appeal with the Office of the City Clerk and paying an appeal fee. If you fail to appeal, this order shall become final. Any responsible party who files an appeal may seek review of any order entered as a result of the appeal pursuant to *California Code of Civil Procedure Sections 1094.5 and 1094.6.*

White Copy – Sacramento Police Department        Yellow Copy – Code Enforcement        Pink Copy – Violator

SPD 593 (Rev 01/11)

# City of
# SACRAMENTO
Cannabis Policy & Enforcement

*Lawson*

*Robertson*

> **SACRAMENTO POLICE DEPARTMENT**
> **ADMINISTRATIVE PENALTY APPEAL HEARING**
> **RECORD OF DECISION**

## IN THE MATTER OF:

**SPD REPORT #:** 18-144419
**APPELLANT:** Yuhuo Wang
**VIOLATION ADDRESS:** 8040 Maybelline Way
**SACRAMENTO CITY CODE SECTION(S):** 8.132.040
**PROPOSED ADMINISTRATIVE PENALTY:** $180,500

**HEARING EXAMINER:** Edith Awuah

**HEARING DATE:** August 15, 2019

This matter was heard at a noticed public hearing. The following witnesses submitted a written explanation, appeared and/or testified at the hearing on behalf of either the City or the Appellant as noted below. Any written materials submitted with the protest or at the hearing were reviewed by the Hearing Examiner and are on file in the offices of the City of Sacramento.

**City Staff:**   Emilio Camacho – Deputy City Attorney

**Appellants:** Yuhuo Wang - Did Not Appear

Robert Saria – Attorney

## TESTIMONY SUMMARY

**City Staff:**

**Deputy City Attorney Emilio Camacho** delivered an opening statement regarding the City Code section 8.08.050 requirements for proper property management: "Every owner of real property within the city is required to manage the property in a manner so as not to violate the provisions of this code and the owner remains liable for violations thereof regardless of any contract or agreement with any third party regarding the property." Attorney Camacho summarized the Cultivation of Cannabis Ordinance provisions. In particular, he noted that section 8.132.030 of the ordinance states that: "No person shall own, lease, occupy, or have

charge or possession of any property upon which cannabis is knowingly or unknowingly being cultivated" unless one of the exceptions apply. He stated that on May 14, 2018, the Sacramento Police Department (SPD) reviewed the SMUD usage list and noticed that 8040 Maybelline had excessively high electricity usage amounts consistent with an indoor cannabis grow. Between July 2016 – May 2018, the SMUD account holder is either Yuhuo Wang or Xaimei Xu, who are married. Further, that on September 13, 2107, SPD conducted an abatement inspection at the property. No plants were seen but evidence of previous cannabis cultivation was noted.

**The Appellant's attorney Mr. Saria** waived the need for Officer Kirtlan to read his staff report. The report provides that in February 2018, SPD received information regarding a possible illegal cannabis cultivation operation occurring at 8040 Maybelline Way, Sacramento, California.

On May 15, 2018, SPD executed a warrant on the property and observed 367 cannabis plants. As officers were setting up in the area to serve the search warrant, Xiamei Xu exited the residence with two children. A vehicle stop was performed. Xu was allowed to take the children to school and instructed to drive back to the property where she was detained. Officers also observed Liting Wang, her daughter, leave the residence and enter a vehicle in the driveway. Ms. Wang was also detained.

The house was fortified with an external metal security gate protecting the front door of the residence and an exterior metal gate over rear sliding door of the house Inside the residence, officers located marijuana in various stages of growth, indicia of occupancy by the property owners, high intensity discharge (HID) lights, chemicals used for cultivation, digital ballasts, timers, fans, ventilation systems and reflective walls. Also, there was $3,780 in cash found in the residence.

Pursuant to SCC 8.132.050 (E)(1), an administrative penalty in the amount of $180,500 (i.e., $500 per plant over six plants) was issued to the owner of the property for a violation of SCC 8.132.040(B). The citation was posted at the residence. The City also mailed a copy of the administrative penalty to the property owner. According to Officer Kirtlan, the administrative penalty in this case is appropriate due to the potential high proceeds to be gained from the cultivation of illegal cannabis.

**Deputy City Attorney Emilio Camacho delivered** the closing statement stating that given the property inspection, ample indicia, and the continuous illegal cannabis operation at the property, Appellant clearly violated the Sacramento City Code.

## Appellant:

**Robert Saria** the Attorney for the property owner Yuhuo Wang stated that the property owner admitted growing cannabis at the property, but he asked for a reduction in the fine, especially for the daughter under a related matter.  The money found at the residence was from the daughter's student loan.

## FINDINGS OF FACT:

After examining the evidence submitted and arguments offered by City staff, the appellant and witness, if any; the owner's efforts, or lack thereof, to comply with the City Code; the staff time and costs incurred in investigating the violation; the extent, if any, to which the fine or penalty would impose a substantial economic hardship; the seriousness of the violation; the Hearing Examiner hereby makes the following findings:

A. The Administrative Penalty was properly issued and served.

B. That based on the abatement inspection conducted by the SPD on September 13th, 2017, Xiamei Xu was aware of the potential consequences of illegal cannabis cultivation but she nevertheless continued with her cultivation operation.

C. That the Appellant, as Xiamei Xu's spouse and fellow resident of 8040 Maybelline Way, must have been aware of the illegal cannabis cultivation operation on the property but turned a blind eye to it.

## DECISION:

**The Administrative Penalty issued on May 15, 2018 in the amount of $180,500.00 is hereby upheld.**

**IT IS SO ORDERED:**

**Dated:  September 12, 2019**

Edith Awuah
Hearing Examiner

3

**PAYMENT:** ✓ **Applicable** ☐ **Not Applicable**

See enclosed invoice.

If the administrative penalty is not paid within the time specified, it may be made a personal obligation of the responsible party, and if applicable may also be made a lien against the property on which the violation occurred, and may be made a special assessment collected at the same time and in the same manner as ordinary secured property taxes are collected.

## APPEAL

If you desire to seek judicial review of the Hearing Examiner's decision, you must file a petition for judicial review with the Sacramento County Superior Court either no later than the 90th day following the date of this decision per California Code of Civil Procedures Sections 1094.5 and 1094.6, or the 20th day following the date of service the decision per California Government Code Section 53069.4.